UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| BARBARA TRIPP, individually and on Her own behalf and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> PERDUE FOODS LLC, <br><br> Defendant. | CIVIL ACTION NO. <br> 1:24-CV-987-JMC |

**REPLY IN SUPPORT OF DEFENDANT'S EXPEDITED MOTION TO STAY ITS RESPONSE TO PLAINTIFF'S MOTION FOR CONDITIONAL CERTIFICATION, THE RULE 26(F) CONFERENCE, AND DISCOVERY PENDING A RULING ON DEFENDANT'S MOTION TO DISMISS OR, ALTERNATIVELY, TRANSFER**

Perdue's Motion is simple. It asks the Court to stay this action pending a ruling on Defendant's pending and now fully-briefed Motion to Dismiss, or Alternatively, Transfer Plaintiff's Claims. (Dkt. 20). Put succinctly, Perdue's Motion asks one question: Does it make sense for the parties and this Court to waste time and resources briefing and adjudicating the propriety of Tripp's duplicative collective action claims in this action when these claims may soon be dismissed or transferred? Consistent with the weight of authority across the country, the answer is a resounding no.

In deciding whether to grant a stay, a court is guided by Fed. R. Civ. P. 1 to ensure a "just, speedy, and inexpensive determination of every action." This is an exercise in judgment, one that balances "various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977). Plaintiff ignores this balancing act, instead only focusing on relentless efforts to force a

1

duplicative, improper collective action in a matter no one has shown any interest in joining for two years. Nevertheless, this Court must balance the economy of time and efforts of both parties and itself. After engaging in this balancing act, it is clear that proceeding in the instant action, whether through further briefing on Plaintiff's motion for conditional certification or initiating discovery, is wholly inconsistent with the letter and spirit of Rule 1. Plaintiff has done nothing to show otherwise. Perdue's Motion should be granted accordingly.

I. **Consistent with The Rulings of Prior Courts Assessing Similar Requests, The Weight of Relevant Factors Supports The Requested Stay.**

Tellingly, Plaintiff does not cite *one single case* denying a motion to stay the issue of conditional certification or discovery pending a ruling on a dispositive motion. (*See generally* Dkt. 20). Rather, Plaintiff attempts to distinguish Perdue's authority by highlighting irrelevant facts unique to those cases, while disregarding the procedural facts of persuasive authority that parallels that of the instant litigation and supports granting Defendant's Motion to Stay. For example, Tripp claims that because the substantive grounds for dismissal in *Feamster* were different than the cause for dismissal in this matter, Perdue's motion should be denied. (Dkt. 24, at 27). While the stated grounds for dismissal may be different, determinative factors relied upon by the *Feamester* court in granting the stay are every bit as applicable and present in the instant litigation – chiefly, "if the named plaintiff is barred from bringing a collective action, the case simply may not proceed in [collective] form." *Feamster v. Compucom Sys., Inc.*, at *5 (W.D. Va. Feb. 19, 2016) (distinguishing cases where participation by *some* opt-in plaintiffs was challenged but reiterating that without a viable claim before that court, plaintiff could not represent others).

Nevertheless, the weight of authority, from within this circuit and across the country, supports staying further briefing on the issue of conditional certification, as well as the initiation

of discovery in this case.[1] (*See generally* Dkt. 21-01). By way of further example, in *Cobble v. 2020 Communications, Inc.*, the court recognized the judicial economy to be gained by a stay. 2017 WL 4544598, at *4 (E.D. Tenn. Oct. 11, 2017). The court granted the defendant's motion to stay briefing and adjudication of the plaintiff's motion for conditional certification, observing that the "'interest of judicial efficiency' is the overriding consideration in these circumstances because determining the order in which particular matters will be addressed in litigation is a quintessential prerogative of the trial court." *Cobble*, 2017 WL 4544598, at *4. In so ruling, the court cited others that granted stays under similar circumstances, concluding, "[t]his pattern is sensible – when faced with dueling motions to dismiss or greatly expand an action, the need to most efficiently use litigant and court resources counsels in favor of first addressing the former." *Id.* at *4 (staying briefing on conditional certification over objections by plaintiff based on concerns that the statute of limitations for claims of unknown opt-in plaintiffs continues to run).

