## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BARBARA TRIPP,** | * | |
| | * | |
| *Plaintiff,* | * | |
| | * | |
| v. | * | **Civil Case No: 1:24-cv-00987-JMC** |
| **PERDUE FOODS LLC,** | * | |
| | * | |
| *Defendant.* | * | |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

### <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff, Barbara Tripp, filed this lawsuit on April 4, 2024, against Defendant, Perdue Foods LLC, alleging violations of the Fair Labor Standards Act ("FLSA") and seeking declaratory judgment under the Federal Declaratory Judgment Act. (ECF No. 1). Presently pending before the Court are two motions: (1) Defendant's Motion to Dismiss or Transfer (ECF No. 20); and (2) Defendant's Expedited Motion to Stay Its Response to Plaintiff's Motion for Conditional Certification (ECF No. 21).[1] Those motions are fully briefed (ECF Nos. 24, 25, 26) and no hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2023). For the reasons explained below, the motion to stay will be denied as moot and the motion to dismiss will be denied.

---

[1] Plaintiff filed a Motion for Conditional Certification of a Collective Action on June 12, 2024. (ECF No. 19). Defendant filed its motion to dismiss the following day, and its motion to stay on June 14, 2024. (ECF Nos. 20, 21). The Court previously approved the parties' joint request to stay briefing on Plaintiff's motion pending the outcome of Defendant's motion to stay. *See* (ECF No. 23).

## I.    BACKGROUND

Plaintiff "worked under contract as a [chicken] grower for Defendant" in Aulander, North Carolina.  (ECF No. 1 at 2).[2]  Plaintiff's Complaint details several facets of the chicken growing and consumption industry.  Specifically, Plaintiff's Complaint alleges that Defendant is the "third largest broiler chicken company in the country."  *Id.* at 3.  "Broilers" are chickens raised for meat consumption.  *Id.*  Although the United States broiler industry historically featured "individual farmers raising chickens and selling them to live poultry dealers or poultry processors," it now consists mostly of large companies known as "integrators" who "combine the various stages of production, a process known as vertical integration."  *Id.*

Defendant is "highly vertically integrated, with its employees overseeing almost every aspect" of the broiling process.  *Id.*  But while Defendant "now directly owns almost all of its broiler supply chain it has generally not purchased the farms where its chicks are raised to full weight."  *Id.*  Instead, Defendant supposedly "outsources the process of raising birds to broiler growers that [Defendant] calls 'independent farmers,' and it requires these farmers to pay for facilities and tools of the trade that [Defendant] dictates are necessary to grow broilers."  *Id.* at 3– 4.  In turn, such "independent farmers" raise the chickens that Defendant owns from the time that they hatch "until they are large enough to slaughter."  *Id.* at 4.

Plaintiff alleges that Defendant controls virtually every aspect of growers' operations.  *Id.* This is despite the fact that growers shoulder "most of the financial risk—including the large investment necessary to build barns (to [Defendant's] specifications and for its benefit), and the risk of loss if a flock is lost due to a power outage or disease."  *Id.*  Defendant also "requires

---

[2] When the Court cites to a particular page number or range, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document. At the motion to dismiss stage, the Court "accept[s] as true all well-pleaded facts and construe[s] them in the light most favorable to the plaintiff." *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022).

growers to work exclusively for [Defendant]." *Id.* This includes measures as far as prohibiting growers and their family members from visiting farms associated with other integrators. *Id.* at 4–5. These terms and others are typically laid out in Poultry Producer Agreements that Defendant uses as "a form contract with its growers nationwide," which "attempt to assert that growers . . . are independent contractors" rather than employees. *Id.* at 6.

