IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **BARBARA TRIPP,** | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Case No. 1:24-CV-00987-JMC |
| **PERDUE FOODS, LLC,** | * | |
| *Defendant*. | * | |
| | * | |
| | * * * * * * * | |

**MEMORANDUM AND ORDER**

On April 4, 2024, Plaintiff Barbara Tripp filed the present lawsuit against Defendant, Perdue Foods LLC, alleging violations of the Fair Labor Standards Act ("FLSA") and seeking declaratory judgment under the Federal Declaratory Judgement Act. (ECF No. 1). Presently pending before the Court is Plaintiff's Motion for Conditional Certification and to Facilitate Notice Pursuant to 29 U.S.C. § 216(b). (ECF No. 19). The Court has considered the Motion, Defendant's Opposition thereto (ECF No. 32), and Plaintiff's Reply (ECF No. 33). No hearing is necessary. Loc. R. 105.6 (D. Md. 2023). For the reasons set forth herein, Plaintiff's Motion is GRANTED in part and DENIED in part.

**I.     BACKGROUND**

The facts of this case are fully detailed in the Court's prior memorandum opinion addressing Defendant's Motion to Dismiss or Transfer and Defendant's Expedited Motion to Stay Its Response to Plaintiff's Motion for Certification, and need not be repeated. (ECF No. 28). In brief, the dispute arises from Defendant's alleged practice of misclassifying its broiler chicken farmers (also known as "growers") as independent contractors instead of as employees, and a systematic refusal to pay the farmers the federal minimum wage. (ECF No. 1). Plaintiff contends

that Defendant's misclassification of broiler growers allows it to "offload [] enormous capital costs and financial risks onto them" by requiring them to bear costs such as the construction of chicken houses and equipment upgrades, "while meticulously controlling virtually every moment and aspect of their work." (ECF No. 1 at 5).[1] Plaintiff further alleges that these practices have caused her to earn less than the minimum wage due to Defendant's low pay and deductions automatically made from her pay for facilities expenses which Defendant required her to cover. *Id.* at 28.

On June 12, 2024, Plaintiff filed the presently pending Motion for Conditional Certification and to Facilitate Notice Pursuant to 29 U.S.C. § 216(b), supported by a memorandum and declarations of Ms. Tripp and Amanda Hitt. (ECF No. 19). Plaintiff's motion seeks conditional certification of an FLSA collective action consisting of "[a]ll individuals nationwide who currently grow or formerly grew chickens for Perdue under a Perdue Poultry Produce Agreement at any time between April 4, 2021 and the present." *Id.* at 2.

## II.   CONDITIONAL CERTIFICATION UNDER THE FAIR LABOR STANDARDS ACT

### A.   Standard of Review

The FLSA permits plaintiffs to maintain a collective action against their employer for violations under the act pursuant to 29 U.S.C. § 216, which provides in pertinent part:

> An action . . . may be maintained against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated. No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become such a party and such consent is filed in the court in which such action is brought.

29 U.S.C. § 216(b); *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008). Section 216(b) establishes an "opt-in" scheme, "whereby potential plaintiffs must affirmatively

---

[1] When the Court cites to a particular page or range of pages, the Court is referring to the page numbers located in the electronic filing stamps provided at the top of each electronically filed document.

notify the Court of their intentions to be a party to the suit." *Quinteros*, 532 F. Supp. 2d at 771 (citing *Camper v. Home Quality Management, Inc.*, 200 F.R.D. 516, 519 (D. Md. 2000)). The FLSA certification process typically occurs in two stages. First, at the "notice stage," the court "makes a threshold determination of whether the plaintiffs have demonstrated that potential class members are similarly situated, such that court-facilitated notice to putative class members is appropriate." *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 566 (D. Md. 2012) (citations and internal quotations omitted). Second, at the "decertification stage," once discovery is closed, the court conducts a more stringent inquiry to determine whether the plaintiffs are in fact "similarly situated" as required by section 216(b) and to make a final determination regarding whether the case should proceed as a collective action. *Rawls v. Augustine Home Health Care, Inc.*, 244 F.R.D. 298, 300 (D. Md. 2007) (citations omitted). Here, Plaintiff seeks conditional certification at the first stage and, if certification is granted, that the Court order Defendant to produce a list of individuals in the collective and authorize Notice and Opt-in Forms to be distributed to potential collective members.

