UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
Northern Division

| | |
|---|---|
| BARBARA TRIPP, individually and on behalf of all others similarly situated,<br><br>*Plaintiff,*<br><br>v.<br><br>PERDUE FOODS LLC,<br><br>*Defendant.* | Case No.: 1:24-CV-987-JMC |

### PARTIES' SUPPLEMENTAL JOINT RULE 26(f) REPORT

Pursuant to Federal Rule of Civil Procedure 26(f), Plaintiff Barbara Tripp, individually and on behalf of Opt-in Plaintiffs (collectively "Plaintiffs"), and Defendant Perdue Foods LLC ("Defendant") (Plaintiffs and Defendant collectively referred to herein as the "Parties") submit this Supplemental Joint Rule 26(f) Report.

Pursuant to the Parties' original Joint Rule 26(f) Report dated November 22, 2024 and adopted by the Court on November 25, 2024 (Doc. 37), within fourteen (14) days of the close of the collective action opt-in period (which closed April 3, 2025), the Parties proposed that they meet and confer to reassess the claims, defenses, and possibilities for resolution of the case, and to formulate a discovery plan, as provided in Rule 26(f). Accordingly, the Parties have conferred and submit this supplemental Rule 26(f) report.

1.      **Initial Disclosures:** The Parties exchanged initial disclosures pursuant to Fed. R. Civ. P. 26(a)(1) on December 23 and 24, 2024.

2.      **Discovery Plan:** The Parties submit this Discovery Plan to the Court, outlining points of disagreement and providing a general overview of their respective positions for discovery in this collective action.

A.    Discovery Deadline: All fact discovery and decertification expert discovery (as described *infra* §2.G) shall be completed on or before April 6, 2026. Following any ruling on Defendant's decertification motion, the Parties may request time to conduct additional expert discovery.

B.    Discovery will be needed on the following subjects, notwithstanding each Parties' right to seek a protective order or other relief in response to specific requests that are objectionable under the Federal Rules of Civil Procedure:

- Whether Plaintiffs are "similarly situated;"
- Whether a collective action is an appropriate;
- Whether Plaintiffs are independent contractors or employees under the economic realities test;
- Whether Plaintiffs are otherwise exempt under the FLSA;
- Whether Defendant acted in good faith;
- Whether Defendant's acts were willful;
- Hours worked by Plaintiffs;
- Whether Defendant knew or should have reason to know of the hours worked by Plaintiffs;
- Whether hours worked by Plaintiffs were compensable;

- Any defenses raised by Defendant, as set forth in its answer or that becomes otherwise applicable as discovery proceeds;

- Other facts that affect or are relevant to Plaintiffs claims and/or Defendant's defenses;

- The amount of damages to which Plaintiffs are entitled, if any;

- Defendant's company policy, pattern, or practice, related to how Defendant classified Plaintiffs;

- The total compensation Defendant paid Plaintiffs; and

- Any previous or ongoing complaints filed with or investigations by the United States Department of Labor and/or state agencies into Defendant's pay practices.

C.   Discovery Limits: The Parties agree on the scope of written discovery between the Named Plaintiff and Defendant. The Parties disagree on the scope of written discovery and depositions allowed for all Opt-in Plaintiffs. The Parties' respective positions are outlined below.

D.   *Written Discovery Limits*: Defendant may serve a maximum of thirty (30) interrogatories and thirty (30) requests for production of documents on Named Plaintiff and Named Plaintiff may serve a maximum of thirty (30) interrogatories and thirty (30) requests for production of documents on Defendant. Responses and objections will be due thirty (30) days after service, except as otherwise consented to by the parties. Regardless of consent, each party reserves its right to apply to the Court for an extension of time to respond to discovery requests. The Parties will abide by Rule 36 of the Federal Rules of Civil Procedure concerning any requests for admission.

- *Written Discovery Limits on Opt-in Plaintiffs*:

***Plaintiffs' Proposal*:**

Consistent with existing caselaw, Plaintiffs believe the Court should order any discovery on the opt-in Plaintiffs in this matter to proceed on a representative basis (including written and deposition discovery). Specifically, Plaintiffs propose the following conditions for opt-in discovery in this matter:

1. Both written and deposition discovery be limited to a representative sample of 10% of the total opt-in Plaintiff class;

2. The Parties jointly select which members of the opt-in Plaintiff class are subject to written and depositions discovery (for example—Defendant selects half of the members and Plaintiffs select the other half);

3. Written discovery to the selected members of the opt-in Plaintiffs be limited to 5 interrogatories and 5 requests for production of documents, which shall not include requests for admission, and shall be identical requests to all selected members of the opt-in Plaintiffs;

4. Each opt-in Plaintiff subject to discovery also be granted the ability to serve the same number of written discovery on Defendant;

5. Plaintiffs be allowed to take the same number of depositions as Defendant (which number shall include any opt-in Plaintiff depositions that Defendant is permitted to take)—depositions which Plaintiffs should be allowed due to the sheer number of witnesses in Defendant's employ with discoverable information, in particular the many field and/or "flock" supervisors that supervised Plaintiffs and their farms, implementing Perdue's control, through contacts with Plaintiffs on a weekly or more basis;[1]

6. Depositions of any opt-in Plaintiffs be limited to 3 hours, exclusive of breaks;

7. Depositions of any opt-in Plaintiffs may be taken remotely through Zoom or some other videoconference software; and

8. Responses and objections to written discovery to any selected opt-in Plaintiffs be due 30 days after service, except as otherwise consented to by Defendant and Plaintiffs. Regardless of consent, the opt-in party reserve their right to apply to the Court for an extension of time to respond.