Indeed, even under Plaintiff's proposed three-factor analysis, the procedural posture of this litigation, as well as the original *Parker* matter, supports the requested stay.

## II.    Plaintiff's Framing of the Alleged Harm to Putative Plaintiffs Is Illusory At Best.

Plaintiff's only affirmative objection to staying conditional certification briefing is an alleged "potentially" irreparable harm a delay in certification would cause as a result of the undisputed fact that putative plaintiffs' claims are not automatically tolled. (Dkt. 24, at 26). In

---

[1] *See, e.g., Kang v. Dep't of Homeland Sec.*, 2022 WL 4446385, at *2 (D.D.C. Sept. 23, 2022) (noting court's prior granting of defendant's motion to stay as to the issue of conditional certification so the court could rule on the potentially dispositive motion to dismiss); *Mendez v. Old Dominion Freight Line, Inc.*, 2022 WL 3139102, at *2 (E.D.N.Y. Aug. 5, 2022) (noting court's prior granting of defendant's heavily contested motion to stay conditional certification briefing given pending dispositive motion could impact claims in complaint or named plaintiff's ability to serve as lead plaintiff); *Davis v. Vanguard Home Care, LLC*, at *1 (N.D. Ill. Dec. 5, 2016) (noting court's prior granting of motion to stay conditional certification briefing, citing ability of potential class members to opt in in the interim, and denying motion for equitable tolling as unripe).

doing so, Plaintiff, again, fails to cite any case in support of the proposition that theoretical interests of unidentified putative plaintiffs trump known harm to Perdue, a present and active party to this action. (*See generally id.*).

Ignoring the reality of Plaintiff's already failed attempt to obtained certification, Plaintiff overstates and assumes harm that unknown, hypothetical individuals might suffer if Perdue's motion is granted. She does so by leaving out crucial details on the background of this action. To be clear, while Plaintiff now cries prejudice from delay in having this Court consider conditional certification of Plaintiff's FLSA claims, Plaintiff is in this position because of Plaintiffs' <u>*strategic choices*</u> made in the litigation campaign against Perdue.[2] Though the instant action was filed on April 4, 2024, the history of this action goes back much further, to July 22, 2022, when the *Parker* litigation commenced in the Middle District of Georgia. Between *Parker* and the instant litigation, the Parties actively have been litigating the same claims in this case for more than <u>*two years*</u>. Plaintiff affirmatively chose to litigate her claims in Georgia; engaged in extensive Phase I discovery focused on conditional certification, without any insistence on filing an early motion for conditional certification to protect the interests of absent putative class members; responded to various motions; and fully briefed the issue of conditional certification, trying her hand with the Middle District of Georgia first. All the while, Plaintiff's counsel engaged in considerable efforts to advertise the *Parker* litigation.[3]

---

[2] Together, the amount of time resulting from Tripp's failure to file suit until many months after she left, obtain certification following nearly 18 months of litigation, and the subsequent decision to file a separate FLSA action has caused more harm than a brief stay herein ever would.

[3] As outlined in Perdue's response in opposition to plaintiff's *first* failed motion for conditional certification, "in the [then] 18 months since Parker filed the complaint, the lawsuit has been widely publicized on multiple different internet websites; and a public interest group, Rural Advancement Foundation International-USA ("RAFI-USA"), also took interest and has called at least one grower (Tripp) to garner interest after plaintiffs' counsel informed them the lawsuit had been filed. (*See Parker v. Perdue Foods, LLC,* 5:22-cv-00268-TES, Doc. No. 59, at 6 (M.D. Ga.)