Plaintiff posits that the above system "offloads enormous capital costs and financial risks" onto growers, as Defendant effectively "forces growers to bear [costs such as constructing chicken houses, upgrading equipment, managing waste, and potentially losing chickens] by deceptively classifying growers as independent contractors while meticulously controlling virtually every moment and every aspect of their work." *Id.* at 5. "Having taken on large loans to pay for facilities and upgrades" to meet Defendant's standards, "and then being required to take on even more debt for further upgrades and equipment," "growers have no meaningful choice but to continue growing for [Defendant] as long as [Defendant] permits them to." *Id.* In other words, Plaintiff alleges that Defendant "has devised a scheme to saddle growers with risk and debt, while at the same time directing and controlling every aspect of the chicken growing process and refusing to compensate growers in the manner that federal law requires" based on their classification as independent contractors rather than employees. *Id.* The essence of Plaintiff's Complaint is that Defendant "wants to have its cake and eat it too: have growers that function as controlled employees but compensate them as if they are independent contractors and force them to bear financial burdens that employees should not have to bear for their employer's benefit." *Id.* at 8.

Specific to Plaintiff's claims, Plaintiff "worked as a grower for [Defendant] through October 2021." *Id.* at 25. In that role, Plaintiff was required to "maintain the farm and facilities in the conditions required" by Defendant "and otherwise provide the kinds of equipment necessary

3

for [Defendant's] processes." *Id.* Plaintiff further alleges that Defendant "worked to hide the full scope of its control" over Plaintiff's farm "and the full scope of financial obligations it would force her to incur." *Id.*

Plaintiff opted into an FLSA collective action against Defendant on July 25, 2023, filed in the United States District Court for the Middle District of Georgia. *Id.* "The allegations in that lawsuit are substantively the same as the allegations here regarding [Defendant's] misclassification of growers." *Id.* That district court dismissed Plaintiff from that case on March 14, 2024, "without prejudice, for reasons unrelated to the merits of her claims or her ability to represent an FLSA collective." *Id.* Plaintiff then filed the present lawsuit.

## II.   STANDARD OF REVIEW

### A.   Motion to Stay

"A district court has broad discretion to stay proceedings as part of its inherent power to control its own docket." *City of Annapolis, Md. v. BP P.L.C.*, No. CV ELH-21-772, 2021 WL 2000469, at *2 (D. Md. May 19, 2021) (citing *Landis v. N. Am.*, 299 U.S. 248, 254 (1936)). "When considering a discretionary motion to stay, courts typically examined three factors: (1) the impact on the orderly course of justice, sometimes referred to as judicial economy, measured in terms of the simplifying or complicating of issues, proof, and questions of law which could not be expected from a stay; (2) the hardship to the moving party if the case is not stayed; and (3) the potential damage or prejudice to the non-moving party if a stay is granted." *Id.* "Additionally, courts consider the length of the requested stay and whether proceedings in another matter involve similar issues." *Id.*

B.  <u>Motion to Dismiss or Transfer</u>

The purpose of Federal Rule of Civil Procedure 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses."  *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)) (internal quotations omitted).  To survive a Rule 12(b)(6) motion to dismiss, "detailed factual allegations are not required, but a plaintiff must provide the grounds of his entitlement to relief," which requires "more than labels and conclusions, or a formulaic recitation of the elements of a cause of action." *Petry v. Wells Fargo Bank, N.A.*, 597 F. Supp. 2d 558, 561–62 (D. Md. 2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007)) (internal quotations omitted).  In considering a motion to dismiss, "the Court must accept the complaint's allegations as true, and must liberally construe the complaint as a whole."  *Humphrey v. Nat'l Flood Ins. Program*, 885 F.Supp. 133, 136 (D. Md. 1995) (internal citations omitted).  The Court must also construe the facts and reasonable inferences from the facts in the light most favorable to the plaintiff.  *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997); see also *Petry*, 597 F. Supp. 2d at 562 ("Once a claim has been stated adequately . . . it may be supported by showing any set of facts consistent with the allegations in the complaint.") (quoting *Twombly*, 550 U.S. at 546).