At the notice stage, conditional certification is appropriate where the plaintiffs make "a minimal evidentiary showing that [they] can meet the substantive requirements of 29 U.S.C. § 216(b)," that is, that they are "similarly situated." *Rawls*, 244 F.R.D. at 300; *Camper*, 200 F.R.D. at 519. A group of potential plaintiffs are "similarly situated" when they "together were victims of a common policy or scheme or plan that violated the law." *Quinteros*, 532 F. Supp. 2d at 772 (citing *D'Anna v. M/A-COM, Inc.*, 903 F. Supp. 889, 893 (D. Md. 1995)). At the notice stage, Plaintiffs need only make a "relatively modest factual showing that such a common policy, scheme, or plan exists," to establish that they are "similarly situated." *Butler*, 876 F. Supp. 2d at 566 (quoting *Marroquin v. Canales*, 236 F.R.D. 257, 259 (D. Md. 2006)). This showing may be

made through affidavits or other means, but allegations in the complaint alone are insufficient. *Camper*, 200 F.R.D. at 519. Determining whether plaintiffs are similarly situated is "left to the sound discretion of the court, but "in reaching its answers, the court should be guided by the remedial purpose of the FLSA." *Mancia v. Mayflower Textile Servs. Co.*, No. CCB-08-273, 2008 WL 4735344, at *3 (D. Md. Oct. 14, 2008) (citations omitted).

> B. The Denial of Conditional Certification in *Parker v. Perdue Foods, LLC* Does Not Preclude Conditional Certification in the Instant Case.

As an initial matter, the undersigned will address Defendant's argument that Plaintiff is foreclosed from seeking conditional certification in Maryland following the court's denial of conditional certification in *Parker v. Perdue Foods, LLC* ("*Parker*"). *See Parker v. Perdue Foods, LLC*, No. 5:22-cv-00268-TES, 2024 WL 1120391 (M.D. Ga. Mar. 14, 2024). In *Parker*, the United States District Court for the Middle District of Georgia denied certification on the basis that plaintiffs "failed to meet their burden of showing that there are a substantial number of growers who desire to opt into this FLSA collective action[.]" *Id.* at *5.[2] Ms. Tripp, who opted into the Georgia action in July 2024, was thereafter dismissed from the lawsuit without prejudice. *Id.*

Defendant cites the *Parker* decision for the proposition that "[g]enerally, when conditional certification of a collective action is denied, existing opt-in plaintiffs are dismissed from the lawsuit without prejudice and the matter proceeds on the named plaintiff's individual claims[,]" *id.* (citing *Mickles on behalf of herself v. Country Club Inc.*, 887 F.3d 1270, 1280 (11th Cir. 2018) (citations omitted), arguing that the reasoning applicable to the named plaintiff's claim should

---

[2] As Plaintiff identifies, the Fourth Circuit does not require a collective action plaintiff to demonstrate that there are other potential class members who desire to opt in. *See, e.g.*, *Mancia*, 2008 WL 4735344 at *6 n.5 (declining to apply Eleventh Circuit case law requiring plaintiff to show evidence of additional plaintiffs because it "too narrowly construes the FLSA."); *Depew v. Mobile Dredging and Plumbing Co.*, No. 15-3080-JMC, 2016 WL 2756528, at *4 (D. Md. May 12, 2016).

4

apply with equal force to opt-in plaintiffs, like Ms. Tripp. (ECF No. 32 at 20).[3] Defendant contends that permitting Ms. Tripp to seek conditional certification in Maryland "provide[s] her with an impermissible second bite at the apple," constituting blatant forum shopping, and further alludes to issue preclusion in a footnote, asserting that "all requirements for issue preclusion are met[,]" without specifically addressing the legal standard. *Id.* Plaintiff responds that orders denying conditional certification are not "sufficiently firm" to meet the standard for issue preclusion, which requires that a prior judgment be final and valid. (ECF No. 33 at 14) (citing *Phillips v. Randy's Trucking, Inc.*, No. 1:16-cv-00753-LJO-JLT, 2016 WL 6248264, at *6 (E.D. Cal. Oct. 26, 2016)).

The undersigned is not aware of, and the parties do not cite to, binding or persuasive authority addressing the specific situation presented by this case: namely, an opt-in plaintiff in an FLSA collective action who is denied the benefit of conditional certification in one jurisdiction, dismissed from the lawsuit without prejudice, and subsequently pursues conditional certification in a different jurisdiction. Plaintiff does, however, cite two cases which come close. In *Phillips v. Randy's Trucking, Inc.*, the Eastern District of California considered whether a plaintiff, who was a party to a prior collective action where conditional certification had been denied, was estopped from bringing a new collective action against the same defendants within the same district. 2016

---

[3] Defendant additionally asserts that Ms. Tripp is "bound by the conditional certification order in *Parker* with an active right to appeal it." (ECF No. 32 at 11). While Defendant is correct that the Eleventh Circuit held in *Mickles* that a FLSA opt-in plaintiff is a party plaintiff with the right to appeal a conditional certification order, the *Mickles* court also explained that appeal of the conditional certification denial could only occur once a final judgment was entered in the case. 887 F.3d at 1278-79. While Ms. Tripp may very well have the right to appeal the Georgia conditional certification order, she would only be able to do so once Mr. Parker's case concludes—at which time the claims of many potential collective action plaintiffs may be time-barred by the statutory limitations period.