---

[1] For this reason, Defendant's assertion below that Plaintiffs are requesting this as a mere matter of course is incorrect. Defendant takes the position that they must depose half of the opt-in Plaintiffs because of the "fact-intensive" nature of Defendant's defenses as to each Plaintiff. While Plaintiffs disagree with that approach due to the uniformity of Defendant's policies and controls on its growers, to the extent Defendant is allowed to pursue variances on the margins across 50 percent of the opt-in Plaintiffs, Plaintiffs would be prejudiced if they could not answer with discovery of their own to show how control was in fact consistent across individual growers—for example, by deposing the individual flock supervisors who had direct contact with the opt-in Plaintiffs, which could potentially number in the hundreds.

Allowing a defendant to propound individualized discovery requests (including depositions) on opt-in plaintiffs belies the entire rationale for allowing Fair Labor Standards Act ("FLSA") cases to proceed as collective actions, namely, to increase efficiency and lower individual costs. *See Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989). Furthermore, the Federal Rules of Civil Procedure require that discovery be limited where "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Accordingly, allowing Defendant to request individualized and detailed discovery from each Opt-in Plaintiff would not only undermine the entire purpose of collective actions, but responding to the discovery would likely be overly burdensome, cumulative, and duplicative.

"Courts routinely approve the use of representative testimony in FLSA cases." *Romero v. Florida Power & Light Company*, 2012 WL 1970125, *5 (M.D. Fla. June 1, 2012) (citing *Donovan v. New Floridian Hotel, Inc.*, 676 F.2d 468, 472 (11th Cir.1982) (holding that "it is clear that each employee need not testify in order to make out a *prima facie* case of the number of hours worked as a matter of 'just and reasonable inference'").

The procedure of allowing a case and trial to proceed on a representative basis affords plaintiffs the "advantage of lower individual costs to vindicate rights by the pooling of resources" and, in turn, "[t]he judicial system benefits by efficient resolution in one proceeding of common issues of law and fact." *Sperling*, 493 U.S. at 170. Critically, the United States Supreme Court recently reaffirmed the use of representative sampling in collective actions. *See Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1049 (2016). The Fourth Circuit has held "[c]ourts have frequently granted back wages under the FLSA to non-testifying employees based upon the representative testimony of a small percentage of the employees." *Donovan v. Bel-loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985). The Fourth Circuit further opined that "[t]here is no requirement that to establish a [*Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680 (1946)] pattern or practice, testimony must refer to all nontestifying employees. Such a requirement would thwart the purposes of the sort of representational testimony clearly contemplated by *Mt. Clemens*." *Id.* Thus, it is well-established that representative testimony can be used at trial for groups of workers in an FLSA collective action to actually prove the violations they allege to have occurred.

Courts have further held that "[p]ermitting the full scope of discovery authorized by the Federal Rules of Civil Procedure would undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources." *Kesley v. Entm't U.S.A. Inc.*, 2015 WL 4064715, at *2 (D. Ariz. July 2, 2015) (ordering a 15% sampling of class of approximately 70 to 120 workers) (internal citations removed). In FLSA collective actions, when there are factual disputes between the parties regarding an "employer's policies and practices, limiting discovery to a representative sample of Opt-In Plaintiffs is particularly appropriate." *Jones v. Hoffberger Moving Servs. LLC*, No. 13-cv-0535-JKB, 2014 WL 713541, *2 (D. Md. Feb 24, 2014). Proceeding with discovery on a representative basis comports with the FLSA's remedial goals for collective actions, which are "(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct." *Morgan v.*

*Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264–65 (11th Cir. 2008) (citing Sperling, 493 U.S. 165 at 170).