4

Indeed, even a cursory review of Plaintiff's second-attempt at conditional certification reveals Plaintiff has continued her campaign to promote her litigations to individual(s) seemingly connected to the grower community. (*See* Dkt. 19-2 (relying on declaration by a research fellow describing alleged interactions with Perdue chicken growers but finding no single other grower to support claims or certification)). Despite this developed litigation history and Plaintiff's efforts to broadcast knowledge of the pending claims, only Named Plaintiff Parker and Named Plaintiff Tripp have shown *any* interest in pursuing wage and hour claims against Perdue. Indeed, the Middle District of Georgia cited this apparent lack of interest by the proposed collective when denying Parker's and Tripp's Motion for Conditional Certification:

> **The Court gave Plaintiffs six months to conduct discovery and gather evidence to justify conditional certification, and the only evidence suggesting that other growers desire to opt into this case is the single opt-in by Barbara Tripp and statements from Parker and Tripp that "they believe that other growers would be interested in joining the class were the Court to send out Plaintiffs' requested Notice. . .** [T]he declarations filed by Parker and Tripp stating that "they believe that other growers would be interested in joining the class were the Court to send out Plaintiffs' requested Notice" are speculative and thus insufficient. It is well-settled that speculative statements that others might wish to opt-in are insufficient to justify conditional certification. [] Plaintiffs argue that they "believe that other growers desire to join ... based on their extensive experience growing, their conversations with other growers, and their visits to other growers' farms." Yet, in their depositions, **both Parker and Tripp conceded that they weren't aware of any growers who wish to join this action.** [Parker Depo., ("Ain't nobody told me that they wanted to join as saying yes, I want to join.")]; [*id.* (stating that he was unable to identify any other growers who wish to join the action)]; [Tripp Depo. (stating that she is unaware of any grower who wishes to join this action)]. **Their beliefs are unsupported by facts,** and that kind of speculation can't satisfy Plaintiffs' burden to show that other growers desire to join this action.

*Parker v. Perdue Foods, LLC*, 2024 WL 1120391, at *3 (M.D. Ga. Mar. 14, 2024) (cleaned up). Parker's next attempt to send notice of the lawsuit amounts to nothing more than improper and unwarranted solicitation for long-pending claims that have garnered no interest on their own.

In other words, this matter does not mirror that of typical FLSA collective cases, wherein the request to send notice occurs with the purpose of avoiding delay in advising putative plaintiff

5

of potential claims. Rather, the request to send notice in this case comes after two years of litigating and promoting similar claims, in a desperate attempt to gain some interest when the other avenues have failed, and an already failed attempt to conditionally certify identical claims. Given the judicially noted lack of interest in the litigation, years of litigation, and apparent disinterest by putative plaintiffs, it is disingenuous for Tripp to now assert that members of the proposed collective may face irreparable harm by permitting the requested stay because hypothetical putative plaintiffs *may* be impacted by statutes of limitations, at some point down the line.[4] This is particularly true when balanced against the real harms Perdue will face if required to brief the issue of conditional certification and embark on expansive discovery, including into matters beyond Plaintiff's individual claims, before this Court has the opportunity to rule on Perdue's Motion to Dismiss, which is fully briefed and ripe for consideration.

### III.    Requiring Perdue to Re-Litigate Plaintiff's Certification Efforts and Initiate Nationwide Class Discovery *Before* This Court Rules on a Potentially Dispositive Motion Would Cause Perdue Prejudicial Harm And Jeopardize Judicial Economy.

Throughout her response, Plaintiff discounts the very real expense of resources and time Perdue, Plaintiff, and this Court will be forced to incur if the requested stay is denied, and she posits "the sole consequence of the Court's denial of Perdue's Motion to Stay [as] the parties may proceed with briefing . . . and discovery." (Dkt. 24, at 28-31). However, this summation oversimplifies the complexity of a collective action litigation, including, for example, typical disputes regarding the scope of permissible discovery, the discoverability of various policies, and records applicable to growers beyond the only party plaintiff in the instant action.[5] This is

---

[4] As Perdue previously noted, there is also nothing preventing Plaintiff from filing opt-in consents now if any growers do with to join. She has not done so, which is telling in and of itself.