Defendant styles its motion as one for transfer pursuant to 28 U.S.C. § 1404 in the alternative.  "Section 1404(a) of Title 28 of the United States Code provides that '[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented.'"  *Versus Evil LLC v. PNC Bank, Nat'l Ass'n*, 613 F. Supp. 3d 916, 921 (D. Md. 2020) (quoting 28 U.S.C. § 1404(a)).  "The movant bears the burden

of showing that transfer to another venue is proper." *Id.* "A district court has great discretion in determining whether to transfer a case under § 1404(a), and the decision is made according to an individualized, case-by-case consideration of convenience and fairness." *Id.* (quotation omitted).

## III.   DISCUSSION

### A.   Motion to Stay

Courts within the Fourth Circuit have previously ruled on dispositive motions prior to ruling on certification motions given that the dispositive motion(s) may dispel some or all of the claims for which a plaintiff seeks certification. *See, e.g.*, *Player v. Maher Terminals, Inc.*, 841 F.2d 1123, at *1 (4th Cir. 1988) (affirming grant of summary judgment prior to analyzing the issue of certification). In turn, courts throughout the Fourth Circuit and nationwide have also stayed briefing related to motions for certification while they assess the merits of dispositive motions. *See, e.g.*, *Hooker v. Citadel Salisbury LLC*, No. 1:21-CV-00384, 2021 WL 10396902, at *1–2 (M.D.N.C. July 15, 2021) (granting motion to stay further briefing on plaintiffs' motions for certification pending resolution of defendants' anticipated motion to dismiss); *Manuel v. Gembala*, No. 7:10-CV-4-FL, 2011 WL 3240493, at *4 (E.D.N.C. July 27, 2011); *Hernandez v. KBR Servs., LLC*, No. 3:22-CV-530-HEH, 2023 WL 5181595, at *2 (E.D. Va. Aug. 11, 2023); *cf. Thornton v. Mercantile Stores Co.*, 13 F. Supp. 2d 1282, 1289 (M.D. Ala. 1998) (collecting cases nationwide for the proposition that "the vast majority of courts have held that dispositive motions may be considered prior to ruling on a motion for class certification").

Against this backdrop of Fourth Circuit case law and consideration of the above factors, the Court finds that staying the briefing related to Plaintiff's motion would be warranted regarding any gap in time between deciding Defendant's motion to stay and Defendant's motion to dismiss. Staying the briefing regarding Plaintiff's motion would be both judicially economical and would

otherwise prejudice Defendant if disallowed because Defendant's motion could make Plaintiff's motion (and this case) entirely moot if granted. In other words, Plaintiff would have no grounds for certification if the Court ultimately agrees with Defendant that Plaintiff has no viable claim. Plaintiff's primary objection to such a stay is that it would be unduly prejudicial to putative plaintiffs because the statute of limitations for conditionally certified FLSA opt-in plaintiffs is not automatically tolled. (ECF No. 24 at 26). "Thus, any potential recovery period for an FLSA opt-in plaintiff will continue to be reduced until such time as he or she files his or her opt-in consent form with the Court." *Id.*

While the Court is receptive to this argument for the sake of putative plaintiffs, the Court finds that the above factors would still weigh in favor of granting the proposed stay. First, the stay would be effectively obsolete as the present Memorandum Opinion assesses the merits of Defendant's motion to dismiss *infra* shortly after that motion (and the motion to stay) became ripe. Second, Plaintiff's argument appears speculative given the unique procedural history of this case in conjunction with the proceedings in Georgia. The Middle District of Georgia already noted that Plaintiff was the only individual who opted into that court's case after that plaintiff conducted six months of discovery related to certification. *See Parker v. Purdue Foods, LLC*, No. 5:22-cv-00268-TES, 2024 WL 1120391, at *3 (M.D. Ga. Mar. 14, 2024).[3] That court based its ruling in part on the ground that the existence of additional putative class members was "unsupported by facts." *Id.* Plaintiff's opposition to Defendant's motion to stay in this case fares no better, as it