Filing a collective FLSA action does not toll the statute of limitations for other members of the collective: instead, the statute of limitations runs until an individual plaintiff opts-in to the lawsuit. 29 U.S.C. § 256. As Ms. Tripp points out, collective action plaintiffs are unlikely opt-in until they receive court-issued notice of the action. (ECF No. 19-2 at 3). The probable expiration of many claims without the opportunity for notice runs contrary to the remedial purpose of the FLSA, and the Court is not convinced that Ms. Tripp's right of appeal in Georgia necessitates preclusion of conditional certification in Maryland, especially when she has yet to exercise that right.

WL 6248264, at *1. The *Phillips* court held that the prior decision did not bar the plaintiff's collective action claims, explaining:

> [T]he [prior] case was still in the early stages of discovery, and the evidentiary record necessary for a full determination on the merits of plaintiffs' claims was not yet developed. The order analyzed preliminarily whether plaintiffs' claims could proceed as a collective action and determined that they could not. The court's conclusion rested on the fact that plaintiffs did not submit sufficient evidence to suggest that other drivers were similarly situated to named plaintiffs. The court did not determine that the evidentiary record showed that the action was categorically unsuitable for collective action treatment, only that the evidence presented at that stage was insufficient.
>
> Because the [prior] court was unable to fully analyze the suitability of the claims for collective action treatment, the issue that will be litigated at certification in this matter was not actually litigated to the extent necessary to bind [the plaintiff] here.

*Id.* at *6 (citations omitted). Similarly, in *Wilson v. Decibels of Oregon, Inc.*, the United States District Court for the District of Oregon held that the plaintiff was "entitled to make his case for certification" despite being a party to a prior collective action where conditional certification was denied. No. 1:17-cv-01558-MC, 2018 WL 664799, at *6 (D. Or. Feb. 1, 2018). The *Wilson* court reasoned that the court's conditional certification analysis in the prior case rested upon review of those specific pleadings and affidavits, resulting in a limited finding that plaintiffs failed to show they were similarly situated, and not that the action was "categorically unsuitable" for collective action treatment. *Id.* In both *Wilson* and *Phillips*, the stage in the certification process was critical to the court's determination—specifically, that the earlier court ruling applied the lenient conditional certification standard, rather than the more rigorous decertification standard. *Compare Belle v. Univ. of Pittsburgh Med. Center*, No. 13-1448, 2014 WL 4828899, at *1 (W.D. Penn. Sept. 29, 2014) (holding that plaintiffs *were* precluded from collective action certification where the court previously *decertified* a collective action following "an incredible amount of time, effort, and expense").

The Court has identified an additional factually analogous case in this District. In *Butler v. DirectSAT USA, LLC*, Judge Chasanow considered whether the first to file rule precluded a plaintiff from participating in a Maryland FLSA action which was substantially similar to a Wisconsin FLSA collective action to which hey had also opted-in. 800 F. Supp. 2d. 662, 665-66 (D. Md. 2011). Judge Chasanow permitted the plaintiff's claim to proceed because the Wisconsin collective action was decertified, and all opt-in plaintiffs were dismissed without prejudice. *Id.* at 666. The Maryland collective action was later conditionally certified in a separate opinion, with the former Wisconsin plaintiff still a member of the collective. *Butler v. DirectSAT USA, LLC*, 876 F. Supp. 2d 560, 574 (D. Md. 2012). Although Judge Chasanow did not address the question of whether decertification in Wisconsin precluded conditional certification in Maryland, the issue of conditional certification was vigorously disputed, and Judge Chasanow did make note of the plaintiff's prior involvement in the Wisconsin action. *See id.* at 577 n.3.