District courts routinely have ordered representative discovery in FLSA collective actions, as opposed to individualized discovery like Defendant seeks here. *See e.g.*, *Jones*, 2014 WL 713541 (rejecting employer's request for discovery from each of the forty-three total plaintiffs); *Byard v. Verizon W. Virginia, Inc.*, No. 1:11CV132, 2013 WL 5535913 (N.D. W. Va. Oct. 7, 2013) (limiting discovery to approximately twenty percent (20%) of the collective members); *Bradford v. Bed, Bath & Beyond, Inc.*, 184 F.Supp.2d 1342, 1344 (N.D. Ga. 2002) (discovery to 25 out of 300 opt-ins, or 8.3% of the collective class); *Lawson v. Love's Travel Stops & Cnty. Stores, Inc.*, No. 1:17-CV-1266, 2018 U.S. Dist. LEXIS 124048, at *2 (M.D. Pa. June 25, 2018) (ordering responses to written discovery from 20 of 368 opt-in plaintiffs, or 5.3%); *Scott v. Bimbo Bakeries, USA, Inc.*, No. 10-3154, 2012 U.S. Dist. LEXIS 175016, at *16 (E.D. Pa. Dec. 11, 2012) (permitting written discovery to 10% of collective members, and depositions of 20 of 650 collective action members); *Halleen v. Belk, Inc.*, No. 4:16-cv-55, 2017 WL 1495085 (E.D. Tex. Apr. 26, 2017) (permitting defendants to depose and take written discovery from 6.8% of the 363 opt in plaintiffs); *Lloyd v. JP Morgan Chase*, Nos. 11-cv-9305, 12-cv-2197, 2015 WL 1283681 (S.D.N.Y. Mar. 20, 2015) (limiting paper discovery to 10% of the collective and deposition discovery to 2% of collective); *O'Toole v. Sears Roebuck and Co.*, 2014 WL 1388660 (N.D. Ill. Apr. 10, 2014) (permitting limited written discovery to 33% of collective, and limiting depositions to 10% of collective).

A representative sample of ten percent (10%) of the Opt-in Plaintiffs is appropriate and would provide Defendant with sufficient information to mount any defense. *See Cranney v. Carriage Servs.*, No. 2:07-cv-01587-RLH-PAL, 2008 U.S. Dist. LEXIS 113606, at *16 (D. Nev. June 16, 2008); *Scott*, 2012 U.S. Dist. LEXIS 175016, at *16 (both limiting discovery of opt-in plaintiffs to a representative sample of ten percent (10%)). Such a sample would provide Defendant with more than adequate discovery.

Plaintiffs were willing to agree—for compromise purposes only and in an attempt to prevent Court intervention—to higher discovery limits than proposed here, including: (1) written discovery on up to 50% of the opt-in Plaintiff class, inclusive of the other limits identified and proposed *supra*; and (2) depositions on approximately 20% of the Opt-in Plaintiffs, inclusive of the other conditions identified and proposed *supra*.

Unfortunately, Defendant was not willing to agree to anything other than complete individualized written discovery to all Opt-in Plaintiffs and depositions for 50% of the class. Instead of Defendant's all-or-nothing approach, Plaintiffs' proposal would allow Defendant to seek discovery and information from an appropriate and representative number of Plaintiffs. This proposed representative discovery gives Defendant ample basis to investigate the claims at issue and move for decertification of the collective action. Defendant's argument that it needs discovery on each Opt-in Plaintiff due to the individualized nature of their claims and/or their own failure to keep and/or retain Plaintiffs' employment records is unavailing, as the caselaw above confirms.

Regarding Defendant's argument that "due process" requires individualized discovery, this is incorrect. Defendant appears to claim that it must pursue individualized discovery to contest various economic realities factors. Yet, the information Defendant claims to need on an

individualized basis is actually available on a common basis from Defendant. For example, one of Defendant's proposed lines of inquiry is about investments opt-in Plaintiffs made to their farms. But Defendant's policies control exactly the equipment and upgrades each grower can have on their farm, and many times, Defendant finances it—thus it is Defendants who have the relevant information as to how opt-in Plaintiffs may have upgraded or invested in their farms. As another example, many of Defendant's proposed lines of inquiry center around whether opt-in Plaintiffs advertised their business or had the opportunity to grow an outside business—presumably to get at the economic realities factor focused on an employee's ability to use managerial skill to increase profit. But as a matter of policy that Defendant enforced, Defendant's growers were not and are not allowed to grow for any other integrators. They could grow for Perdue and Perdue only. So, again, it is Defendant that has the relevant information. And it is not clear what relevance a grower claiming a tax exemption would have on the economic realities factors. This is a collective action—representative discovery and testimony is largely the norm in these types of cases, and Defendant does not offer a basis to depart from it.[2]

Moreover, contrary to Defendant's assertion, Plaintiffs' claims of misclassification are identical for all Plaintiffs. Defendant does not need discovery from each Plaintiff to move for decertification—representative discovery affords Defendant with every opportunity to sample the collective class to determine whether Plaintiffs are similarly situated, as is the standard for its forthcoming motion for decertification. Should decertification be denied, the case will move forward with representative testimony and evidence from the Plaintiffs.