[5] Indeed, Plaintiff lists *nearly a full page of non-exhaustive discovery topics* she demands to investigate *immediately*, regardless of the potentially dispositive impact of the pending Motion to Dismiss. (Dkt. 24, at 29).

incredibly time-and-cost intensive, and the Parties have already gone through this once in *Parker*. While Plaintiff takes it a step further and suggests "no judicial resources will be spared in staying this matter," Plaintiff fails to acknowledge the reality that if conditional certification briefing and discovery is not stayed, the Court will be required to expend resources overseeing the briefing schedule, discovery, and related motions for claims that may soon be dismissed or transferred. As this court previously explained, "There is a real risk that Defendants will face hardship and prejudice if a stay is not granted. Absent a stay, Defendants will be forced to duplicate its litigation efforts and perhaps face inconsistent decisions in the different courts." *See Israel v. Johnson & Johnson*, 2012 WL 6651928, at *3 (D. Md. Dec. 19, 2012) (granting stay to proceedings pending ruling on motion to dismiss).

Forcing Perdue and Plaintiff to engage in costly, collective-wide discovery that ultimately may be unnecessary, is wasteful. Finally, the contested litigation that is sure to follow improvident conditional certification is the antithesis of judicial economy. *See Little v. Midland Credit Mgmt., Inc.*, 2020 WL 4745191, at *3 (S.D. Ohio Aug. 17, 2020) (holding defendant "would suffer harm in having to unnecessarily incur the time and expense of producing discovery pertaining to an impermissible class.").

In sum, Perdue's Motion to Dismiss has been fully briefed and is ripe for review. The Court's decision on the motion may result in outright dismissal of Plaintiff's collective allegations, dismiss or transfer the matter altogether, or at least significantly narrow the scope of claims and related discovery. Given these potential outcomes, there is "little utility in allowing [a] plaintiff to conduct any class-related discovery until such time as [a] district court addresses" a motion eliminate class allegations. *Hedgepeth v. Blue Cross & Blue Shield of Miss.*, 2005 WL 8163352, at *1 (N.D. Miss. Nov. 21, 2005).

Therefore, judicial economy will be served if the Court stays further briefing on Plaintiff's Motion for Conditional Certification and discovery and first takes up and rules on the motion to dismiss. If after Defendant's motion to dismiss, the Complaint is still viable and otherwise sufficient to possibly support Plaintiff's Motion for Conditional Certification, the Court can then take up the issue of whether some limited discovery is warranted before Defendant is required to respond to Plaintiff's Motion for Conditional Certification and set a due date for the completion of any such discovery permitted as well as Defendant's response to Plaintiff's Motion for Conditional Certification. It is this orderly progression of the case, without the potential for wasted resources, that is ultimately the intent of this Motion.

## IV.   **CONCLUSION**

For the foregoing reasons, and in the best interest of judicial economy and to safeguard prejudicial harm to the parties, Defendant requests the Court grant the requested stay.

August 8, 2024

Respectfully submitted,

PERDUE FOODS, LLC

By: */s/ Robert R. Niccolini*
Robert R. Niccolini, D. Md. No. 24873
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
1909 K. Street, N.W., Suite 1000
Washington, D.C. 20006
T. 202-887-0855
rob.niccolini@olgletree.com

Margaret Santen
Kevin P. Hishta
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
T: 404-881-1300
maggie.santen@ogletree.com
kevin.hishta@ogletree.com

Thomas A. Lidbury
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
155 N. Wacker Drive, Suite 4300
Chicago, IL 60606
T: 312-558-1230
tom.lidbury@ogletree.com

# CERTIFICATE OF SERVICE

I hereby certify that on the 8th day of August, 2024, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

| | |
|---|---|
| Jamie Crooks<br>Michael Lieberman<br>FAIRMARK PARTNERS, LLP<br>1001 G Street, NW<br>Suite 400 East<br>Washington, DC 20001<br>(617) 721-3587<br>jamie@fairmarklaw.com<br>michael@fairmarklaw.com | Charles Gerstein<br>GERSTEIN HARROW LLP<br>1001 G Street NW<br>Suite 400 East<br>Washington, DC 20001<br>(202) 670-4809<br>charlie@gerstein-harrow.com<br><br>*Counsel for Plaintiff* |

/s/ Robert R. Niccolini
Robert R. Niccolini

9