---

[3] The Court "may properly take judicial notice of matters of public record" in ruling on a motion to dismiss without converting the same into one for summary judgment. *Hayes v. Md. Trans. Admin.*, No. 1:23-CV-01195-JRR, 2023 WL 8829260, at *3 (D. Md. Dec. 21, 2023). "Moreover, 'when entertaining a motion to dismiss on the ground of *res judicata*, a court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact.'" *Id.* (quoting *Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000)). In the instant case, Plaintiff does not dispute the facts from the previous proceedings in *Parker* so the Court will take judicial notice of same without converting Defendant's motion. *See also Sensormatic Sec. Corp. v. Sensormatic Elecs. Corp.*, 329 F. Supp. 2d 574, 579 (D. Md. 2004) ("This rule against duplicative litigation, also referred to as 'claim splitting,' is the other action pending facet of the res judicata doctrine.") (quotation omitted).

merely asserts that it is possible that putative plaintiffs will suffer prejudice if they are subsequently identified.   Third, Plaintiff agreed to extend the briefing schedule related to her motion for certification in the parties' prior Joint Consent Motion for Extension of Time, in which Plaintiff agreed that Defendant should be permitted to oppose Plaintiff's motion pending resolution of Defendant's motion to stay.  *See* (ECF No. 23).  Plaintiff thus already contemplated that her motion would not be assessed immediately in light of Defendant's motions and the posture of this case. Further, Plaintiff represented in that same filing that she "intends to later seek equitable tolling on behalf of any opt-in plaintiff who later joins this action to remedy this prejudice," indicating that Plaintiff has (1) identified an avenue to address any issues related to the statute of limitations for putative plaintiffs that may arise; and (2) put both the Court and Defendant on notice of Plaintiff's intention to do so if necessary.  *Id.* at 3 n.2.

Given the above analysis, the Court would be inclined to grant Defendant's motion to stay. However, in light of the Court assessing Defendant's motion to dismiss *infra*, Defendant's motion to stay will be denied as moot because any such stay will be nullified in light of the below ruling.

B.  Motion to Dismiss or Transfer

a.  *The Rule Against Claim Splitting Does Not Bar Plaintiff's Claims*

Turning to Defendant's motion to dismiss or transfer, Defendant first argues that Plaintiff's lawsuit should be dismissed under the "claim-splitting rule."  (ECF No. 20-1 at 11).  "It is undisputed that it is within a district court's power to stay or dismiss a suit that is duplicative of another federal court suit."  *Rousseau v. Howard Cnty., Md.*, No. CIV. JFM-09-CV-1079, 2009 WL 4018551, at *2 (D. Md. Nov. 19, 2009), *aff'd*, 425 F. App'x 193 (4th Cir. 2011) (quotation omitted).  "The rule against claim splitting prohibits a plaintiff from prosecuting its case piecemeal and requires that all claims arising out of a single wrong be presented in one action."  *Id.*  "A party

is thus barred from bringing an action on the same subject to the same court against the same defendants when the previous action is still pending in federal court." *Id.*; *see also Sensormatic*, 329 F. Supp. 2d at 579 ("Thus, when a suit is pending in federal court, a plaintiff has no right to assert another action on the same subject in the same court, against the same defendant at the same time.") (quotation omitted). "The claims need not be identical for the rule against claim splitting to apply. Rather, the suits and claims asserted therein need only 'arise out of the same transaction or series of transactions or the same core of operative facts.'" *Rousseau*, 2009 WL 4018551, at *2 (quoting *Pueschel v. United States*, 369 F.3d 345, 355 (4th Cir. 2004)).