With these principles in mind, the undersigned is persuaded that the Georgia District Court's denial of conditional certification in *Parker v. Perdue* does not preclude Ms. Tripp's current conditional certification efforts. *Wilson* and *Phillips* make clear that denial of conditional certification is a preliminary ruling which is not necessarily binding, even on party plaintiffs, within courts of the same District. This Court has not identified any authority requiring this rationale be altered if a plaintiff files suit in a different District Court. Judge Chasanow's conditional certification in *Butler*, even following decertification under a more rigorous standard, lends further support to the Court's conclusion.[4] Further, this reasoning is consistent with the

---

[4] The undersigned acknowledges that the collective action conditionally certified by Judge Chasanow was significantly limited in scope compared to the Wisconsin action: while the Wisconsin collective action "involved a nationwide class of more than 1,000 DirectSAT technicians," the Maryland case involved technicians at only two DirectSAT warehouses located within Maryland. 876 F. Supp. 2d at 573. The opinion is nonetheless instructive given its factual parallels to the instant case.

remedial policies underlying the FLSA and instruction by the Fourth Circuit that "because the [FLSA] is remedial and humanitarian in purpose, it should be broadly interpreted and applied to effectuate its goals." *Salinas v. Commercial Interiors, Inc.*, 848 F.3d 125, 140 (4th Cir. 2017) (quoting *Benshoff v. City of Virginia Beach*, 180 F.3d 136, 140 (4th Cir. 1999)); *see also Tennessee Coal, Iron & R. Co. v. Moscoda Local No. 123*, 321 U.S. 590, 597 (1944), *superseded on other grounds by statute*, 29 U.S.C. 251 § 251(a), *as recognized in Integrity Staffing Solutions, Inc. v. Busk*, 574 U.S. 27 (2014) (cautioning that the FLSA "must not be interpreted or applied in a narrow, grudging manner"). Accordingly, the undersigned will next turn to Plaintiff's conditional certification arguments.

C. <u>Plaintiff has Met her Modest Burden of Establishing that She is Similarly Situated to the Proposed Collective.</u>

As noted, Plaintiff seeks conditional certification of a collective that includes all individuals, nationwide, who currently grow or formerly grew chickens for Perdue under a Perdue Poultry Agreement between April 4, 2021, and the present. (ECF No. 19 at 2). In support of Plaintiff's proposed collective, declarations of Ms. Tripp and Ms. Amanda Hitt are attached to the instant Motion, as well as excerpts from the deposition of Defendant's corporate designee, Mr. Michael Keith Levingood,[5] and a copy of the Poultry Producer Agreement. (ECF Nos. 19-3, 19-9, 19-10, 19-11).

Ms. Tripp's declaration asserts that she has worked as a grower for Defendant in North Carolina from approximately 1999 until October 2021. (Tripp Decl. ¶ 3). Ms. Tripp signed a Poultry Producer Agreement classifying her as an independent contractor, but which nevertheless obligated her to "comply with any bio-security policies, audits, measures, or guidelines required by PERDUE." *Id.* ¶ 3-8. Perdue controlled "nearly every aspect" of Ms. Tripp's growing operation,

---

[5] Mr. Levingood's deposition was taken in the Georgia lawsuit.

including the feed and medications she administered, lighting, temperature, and ventilation in the barns, procedures for inspecting the broilers, timing of broiler pickup and delivery, and how she disposed of broiler excrement and dead broilers. *Id.* ¶ 10. Ms. Tripp was also assigned a supervisor (known as a "Flock Advisor") "who inspected [her] farm for compliance with the Poultry Producer Agreement, biosecurity policies, and guidelines[,]" and informed her of tasks and improvements to her facilities "which were not presented as optional." *Id.* ¶ 11. Ms. Tripp states that Perdue took deductions from her pay for supplies and upgrades to her facility. *Id.* ¶ 13. Due to these deductions and the fact that she often worked more than forty hours per week, Ms. Tripp asserts her compensation was less than minimum wage and that she was never paid overtime. *Id.* ¶ 14-16. To Ms. Tripp's knowledge, other growers were required to sign the same Poultry Producer Agreement, experienced the same level of control by Perdue, and were subject to the same payment structure. *Id.* ¶ 15-16.

Ms. Hitt's declaration states that she is a Visiting Fellow with the Brooks McCormick Jr. Animal Law & Policy Program at Harvard Law School, and previously served as the founder and director of the Food Integrity Campaign of the Government Accountability Project from 2009 to 2023. (Hitt Decl. ¶ 3-4). Through her work, she has "interacted with Perdue chicken growers in multiple states including Maryland and North Carolina" and those growers were required to adhere to guidelines identical to, or at least extremely similar to, those described by Ms. Tripp. *Id.* ¶ 5. Despite being classified as independent contractors, "[t]he level of control that Perdue exercised over the growers…was the same as Tripp alleges Perdue exercised over her, including on the pickup and cleaning of broiler waste, the lighting, temperature, and ventilation of the barns, and the timing of broiler delivery and pickup." *Id.* ¶ 6. The growers were also subject to the same pay determination system and the same pay deductions for equipment and supplies. *Id.* ¶ 8. Like Ms.