If Defendant is allowed to conduct full-blown individualized discovery on each and every Opt-in Plaintiff it will not only be contrary to the multitude of holdings in similar cases described above, but it will also be used to discourage opt-ins from participating in the case and vindicating their rights under the FLSA and be extremely costly and burdensome. *See, e.g.*, *Scott*, 2012 U.S. Dist. Lexis 175016, at *7 (finding that defendant's proposal of individual opt-in discovery was "designed to overwhelm plaintiffs' counsel rather than to fairly obtain necessary information for a very focused and discrete issue"); *Hinterberger v. Catholic Health Sys., Inc.*, 284 F.R.D. 94, 103 (W.D.N.Y. 2012) (noting that the "[u]se of a sample to avoid burdensome and even impractical discovery in cases involving numerous parties is of course a well-recognized technique"); *Craig v. Rite Aid Corp.*, No. 4:08-CV-2317, 2011 U.S. Dist. LEXIS 13843, at *22-23 (M.D. Pa. Feb. 7, 2011) (Defendant's proposal for individualized written discovery "would almost surely lead to an expensive, inefficient process that would unnecessarily delay and frustrate the process in this action"); *Cranney*, 2008 U.S. Dist. LEXIS 113606, at *15 (permitting the full scope of discovery would "undermine the purpose of conditionally certifying a collective action and would be unreasonably burdensome and wasteful of the parties' and the court's resources.").

Given the common claims, requiring that each Opt-In Plaintiff here respond to written discovery is cumulative, duplicative, and burdensome and will not "reduce the burden on plaintiffs

---

[2] "Limiting discovery to a statistically significant representative sampling . . . will both reasonably minimize the otherwise extraordinary burden imposed on the plaintiffs and their counsel and yet afford the defendant a reasonable opportunity to explore, discover, and establish an evidentiary basis for its defenses." *Smith v. Lowe's Home Centers, Inc.*, 236 F.R.D. 354, 357–58 (S.D. Ohio 2006).

through the pooling of resources, and efficiently resolve common issues of law and fact that arise from the same illegal conduct." *Morgan*, 551 F.3d at 1264-65. Representative discovery perfectly suits the needs of this case while affording Defendant a fair and reasonable amount of discovery to prepare its motion for decertification—motions that do not require individualized discovery or evidence from every member of a collective class.[3] *See, e.g.*, *Prentice v. Public Interest Research*, 2007 WL 2729182 at *5 (N.D. Cal. 2007) (Individualized discovery is rarely appropriate in FLSA collective actions); *Fast v. Applebee's International Inc.*, 2008 WL 543228 (W.D. Mo. 2008) (four separate criteria have to be met before individualized discovery is permitted); *McGrath v. City of Philadelphia*, 1994 U.S. Dist. LEXIS 1495 (E.D. Pa. 1994) (discovery of absent collective action members would only serve to obfuscate the issues and drastically enhance the costs of litigation).

### *Defendant's Proposal:*

Defendant seeks the ability to obtain limited written discovery from all opt-in plaintiffs and truncated depositions of a limited number of opt-in plaintiffs. The general overview is as follows:

1. Defendant may serve a maximum of <u>eight (8) interrogatories</u>, including discrete subparts, on each Opt-in Plaintiff.
2. Defendant may serve a maximum of <u>eight (8) requests for production of documents</u>, including discrete subparts, on each Opt-in Plaintiff.
3. The written discovery served to each Opt-in Plaintiff would be substantially identical.
4. Defendant shall be allowed to take <u>depositions of a total of 50% of the opt-in plaintiffs</u>. Defendant would choose half of the deponents and Named Plaintiff would choose the other half.
5. Each Opt-in Plaintiff deposition will be limited to <u>3.5 hours on the record</u> (and exclusive of breaks) and may be <u>taken remotely</u> through Zoom or some other videoconference software.
6. In the event an Opt-in Plaintiff does not appear for their deposition, Defendant reserves the right to select replacement Opt-in Plaintiffs to ensure the total allowable number of depositions occurs.

The written discovery requested would be focused on information or documents that are: (1) in the possession, custody or control of each Opt-in Plaintiff, (2) that would not typically be

---

[3] To the extent Defendant argues it will need individualized damage calculations for the Plaintiffs, Plaintiffs agree to provide such individualized damage calculations summaries prior to trial as well. Damages summaries are commonly used in FLSA collective actions. *See Burnett v. Walker Cty. Comm'n*, 2018 U.S. Dist. LEXIS 114572, at *1 n.1 (N.D. Ala. May 16, 2018) (admitting into evidence damage calculations summarizing pay and time records); *Guijosa-Silva v. Wendell Roberson Farms, Inc.*, 2012 U.S. Dist. LEXIS 33358, at *10 (M.D. Ga. Mar. 13, 2012) (rejecting defendant's objection to plaintiffs' use of summaries condensing payroll summaries and payroll check registers); *Chen v. E. Mkt. Rest.*, 2018 U.S. Dist. LEXIS 3877, at *21 (S.D.N.Y. Jan 9, 2018) (calculating plaintiffs' damages for unpaid wages using plaintiffs' charts summarizing hours worked, wages paid, and the resulting damages sought); *Felker v. Sw. Emergency Med. Serv.*, 581 F. Supp. 2d 1006, 1012 (S.D. Ind. 2008) (utilizing plaintiffs' summary of damages after they were found to be accurately derived from records kept by defendant); Fed. R. Evid. 1006.