Neither party presents controlling caselaw addressing the exact issue that the parties argue on this matter: whether Plaintiff's dismissal from the Georgia case without prejudice sufficiently terminated Plaintiff's party status in that case such that she is not precluded from bringing her claims now in this Court. Given the specific facts of this case, the Court concludes that the claim splitting rule does not bar Plaintiff's claims. As noted above, the claim splitting rule effectively applies where a party is actively bringing two separate actions based on the same nucleus of facts despite that party's ability to present all of their claims in one litigation. Here, Plaintiff was dismissed from the Georgia case. *See Parker*, 2024 WL 1120391, at *3. Plaintiff is thus no longer a litigant in that Georgia case and is no longer bringing her claims in that Georgia case. As Plaintiff is no longer a plaintiff in the Georgia case, she is therefore not bringing two separate actions rooted in the same causes of action under the same set of core facts, and the claim splitting doctrine does not preclude Plaintiff's lawsuit in this Court on that ground. And although the parties present no clearly controlling authority on the matter, persuasive authority presented by Plaintiff in her opposition does indicate that federal courts faced with similar issues (although not identical) have concluded that the dismissal of a prior lawsuit without prejudice does not bar the filing of a

subsequent lawsuit based on the same facts and causes of action under the claim splitting doctrine. *See, e.g.*, *Torres v. Rebarchak*, 814 F.2d 1219, 1224 (7th Cir. 1987) ("The defendants nevertheless claim that . . . the rule against claim splitting bars a subsequent suit even if the earlier claims were dismissed without prejudice.  We do not agree."); *Hisey v. QualTek USA, LLC*, No. CV 18-5129, 2019 WL 3936555, at *10 (E.D. Pa. Aug. 20, 2019) ("The Court concludes that claim-splitting only applies when two lawsuits are pending simultaneously, but not when one lawsuit is filed after the first suit is dismissed without prejudice.").  It then logically follows that a party's dismissal from a prior lawsuit does not bar that party from filing a subsequent lawsuit in which they are a plaintiff because the plaintiff would then be pursuing her claims only in the second lawsuit by virtue of being excluded from the first.  In fact, Judge Self's prior Memorandum Opinion in *Parker* noted that "[g]enerally, when conditional certification of a collective action is denied, existing opt-in plaintiffs" such as Plaintiff "are dismissed from the lawsuit without prejudice and the matter proceeds *on the named plaintiff's individual claims*."  (ECF No. 20-3 at 12) (emphasis added).  As such, application of the claim splitting rule is improper.[4]

### b.  The First-to-File Rule Does Not Bar Plaintiff's Claims

Defendant next argues that Plaintiff's lawsuit should be dismissed under the first-to-file rule.  (ECF No. 20-1 at 16).  "The first-to-file rule refers to the doctrine that when the same party

---

[4] Defendant's reliance on *Campbell v. City of Los Angeles* is unpersuasive given that the court's analysis in that case was "for purposes of appeal."  903 F.3d 1090, 1105 (9th Cir. 2018).  That case also involved the appeal of a decertification order and no discussion of the claim splitting rule, which is a different situation than that presented by the present motions.  Nor are Defendant's citations to various other cases persuasive in light of the fact that those cases involved plaintiffs who were active parties in two separate lawsuits.  In fact, some of Defendant's citations undercut its own argument.  For instance, the court in *Herbert v. MudTech Servs.*, found that the plaintiff there remained a plaintiff in another, similar lawsuit because there existed no court order dismissing that plaintiff without prejudice in the other lawsuit.  No. 15CV0933, 2015 WL 5602669, at *3, *7 (W.D. Pa. Sept. 23, 2015).  That is the opposite situation presented here.  The same distinction applies to Defendant's reliance on *Joseph v. Pacesetter Personnel Service, Inc.*, for instance, in which that court also noted that the plaintiffs were still active in an earlier lawsuit because they had not withdrawn from that case.  No. 21-23539-CIV, 2022 WL 2191635, at *4 (S.D. Fla. June 17, 2022).

or parties have filed similar litigation in separate federal fora, the matter that was filed first should proceed, and the later-filed action should be stayed, transferred, or enjoined." *Butler v. DirectSat USA, LLC*, 800 F. Supp. 2d 662, 665 (D. Md. 2011). "In deciding whether to apply the first-to-file rule, courts consider the chronology of filing, the similarity of the parties involved, and the similarity of the issues at stake." *Id.* at 666.