Tripp, the growers Ms. Hitt interacted with often worked over 40 hours per week and were never paid overtime compensation. *Id.* ¶ 7. Ms. Hitt states that based on her interactions with growers across the country and her "extensive experience research the poultry industry" she "believe[s] Perdue's policies, pay structure, and level of control it exercises over chicken growers are the same across states and over the past several years." *Id.* ¶ 9.

The deposition testimony of Defendant's corporate designee, Mr. Levingood, confirms that Perdue's broiler growers are uniformly required to sign the Poultry Producer Agreement which classifies them as independent contractors. (ECF No. 19-11 at 9) ("Q: Got it. So large broilers, small broilers, they're all under that agreement, plus the attachment? A: All 1300 farmers are under this agreement."). Pursuant to the Poultry Producer Agreement, broiler growers agree to terms including:

> To use only the feed, medications, vaccinations, and other supplies, which PERDUE has provided, or has arranged to be provided, to PRODUCER for the health and welfare of the birds consigned.
>
> To comply with any bio-security policies, audits, measures or guidelines required by PERDUE.
>
> To adhere to the instructions provided by PERDUE regarding feed and water withdrawal times prior to the catching of the flock.
>
> To provide care for the health and welfare of the flock in accordance with and adhere to the PERDUE Poultry Welfare and Bio-Security Programs.

(ECF No. 19-3 at 3-4). Broiler growers are assigned a "Flock Advisor" to whom they must report within 24 hours if birds are not developing normally, diseased, or a situation exists which may adversely affect their health. *Id.* at 3. Additionally, Defendant may enter the growers' premises to inspect the flock and facilities, and if the grower is "not satisfactorily performing" their obligations under the agreement, Defendant is permitted to remove the flock, "and/or undertake the maintenance, treatment, feeding, and care of the flock" on the growers' property. *Id.* at 4-5.

10

Growers are further subject to the requirements in Attachment B of the Poultry Producer Agreement, which sets forth procedures for implementing a "Performance Improvement Program" if flocks "fail to achieve the Company's minimum standards of competitiveness." *Id.* at 18.

Based on the declarations of Ms. Tripp and Ms. Hitt, and the deposition testimony of Defendant's corporate designee, Plaintiff has adduced evidence that other potential members of the proposed collective may have been subject to a common scheme by which Defendant improperly classified growers as independent contractors despite treating them as employees, and that as a result of this misclassification, growers were unlawfully paid less than the minimum wage and denied overtime payment. The allegations in Ms. Tripp's declaration are corroborated by those in Ms. Hitt's and vice versa, evidencing the existence of a common scheme or plan. Additionally, both Ms. Hitt and Ms. Tripp indicate that other growers working for Defendant are subject to the same or substantially similar level of control by Defendant, receive compensation under the same pay determination structure, and are party to the same Poultry Producer Agreement.[6] Moreover, Mr. Levingood's deposition testimony confirms that Defendant's growers are required to sign the Poultry Producer Agreement, and the terms of the Agreement are consistent with the level of

---

[6] The Court acknowledges that the proposed collective is potentially quite large: Defendant characterizes it as requiring "near nationwide notice" and estimates approximately 1,230 growers may qualify for the class. (ECF No. 32 at 28-29). The fact that Plaintiff's Motion is not supported by declarations from growers in multiple geographical regions may weigh against conditional certification. *See Chapman v. Saber Healthcare Group, LLC*, 623 F. Supp. 3d 664, 676 (E.D. Va. 2022) ("When declarations come exclusively from a small, geographically homogenous group of declarants, conditional certification of a nationwide collective is inappropriate if the declarants lack personal knowledge about the policies or practices at other office.") (citations omitted). However, Plaintiff also puts forth the declaration of Ms. Hitt, who asserts personal knowledge of Defendant's policies, pay structure, and level of control based on her "interactions with Perdue growers *across the country*." Tripp Decl. ¶ 9 (emphasis added). Defendant's corporate designee additionally testified that the same version of the Poultry Producer Agreement is used for its growers. (ECF No. 19-11 at 3-4). Mr. Levingood's testimony also suggests that the collective may not be precisely "nationwide"—most of Defendant's growers are located on the east coast, and growers in California and Washington State do not sign the Poultry Producer Agreement and are not potential members of the collective. *Id.* The Court is satisfied that Ms. Hitt's declaration, in combination with the deposition testimony of Defendant's corporate designee, show personal knowledge that the same policies relevant to Plaintiff's allegations extend to other facilities. *Smith v. Smithfield Foods, Inc.*, No. 2:21-cv-194, 2021 WL 6681062, at *10 (E.D. Va. Dec. 21, 2021) ("Certification of a nationwide class also generally requires personal knowledge that the policies extend to other facilities.").

control described in the declarations of Ms. Tripp and Ms. Hitt. Accordingly, Plaintiff has made the relatively modest factual showing necessary to demonstrate that the potential class members are "similarly situated," and conditional certification is appropriate.