available to Defendant because these Opt-in Plaintiffs operate independently, and (3) that are directly relevant to the claims and defenses of each Opt-in Plaintiff. Specifically, Defendant anticipates seeking written discovery on:

*Anticipated Interrogatories*:

- Whether the Opt-in Plaintiff operated through an LLC and/or operated any outside business(es);
- Relative income earned from outside businesses, including diversified farming;
- Whether the Opt-in Plaintiff employed or utilized helpers/employees in his/her farming operations;
- The Opt-in Plaintiff's investment in the business, including any deductions on tax returns (from the federal Schedule C-Profit or Loss from business- not personal tax returns);
- Any statements by others obtained or provided to the Opt-in Plaintiff that he/she may use to support his/her claims in this lawsuit;
- Hours worked by the Opt-in Plaintiff, including the nature of tasks performed during claimed hours worked; and
- Whether the Opt-in Plaintiff has posted, shared, or otherwise engaged with social media websites regarding the claims he or she asserted in this lawsuit.

*Anticipated Request for Productions*:

- Tax returns (including, *e.g.*, federal Schedule C-Profit or Loss from Business or similar documents – not personal tax information) showing Opt-in Plaintiff's level of investment, revenues, representations regarding self-employment status, and/or information regarding outside businesses;
- Records regarding any agricultural tax exemption obtained;
- Documents related to investments in the business, earnings or revenue obtained through outside businesses;
- Advertisements for the business and/or any outside business(es);
- Records of payments to helpers or employees;
- Records regarding hours worked; and
- Other records supporting Plaintiff's claims.

Defendant would then use the information and documents obtained through written discovery to help identify and select the limited number of Opt-in Plaintiffs to depose. For Opt-in Plaintiff depositions, Defendant would utilize the opportunity to efficiently explore information provided in the written discovery responses, outlined above, as well as items such as:

- The extent of alleged control exercised by management in practice,
- Policies or procedures to which grower was subject; and
- Differences in the all above categories by and between opt-in plaintiffs.

Prohibiting Perdue from obtaining limited discovery from each Opt-in Plaintiff would deprive Perdue of the opportunity to conduct the discovery necessary to establish its defenses to the claims of each Opt-in Plaintiff, each of whom is seeking full damages against Perdue, and to

9

obtain evidence necessary for a decertification motion. *American Surety Co. v. Baldwin*, 287 U.S. 156, 168 (1932); *Scott v. Raudin McCormick, Inc.*, 2010 WL 3125955, at *5 (D. Kan. Aug. 6, 2010) (reiterating "individualized discovery was necessary in order for [d]efendants to obtain information that would permit them to determine whether any particular [p]laintiff fell within certain FLSA exemptions that [d]efendants may assert in their defense" and dismissing any of the 1,548 opt-in plaintiffs who failed to respond to discovery requests).

In this FLSA misclassification case, Perdue has the initial burden of proving the independent contractor status of Plaintiff and each of the approximately 75 Opt-in Plaintiffs. This inquiry requires the application of a multi-factor, fact-intensive test for each Plaintiff's working relationship with Perdue. *Woodbury v. Victory Van Lines*, 286 F. Supp. 3d 685, 694 (D. Md. 2017). While Perdue would be in possession of some facts relevant to these claims, such as management's interactions with growers, independent contractor agreements, and any policies/procedures they provided, the growers themselves would be in exclusive possession and control of most other critical facts, including the anticipated areas of inquiry for discovery outlined above. All of these are critical facts directly relevant to the claims and various exemption defenses Perdue has here. Merely allowing representative testimony on these critical facts is not appropriate and would be a denial of due process. *In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 268 F.R.D. 604, 612 (N.D. Cal. 2010) (noting "representative testimony is typically only allowed in the unpaid overtime context to establish the number of hours employees worked and the amount they were paid, not whether a class of employees was exempt from the overtime laws' coverage."); *Novak v. Home Depo USA, Inc.*, 259 F.R.D. 106, 117 (D.N.J. 2009) (noting when there are potential differences in exempt status of individuals, an all-or-nothing liability determination is untenable); *Coldiron v. Pizza Hut, Inc.*, 2004 WL 2601180, at *2 (C.D. Cal. Oct. 25, 2004) (holding individualized discovery is necessary and appropriate, especially where propriety of class action was at issue and defendant intended to move for decertification of exemption-based claims, and denial of such discovery would be an abuse of discretion).

While Perdue recognizes some cases have permitted "representative" discovery, many of these cases, like *Mt. Clemens* and *Tyson*, often involve representative discovery on hours worked or damages—not the representative discovery regarding the fact-intensive defenses Perdue has asserted here (independent contractor classification and agricultural exemption). *See, e.g., Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 692-93 (1946) (nowhere using the terminology "representative testimony" and discussing how, in the absence of accurate employer records, *the plaintiffs* could carry *their* burden of proving the time they worked and damages sought); *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 447, 136 S. Ct. 1036, 1042, 194 L. Ed. 2d 124 (2016) (representative sampling permitted as evidence of average time spent donning and doffing protective gear per employer's procedures at employer's facility); *Donovan v. Bel-loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985) (approving representative discovery where claims merely required evidence of working through meal breaks at employer's restaurant).