*Butler* involved substantially similar facts to the present case. In *Butler*, the plaintiff had previously "opted-in to a collective action pending in the Western District of Wisconsin that raise[d] similar claims." *Id.* at 665. The defendant argued that the first-to-file rule precluded plaintiff's lawsuit in *Butler* because that plaintiff had not been removed from the Wisconsin case via court order when the defendant filed their motion to dismiss. *Id.* Judge Chasanow of this Court agreed with the defendant in that the defendant's argument was meritorious if the plaintiff remained a party to the Wisconsin case at the time that the Court ruled on defendant's motion to dismiss. *Id.* at 666. However, Judge Chasanow then noted that the claims in the Wisconsin case were subsequently "decertified and the claims of all opt-in plaintiffs," including the plaintiff in *Butler*, "were dismissed without prejudice" when the Court analyzed the defendant's motion to dismiss. *Id.* Given that the *Butler* plaintiff had been dismissed without prejudice from the Wisconsin lawsuit, Judge Chasanow concluded that the "first to file rule no longer operate[d] to preclude Butler from participating in [*Butler*] and he will not be dismissed." *Id.*

Defendant attempts to rebut the similarity and holding in *Butler* by pointing out that "the defendant did not raise and Judge Chasanow did not consider Butler's potential ongoing party status for purposes of appealing decertification. It is, therefore, no precedent on the issue raised in this motion." (ECF No. 26 at 7). While Defendant is correct that Judge Chasanow's analysis was not specifically in the context of ongoing party status for purposes of appealing decertification,

Judge Chasanow's above analysis was expressly based on the first-to-file rule, which is undoubtedly a central argument raised in Defendant's motion.  And as Judge Chasanow thoroughly examined that issue on facts similar to those presented here, the Court again rejects the argument that Plaintiff violated the first-to-file rule by filing a subsequent lawsuit in this Court after she was dismissed without prejudice from a prior lawsuit which she opted into.  Judge Chasanow's discussion and holding further strengthens the above conclusion that Plaintiff did not violate the claim splitting rule by implicitly acknowledging that the plaintiff in *Butler* was no longer proceeding in the Wisconsin case by virtue of being dismissed from that case without prejudice. The Court accordingly declines to dismiss Plaintiff's lawsuit under the first-to-file rule.

> c.   *Transferring Plaintiff's Case to the Middle District of Georgia is Inappropriate*

Defendant finally argues in the alternative that Plaintiff's lawsuit should be transferred to the Middle District of Georgia where *Parker* is ongoing.  (ECF No. 20-1 at 18).  28 U.S.C. § 1404(a) provides that: "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."  "This Court must consider four factors in order to determine whether transfer is proper: '(1) the weight accorded to plaintiff's choice of forum; (2) witness convenience and access; (3) convenience of the parties; and (4) the interests of justice.'"  *United States ex rel. VIB Partners v. LHC Grp., Inc.*, No. CV RDB-21-2232, 2022 WL 16575722, at *3 (D. Md. Nov. 1, 2022) (quoting *U.S. ex rel. Salomon v. Wolff*, 268 F. Supp. 3d 770, 774 (D. Md. 2017)).  The decision whether to transfer venue "is committed to the sound discretion of the trial court" and "[u]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."  *Id.* (quotations omitted).  "The movant bears the burden to demonstrate that transfer is proper."  *Id.* (citing