Defendant contends that Plaintiff has failed to point to a common policy, plan or scheme that violates the law "because mere classification as an [independent contractor] does not violate the law." (ECF No. 32 at 23) (citing *Guerra v. Teixeira*, No. TDC-16-0618, 2019 WL 330871, at *5 (D. Md. Jan. 25, 2019)). Defendant mischaracterizes Plaintiff's claim: her allegations stem not simply from classification as an independent contractor, but from *mis*classification as an independent contractor. As explained in her Motion, "[t]he central FLSA question in this case is whether Ms. Tripp and members of the Proposed Collective were improperly classified as independent contractors while being treated as employees—and whether, as a result, they were unlawfully paid less than the minimum wage." (ECF No. 19-2 at 15). Defendant's first argument is unavailing.

Defendant next asserts that Plaintiff has failed to establish she is similarly situated to other potential collective members because Ms. Hitt's declaration should be disregarded as hearsay, and Ms. Tripp's declaration, alone, is insufficient evidence under the standard. (ECF No. 27-28).[7] First, the Court declines to disregard Ms. Hitt's declaration in its entirety. Even if the declaration contains hearsay, "[j]udges deciding motions for conditional certification in this district have considered hearsay in supporting affidavits." *Robinson v. Empire Equity Group, Inc.*, No. WDQ-09-1603, 2009 WL 4018560, at *3 (D. Md. Nov. 18, 2009); *Calder v. GGC-Baltimore, LLC.*, No.

---

[7] Defendant additionally argues that Plaintiff "cannot rely on the mere allegations in her Complaint, as she repeatedly tries to do to support multiple contentions." (ECF No. 32 at 25). While allegations in the complaint alone are insufficient to justify conditional certification, an adequate factual showing may be made by affidavit. *See e.g., Marroquin v. Canales*, 236 F.R.D. 257 (D. Md. 2006). As already discussed, Plaintiff supports her Motion with two affidavits, deposition testimony, and JMC Poultry Producer Agreement.

BPG-12-2350, 2013 WL 3441178, at *4 n.1 (granting conditional certification where plaintiff attached only a single affidavit to motion, which was attested to by the named plaintiff and contained hearsay, because "hearsay that may be inadmissible at trial may be considered at the notice stage where the affiant has knowledge of the statement") (citation omitted)). According Ms. Hitt's declaration little weight, or evaluating its credibility, as Defendant also advocates for, is inappropriate at this stage. *See Butler*, 876 F. Supp. 2d at 571 ("[C]redibility determinations are usually inappropriate for the question of conditional certification.") (citations omitted).[8]

Second, Defendant overlooks the import of the deposition testimony of its corporate designee, as well as the Poultry Producer Agreement itself. In *Williams v. ezStorage Corporation*, Judge Bennett of this Court granted conditional certification in a case involving 45 separate work locations based on a single affidavit. No. RDB-10-335, 2011 WL 1539941, at *3 (D. Md. Apr. 21, 2011). Conditional certification was granted because the proposed collective were all "subject to the same pay and work policies," and the plaintiff's affidavit was corroborated by both an employee manual and a stipulation by defendant that all employees in the proposed class were "uniformly subject to the same policies, rules, pay systems, hours, and benefits." *Id.* Likewise, in the instant case, the declarations of Ms. Hitt and Ms. Tripp are corroborated by the Poultry Producer Agreement and the deposition testimony of Defendant's corporate designee.  (ECF No. 19-11 at 9) ("Q: Got it. So large broilers, small broilers, they're all under that agreement, plus the attachment? A: All 1300 farmers are under this agreement."). Plaintiff's allegations have

---

[8] Defendant further attacks the adequacy of Ms. Tripp's declaration because she testified in her deposition that her personal knowledge of other growers is limited to Bertie County, North Carolina, where she lives and works. (ECF No. 32 at 19). Ms. Tripp also testified that she lacks personal knowledge of some specific aspects of those growers' practices, such as what occurred at their flock advisor visits, recommendations provided at site visits, and whether the growers adhere to those recommendations. *Id.* Defendant argues that these admissions undermine the statements in her declaration. *Id.* Based on the limited record before it, the Court is not prepared to find that these statements are inconsistent with Ms. Tripp's declaration. However, even if some purported discrepancies between Ms. Tripp's declaration and her deposition testimony existed which cast doubt on her credibility, the court need not, and indeed should not, assess her credibility at this stage. *Butler*, 876 F. Supp. 2d at 571 (citations omitted).