Importantly, "[e]ach opt-in Plaintiff to this action has consciously agreed to become a Party Plaintiff to the litigation and, therefore, has agreed to participate in the litigation." *Ewers v. City of Petersburg, Virginia*, 2016 WL 9226394, at *1 (E.D. Va. June 3, 2016) (holding limited discovery would compromise court's ability to fully and informedly consider issue of final certification and permitting discovery on each party plaintiff). Consistent with this obligation to litigate claims, federal courts routinely permit defendants in FLSA collective actions to serve

10

written discovery on all opt-ins following conditional certification, including in cases that involve substantially more opt-in plaintiffs than is the case here. *See, e.g.*, *Faust v. Comcast Cable Commc'ns Mgmt., LLC*, 2013 WL 1395933, at *1 (D. Md. Apr. 3, 2013) (noting prior order granting defendant's request to serve written discovery on all opt-in plaintiffs); *Irvine v. Destination Wild Dunes Mgmt., Inc.*, 2016 WL 1213639, at *1 (D.S.C. Mar. 28, 2016) (permitting limited discovery of all opt-in plaintiffs and additional discovery on opt-in plaintiffs selected for deposition); *Ewers v. City of Petersburg, Virginia*, 2016 WL 9226394, at *1 (E.D. Va. June 3, 2016) (allowing written discovery on all opt-in plaintiffs and noting history of courts allowing individualized discovery in FLSA cases ""involving groups of forty-nine to a few hundred plaintiffs); *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233 (11th Cir. 2008) (upholding decision based on interrogatories on all 2,100 opt-ins and depositions of 250 opt-ins); *Blandon v. Waste Pro USA, Inc.*, 2021 WL 2474282, at *4 (M.D. Fla. Apr. 30, 2021) (permitting written discovery from all 315 opt-in plaintiffs); *Thomas v. Kellogg Co.*, 2014 WL 4748144 (W.D. Wash. Sept. 24, 2014) (distinguishing Rule 23 class actions from FLSA collective actions and allowing written discovery on each of the 800+ opt-in plaintiffs).

Similar to written discovery, the ability to depose individual opt-in plaintiffs is equally important for the same reasons and as a matter of due process. Several federal courts have permitted defendants to depose <u>all</u> members of a collective (including collectives larger in size than the collective here) for this reason. *See, e.g., Brooks v. Farm Fresh, Inc.*, 759 F. Supp. 1185, 1187 (E.D. Va. 1991) (citing prior order allowing depositions of all 125 plaintiffs); *Abubakar v. City of Solano*, 2008 WL 508911, at *2 (E.D. Cal. Feb. 22, 2008) (refusing to limit discovery (either written or deposition) of 160 opt-in plaintiffs).[4]

Still, Perdue does not seek to depose *all* Opt-in Plaintiffs, but rather only a reasonably limited percentage – 50% or approximately 35 Opt-in Plaintiffs. *See, e.g., Chabrier v. Wilmington Fin.*, Inc., 2008 WL 938872, at *1 (E.D. Pa. Apr. 4, 2008) (depositions on all but a few of the forty-six opt-in plaintiffs); *Daniel v. Quail Int'l, Inc.*, 2010 WL 55941, at *1 (M.D. Ga. Jan. 5, 2010) (depositions of 39 opt-ins); *Ingersoll v. Royal & Sunalliance USA, Inc.*, 2006 WL 2091097, at *3 (W.D. Wash. July 25, 2006) (depositions of 34 opt-in plaintiffs). Plaintiff's proposal, that Defendant may only take 10% of Opt-in Plaintiff depositions (or 7.5), is simply not reasonable given the fact-intensive defenses here and fact that each Opt-in Plaintiff is seeking to recover full damages against Perdue.

For the reasons set forth above, Perdue should be permitted to obtain the reasonable discovery outlined above. To hold otherwise would deprive Perdue of its due process rights to establish its defenses in this litigation to the claims of Plaintiff and all opt-in plaintiffs in this case and its ability to discover facts supporting decertification.

In the event the Court determines further limitations on the scope of Opt-in Plaintiffs appropriate over Perdue's due process concerns, Perdue proposes written discovery on 80%

---

[4] Indeed, where courts allow depositions of a large number of opt-in plaintiffs as a matter of due process, courts are not inclined to permit the plaintiff to take an equal number of depositions as the defendant simply as a matter of course. Nor should Plaintiff be permitted to do so here.

(approximately 60 opt-in plaintiffs) and depositions of 40% (approximately 30 opt-in plaintiffs). Moreover, to the extent the Court agrees each Opt-in Plaintiff should be permitted to serve requests for production and interrogatories on Defendant (as proposed by Plaintiff, *supra*), which Perdue denies is appropriate, the discovery served be substantially identical – the same limitation proposed for written discovery on Opt-in Plaintiffs.