*Stratagene v. Parsons Behle & Latimer*, 315 F. Supp. 2d 765, 771 (D. Md. 2004)).  Of note, this burden requires preliminarily that Defendant demonstrate that the Middle District of Georgia is a district in which Plaintiff's lawsuit "might have been brought," *i.e.* that venue and jurisdiction are proper there.  *See, e.g.*, *LG Elecs., Inc. v. First Int'l Computer, Inc.*, 138 F. Supp. 2d 574, 586 (D.N.J. 2001) ("In order to demonstrate that an action 'might have been brought' in a transferee district, a movant is ordinarily required to demonstrate both the propriety of venue in the transferee district and jurisdiction over all of the defendants."); *Fahy v. Minto Dev. Corp.*, No. 23 C 3590, 2024 WL 1116050, at *3 (N.D. Ill. Mar. 14, 2024) (explaining that a moving party must justify a transfer by showing in part that "venue [and jurisdiction are] proper in the transferee district"); *Trafalgar Cap. Specialized Inv. Fund (In Liquidation) v. Hartman*, 878 F. Supp. 2d 1274, 1285 (S.D. Fla. 2012); *cf. Nowsco Well Serv., Ltd. v. Home Ins. Co.*, 799 F. Supp. 602, 612 (S.D.W. Va. 1991), *aff'd*, 974 F.2d 1331 (4th Cir. 1992) (noting that a defendant must demonstrate that "an alternative forum exists which has jurisdiction over the case" under a *forum non conveniens* analysis).

Here, Defendant has not demonstrated—or clearly argued—the propriety of both venue and jurisdiction in the Middle District of Georgia.  This alone would justify denying Defendant's motion on this ground.  Further, careful review of the *Parker* docket indicates that Defendant hotly contests whether the Middle District of Georgia can even exercise personal jurisdiction over Defendant regarding Plaintiff's claims.  *See Parker*, No. 5:22-cv-00268-TES, ECF No. 58-1 at 18 (arguing in its prior motion to dismiss Plaintiff's claims in the Middle District of Georgia that the Middle District of Georgia "cannot exercise personal jurisdiction over Perdue Foods as to Tripp's FLSA claims"); *Parker*, No. 5:22-cv-00268-TES, ECF No. 66 at 1, 6, 8–10 (arguing in support of its prior motion to dismiss Plaintiff's claims in the Middle District of Georgia that "there is no

basis on which to conclude that Perdue has consented to the general personal jurisdiction of Georgia courts," that "Tripp cannot establish that personal jurisdiction exists under Georgia's long arm statute," and even arguing that the case should be transferred to *North Carolina*).[5] In other words, Defendant now seeks to transfer Plaintiff's case to a district in which it vigorously opposed the exercise of personal jurisdiction over it related to Plaintiff's claims. Combined with the fact that Defendant does not clearly argue how venue and jurisdiction are proper in Georgia, Defendant has not demonstrated that Plaintiff's present lawsuit could have been brought in the Middle District of Georgia, making transfer unwarranted under 28 U.S.C. § 1404(a). Defendant's motion is accordingly denied in its entirety.

## IV.    CONCLUSION

For the foregoing reasons, it is this 22nd day of August, 2024, by the United States District Court for the District of Maryland, hereby **ORDERED** that Defendant's Expedited Motion to Stay Its Response to Plaintiff's Motion for Conditional Certification (ECF No. 21) is **DENIED** as moot. **Further**, Defendant's Motion to Dismiss or Transfer (ECF No. 20) is **DENIED** in its entirety. Pursuant to the parties' representations in their prior Joint Consent Motion for Extension of Time (ECF No. 22), Defendant shall file any response to Plaintiff's Motion for Conditional Certification within twenty-eight (28) days from the date of this Memorandum Opinion and Order. In light of the Court denying Defendant's motion to dismiss in its entirety, Defendant shall also file a response to Plaintiff's Complaint within twenty-eight (28) days from the date of this Memorandum Opinion and Order.

Date: August 22, 2024                                    _____/s/_____
                                                          J. Mark Coulson
                                                          United States Magistrate Judge

---

[5] Judge Self did not address these arguments when dismissing Plaintiff from *Parker*.