13

demonstrated a factual nexus connecting her to other potential plaintiffs in the proposed collective by way of the Proposed Poultry Agreement, such that they are "similarly situated," and conditional certification is appropriate.

Finally, Defendant contends that conditional certification should not be granted because the members of the proposed collective have "highly-fact-intensive claims" which could not be adjudicated efficiently and manageably without "substantial individualized determinations for each class member." (ECF No. 32 at 29) (citations omitted). Defendant attaches affidavits from six growers, which highlight their varying schedules, salaries, and ownership of other businesses, and argues that differences amongst the class "will only become more pronounced when extrapolated out to the six other states of growers Plaintiff seeks to represent." (ECF Nos. 32 at 31, 32-4, 32-5, 32-6, 32-7, 32-8, 32-9). Defendant's argument emphasizes the potential for factual differences between members of the prospective class and essentially asks that this Court consider the merits of Plaintiff's claims. This kind of determination is premature at the conditional certification stage. *See Williams*, 2011 WL 1539941 at *3 ("Attacking the merits of the case is inappropriate at [the conditional certification] stage."); *see also Essame v. SSC Laurel Operating Co. LLC*, 847 F. Supp. 2d 821, 826 (D. Md. 2012) (rejecting argument that plaintiffs' "allegations and factual circumstances are dissimilar and anecdotal, and, therefore, only merit individualized treatment" because it "delves too deeply into the merits of the dispute" at the conditional certification stage). Moreover, when employees "share a similar issue of law or fact material to the disposition of their claims," "dissimilarities in other respects should not defeat collective treatment." *Jackson v. American Electronic Warfare Associates, Inc.*, No. TDC-22-1456, 2023 WL 5154518, at *3 (D. Md. Aug. 10, 2023) (quoting *Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 516, 522 (2d Cir. 2020)). Alleged misclassification under the Poultry Producer Agreement,

at the very least, serves as a shared material issue for all collective members. Plaintiff has made the necessary minimal evidentiary showing that the proposed collective is similarly situated, and conditional certification remains warranted.

Finally, as noted above, the FLSA collective certification process occurs in two stages. Defendant will thus have an opportunity after the close of discovery to assert that plaintiffs are not, in fact, "similarly situated," under the more stringent inquiry that applies at the decertification stage.

### III.    COURT FACILITATED NOTICE

Once the Court has granted conditional certification of the FLSA collective, it then must approve of the notice by which plaintiffs will inform potential members of the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate. *See Butler*, 876 F. Supp. 2d at 574-75 (citations omitted). This Court's broad discretion over opt-in notices is guided by an overarching goal to "provide accurate and timely notice concerning the pendency of the collective action, so that potential plaintiffs can make informed decisions about whether to participate." *Butler*, 876 F. Supp. 2d at 575 (quotations and citations omitted). Nevertheless, this Court "will not order more extensive notification than is necessary, to reach potential class members [,]" unless special circumstances exist. *Blake v. Broadway Services, Inc.*, No. CCB-18-086, 2018 WL 4374915, at *5 (D. Md. 2018).

In order to provide notice to the proposed collective, Plaintiff asks that Defendant be ordered to produce a list in electronic, importable, and native format, with the following information for all of Defendant's growers from April 4, 2021 to the present: name, job title, last known mailing address, home and cell phone numbers, business and home email addresses, dates of employment, location of employment, last four digits of their Social Security Number, and date of birth. (ECF No. 19-2 at 18). Plaintiff contends this information is necessary because "many

15

employees who worked for Defendants during the relevant period are transient and may have moved since their employment and thus further information is needed to locate them for delivery of notice." *Id.* at 19. Plaintiff requests a 90-day opt-in period, with notice delivered by email, text message, and first-class mail, with a reminder sent to potential collective members who have not responded after 45 days. *Id.* at 19-21. Finally, Plaintiff asks that potential collective members be permitted to execute their Opt-In Consent Forms online through an electronic signature service. *Id.* at 19. Defendant responds that Plaintiff's request for identifying information is invasive and unwarranted. (ECF No. 32 at 36). Defendant advocates for notice by U.S. mail only, a 60-day opt-in period, and requests that the Court appoint a third-party administrator to effect notice if notice is authorized. *Id.* Defendant further offers to pay the cost of an administrator. *Id.* Plaintiff does not oppose the appointment of a third-party administrator, provided the parties can agree on a vendor. (ECF No. 33 at 16).