- *Depositions*: Preliminarily, the Parties agree to the following schedule for depositions: within 30 days after service of a responding party's production/responses to written discovery, notwithstanding any objections or disputes thereto. Except as otherwise stated, the Parties will abide by the Local Rules and applicable Standing Orders of the United States District Court for the District of Maryland and the Federal Rules of Civil Procedure relating to the length of depositions. Otherwise, the Parties disagree on limits for depositions and have provided their competing proposals below.

*Plaintiff's Proposal*:

Plaintiffs' proposal for limits on depositions for the opt-in Plaintiffs is identified *supra*. Otherwise, Plaintiffs propose that each party be allowed a total of ten (10) depositions, exclusive of any additional deposition allotments provided for and to the opt-in Plaintiffs. Additionally, and consistent with Fed. R. Civ. P. 30(b)(6), Defendant's corporate designee deposition under that Rule should count as a single deposition, regardless of the number of designee deponents produced by Defendant.

*Defendant's Proposal*:

Defendant's proposal for limits on depositions for the Opt-in Plaintiffs is identified, *supra*. Named Plaintiff shall be allowed a total of ten (10) depositions, including any person(s) designated by Defendant under Federal Rule of Civil Procedure 30(b)(6), to count as one deposition, provided, however, that Defendant shall have the right to seek a protective order or other relief in response to a Rule 30(b)(6) deposition notice that is objectionable under the Federal Rules of Civil Procedure. If the Court permits Defendant to depose 50% of the Opt-in Plaintiffs as requested above, Named Plaintiff shall be permitted to request an additional 3 depositions, for a total of 13 depositions.

E.    Time to Respond: The Parties agree responses and objections to written discovery will be due thirty (30) days after service, except as otherwise consented to by the Parties. Regardless of

consent, each Party reserves its right to apply to the Court for an extension of time to respond to discovery requests.

F.     Supplementing Responses: Supplementations under Rule 26(e) are due within thirty (30) days after a party discovers new information that must be disclosed in order to supplement or correct a prior disclosure or a prior response to a request for a discovery, provided, however, that during the final thirty (30) days of discovery, supplementations will occur as soon as practicable so as not to prejudice either party.

G.     Expert Discovery: To allow the use of experts for purposes of Defendant's motion for decertification, the Parties propose a bifurcated schedule for expert discovery. *First*, "Decertification" expert discovery will occur prior to the resolution of Defendant's forthcoming motion for decertification and shall focus on issues relevant to Defendant's motion for decertification. Decertification expert discovery will be subject to the following deadlines: Pursuant to Fed. R. Civ. P. 26(a)(2), Plaintiffs' expert report(s), if any, will be due on or before February 9, 2026. Defendants' expert report(s) will be due on or before March 16, 2026, and Plaintiffs' expert rebuttal report(s), if any, will be due April 6, 2026. Each side shall be afforded the opportunity to take the depositions of the other side's expert or experts either before or after receiving their report(s). Following the Court's ruling on Defendant's decertification motion, the Parties agree to meet and confer regarding a proposed plan to allow for additional time to complete expert discovery on the issue of damages, to the extent necessary.

H.     Additional Discovery: The parties shall meet and confer in good faith if at any point a party wishes to take additional discovery beyond the limits agreed to *supra*, and the parties will reserve the ability to move the Court for leave, upon a showing of good cause, to take additional discovery beyond what is described in this Report if agreement cannot be reached.

      **3.**    <u>**Electronically Stored Information:**</u> The parties have discussed certain anticipated issues relating to the disclosure or discovery of electronically stored information and report to the Court the following:

A.    <u>Relevant information</u>:  At this point, the parties are not aware of the full extent of relevant information that may be stored electronically, but have identified the following potential sources of electronically stored evidence for Named or Opt-in Plaintiffs that may be relevant to a claim or defense at issue:

    i.    Grower tournament settlement data and any data regarding deductions from growers' compensation for business or other expenses;

    ii.    Payroll records and policies including, but not limited to, hours worked and rates of pay stored by Defendant during the time of Plaintiffs' employment with Defendant;

    iii.    Electronic mail (including all electronic attachments) sent to and/or from the parties and/or decision-makers or employees of Defendant using Defendant's email relevant to the incidents at issue, including, but not limited to, any non-privileged electronic email relating to Plaintiffs' wage and hour claims;

    iv.    Any electronically stored information, including but not limited to text messages, photos, video surveillance cameras, instant messaging, memoranda (and/or drafts thereof), correspondence (and/or drafts thereof); and

    v.    Any other electronically stored information that becomes evident or known during the discovery period and that would fall within the scope of Fed. R. Civ. P. 26 for discovery purposes.