Some courts of this District have previously held that "absent a showing by plaintiffs of 'special need' for disclosure of class members' telephone numbers,' ordering such disclosure is not appropriate." *Calderon v. Geico Gen. Insurance Co.*, No. RWT-10-cv-1058, 2011 WL 98197, at *9 (D. Md. Jan. 12, 2011) (citing *Arevalo v. D.J.'s Underground*, No. DKC 09-3199, 2010 WL 4026112, at *2 (D. Md. Oct. 13, 2010); *see also Butler*, 876 F. Supp. 2d at 577 n.17. Others have ordered the disclosure of phone numbers without a finding of "special need." *See, e.g.*, *Biscardi v. Gov't Emps. Insurance Co.*, No. GJH-21-2240, 2023 WL 155238, at *5 (D. Md. Jan. 11, 2023) (noting "courts in the Fourth Circuit have frequently permitted FLSA noticed to be distributed via text and email"); *Boyd v. SFS Commc'ns, LLC*, No. PJM 15-3068, 2017 WL 386539, at *3 (D. Md. Jan. 27, 2017) ("Plaintiffs do not have to demonstrate a special need to justify the disclosure of phone numbers."). Here, the Court finds that notice by text and email is most likely to facilitate

16

adequate notice and is consistent with the goals of the FLSA. *Boyd*, 2017 WL 386539 ("From a practical standpoint, four-year mailing addresses may be outdated, but phone numbers and email addresses are more likely to have remained constant, which would facilitate contact with potential Plaintiffs who may have changed homes."); *Butler*, 876 F. Supp. 2d at 574-75 (quoting *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) ("The overarching policies of the FLSA's collective suit provisions requires that the proposed notice provide 'accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate.'"). This is particularly so given Plaintiff's representation that many growers may have relocated. The Court, however, declines to order Defendant to produce the Social Security Numbers and dates of birth of potential collective members at this time given their individual privacy interests. If Plaintiff's counsel later demonstrates that notice by email, text message, and U.S. mail are ineffective, the Court will consider ordering their production. *See Arevalo*, 2010 WL 4026112, at *2 (revisiting the possibility of notice by telephone where plaintiffs represented initial notice by mail failed to reach potential collective members).

Turning to the length of the opt-in period, a 90-day period is reasonable and "numerous courts around the country have authorized ninety-day opt-in periods for collective actions." *Butler*, 876 F. Supp. 2d at 575 (collecting cases). The undersigned also believes that a 45-day reminder notice is reasonable, as is the execution of the opt-in form by electronic signature. *Sarahong v. Smartlink, LLC*, No. BPG-22-328, 2022 WL 2065930, at *3 (D. Md. June 8, 2022) (authorizing consent forms be completed through DocuSign).

Regarding the documents themselves, Plaintiff provides a Proposed Notice, Proposed Opt-in Form, Proposed Reminder Notice, a Vietnamese translation of these documents, and a translator

17

declaration. (ECF Nos. 19-4, 19-5, 19-6, 19-7, 19-8). Defendant proposes a number of revisions to the Notice and attaches a redlined version for the Court's consideration. (ECF No. 32-10). Plaintiff did not address Defendant's revisions in her Reply. Accordingly, the undersigned will order the parties to confer on the both the proposed revisions and a vendor to serve as a third-party administrator, so that the parties may attempt to reach a resolution on these issues without court intervention. Given that Defendant requests the appointment of a third-party administrator and has offered to pay for the administrator, the Court will additionally order that Defendant be responsible for all fees associated with the third party-administrator unless the parties agree otherwise.

### IV.   CONCLUSION

For the reasons stated herein, it is hereby ORDERED that:

1. Plaintiff's Motion for Conditional Certification and to Facilitate Notice Pursuant to 29 U.S.C. § 216(b) is GRANTED in part and DENIED in part;

2. Defendants shall prepare a list of names and contact information (including job title, last known mailing address, home and cell phone numbers, business and home email addresses, dates of employment, and location of employment), for individuals who currently grow or formerly grew chickens for Defendant under a Perdue Poultry Producer Agreement from April 4, 2021, to the present, so that the list may be timely presented to the third-party administrator appointed in this matter; and

3. The parties shall submit for Court approval no later than **November 25, 2024** a joint proposed notice, or in the alternative individual proposed notices, by which potential plaintiffs will be apprised of their ability to opt-in to this action, as well as a status report indicating whether the parties have agreed upon a third-party administrator.

Dated: November 13, 2024

                                           /s/
                                        J. Mark Coulson
                                        United States Magistrate Judge