B.    <u>Form of Production/Preservation</u>: Unless otherwise agreed by the parties, all discoverable Electronically Stored Information ("ESI") will be produced in standard industry format, including an archival image load file (.OPT) for images and a metadata load file (.DAT) using Concordance/Relativity standard delimiters ASCII 020 (¶) for columns and ASCII 254 (þ) for quotes. Images will be in single-page, TIFF Group IV, 300 DPI TIFF images for black and white and single page JPG for color images, with the exception of spreadsheet type files (e.g. Excel), Power Point presentations, source code, audio, and video files, and other non-standard files, which

will be produced in native format. Native files will be named according to the Bates number it has been assigned. All individually-maintained ESI will be produced with a delimited, database load file that contains metadata fields as agreed by the parties. The parties further agree that they will undertake a good faith effort to identify relevant electronically stored information and will preserve any such information identified, but the parties agree that Defendant will not be required to deviate from its normal records retention policies (as long as their records retention policies are not in violation of state or federal regulations or in violation of any party's obligation to preserve evidence) with respect to electronically stored information or other records which have not been previously identified by the parties as relevant to this action, and the parties reserve the right to object or otherwise seek a protective order or other relief in response to a request that is objectionable under the Federal Rules of Civil Procedure.

C.  Hard Copy Documents: Unless otherwise agreed by the parties, any hardcopy documents will be scanned in PDF format or single-page, Group IV, 300 DPI TIFF images with an .opt image cross-reference file and a delimited database load file (*i.e.*, .dat). The database load file will contain the following fields: "BEGNO," "ENDNO," "PAGES" and "CUSTODIAN." The documents will be logically unitized (*i.e.*, distinct documents should not be merged into a single record, and a single document should not be split into multiple records) and should be produced in the order in which they are kept in the usual course of business. The parties will apply Optical Character Recognition (OCR) software to all applicable documents and create OCR-searchable files in .TXT format for each page digitized to the extent such OCR text can be provided or applied in an automated fashion.

    **4.**    **Other Items:**

A.      Defendant's Motion for Decertification: The deadline to file any motion for decertification shall be May 6, 2026.

B.      Dispositive Motions: All dispositive motions shall be due on or within three (3) months of the Court's ruling on Defendant's Motion for Decertification.

C.      The Parties are exploring the possibility of conducting mediation, with the exact date to be set by the mediator after consultation with the Parties. The Parties agree to meet and confer to determine the identity of the mediator.

D.      The deadline to request leave to join additional parties or amend pleadings shall be extended to thirty (30) days after the court's ruling on Defendant's motion for decertification. The Parties reserve the right to move to amend their pleadings thereafter if new facts or circumstances are discovered that warrant such amendment

E.      The Parties do not request a conference with the Court prior to the entry of the Scheduling Order.

F.      The Parties will submit Rule 26(a)(3) disclosures as required by that rule and, in any event, no later than thirty (30) days prior to trial.

G.      Parties agree to file objections under Rule 26(a)(3)(B) within fourteen (14) days after service of the disclosure to which the objection is made.

H.      The Parties propose a scheduling conference with the Court within thirty (30) days after the Court rules on Defendant's motion for decertification and any dispositive motions to discuss a schedule for Phase 2 expert discovery, the anticipated length of trial, and any other related matters. Pending disposition of Defendant's anticipated motion for decertification of the collective action, the parties cannot predict an approximate length of trial.  A jury trial has been demanded.

       The Parties have no other matters to present at this time.

Respectfully submitted, this April 17, 2025.

*/s/ Robert W.T. Tucci*_____
Gregg Cohen Greenberg (Bar no:17291)
Robert W.T. Tucci
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910
(301) 587-9373
ggreenberg@zagfirm.com
rtucci@zagfirm.com

Jamie Crooks (admitted pro hac vice)
Michael Lieberman
FAIRMARK PARTNERS LLP
1001 G Street NW
Suite 400 East
Washington, DC 20001
(617) 721-3587
jamie@fairmarklaw.com
michael@fairmarklaw.com

Charles Gerstein
GERSTEIN HARROW LLP
1001 G Street NW
Suite 400 East
Washington, DC 20001
(202) 670-4809
charlie@gerstein-harrow.com

*Counsel for Plaintiffs*

*/s/*_____
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.

Robert R. Niccolini, D.MD No. 24873
1909 K Street, N.W., Suite 1000
Washington, DC  20006
Tel:   (202) 887-0855
Fax:  (202) 887-0866
Email:
robert.niccolini@ogletreedeakins.com

Margaret Santen*
Kevin P. Hishta*
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
T:  404-881-1300
maggie.santen@ogletree.com
kevin.hishta@ogletree.com

Thomas A. Lidbury*
155 N. Wacker Drive, Suite 4300
Chicago, IL  60606
T:  312-558-1230
tom.lidbury@ogletree.com

Charlotte Smith*
8529 Six Forks Road, Suite 600
Raleigh, NC 27615
T: 919-760-4159
charlotte.smith@ogletree.com

*Counsel for Defendant*
*\*Admitted Pro Hac Vice*