IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **Barbara Tripp, individually and on her own behalf and on behalf of all others similarly situated,**<br><br>*Plaintiff*,<br><br>v.<br><br>**Perdue Foods LLC,**<br><br>*Defendant.* | Civil Action No. 1:24-cv-00987-JMC |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION FOR MISCELLANEOUS RELIEF AND TO STRIKE THE CONSENT FORMS OF OPT-IN PLAINTIFFS WITH TIME-BARRED CLAIMS OR, ALTERNATIVELY, DISMISS THEIR CLAIMS**

Defendant Perdue Foods LLC ("Perdue"), by and through undersigned counsel, respectfully moves this Court to strike the Consent to Join Suit Forms (the "Consents") of the following Opt-in Plaintiffs pursuant to Rule 12(f) or, alternatively, to dismiss their claims pursuant to Federal Rules 21 and 41(b), or, in the alternative, pursuant to this Court's inherent discretion.

1. Denise Calloway (ECF No. 53-1)
2. Ro Cherput (ECF No. 54-11)
3. Richard Farrow (ECF No. 53-7)
4. William Lancaster (ECF No. 54-1)
5. Timothy Madeiros (ECF No. 53-9, 61-1, 57-1)
6. Irma Moore (ECF No. 53-4)
7. Fonda Sanderlin/Paul Truman (ECF No. 53-2, 65-1)

(hereinafter "Opt-in Plaintiffs" collectively).

These Opt-in Plaintiffs each filed Consents to join this action pursuant to 29 U.S.C. § 216(b). However, as the Consents they submitted establish, none of these Opt-in Plaintiffs

performed any services for Perdue within three years of filing their Consents.[1] As such, they have no claims within even the longest of *potentially* applicable statute of limitations. Accordingly, Defendant respectfully requests the Court strike each of these Opt-in Plaintiffs' Consents and/or dismiss their claims as being time barred, or, in the alternative, exclude Opt-in Plaintiffs from participating in individualized discovery.

## I. RELEVANT BACKGROUND

Plaintiff Barbara Tripp filed this lawsuit on behalf of herself and other independent growers who entered into independent Poultry Producer Agreements ("PPA") with Perdue (*See* Compl., ECF No. 1.) Therein, Plaintiff alleges Perdue misclassified her and other growers as independent contractors and, as a result, deprived them of minimum wage and overtime compensation in violation of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201–19. (*See* Compl., ECF No. 1.) Perdue denies these allegations in their entirety. (*See* Answer, ECF No. 30.)

On June 12, 2024, Plaintiff filed her Motion for Conditional Certification and to Facilitate Notice Pursuant to § 216(b). (ECF No. 19.) In support of her Motion for Conditional Certification, Plaintiff submitted a proposed notice to be sent to putative class members if the Court granted her Motion for Conditional Certification. Plaintiff's proposed notice explicitly advised putative class member recipients that: (1) "claims in this action are limited to a three-year statute of limitations;" and (2) their potential ability to recover damages would be limited to the "time worked within the two or three years prior to the date you file your consent to Join Form." (ECF No. 19-4, at 3.) Perdue vehemently opposed conditional certification. (*See* Defendant's Response in Opposition to Plaintiff's Motion to Certify Class and Accompanying Exhibits, ECF Nos. 32, 32-1 through 32-9.)

---

[1] Perdue does not concede the three-year statute of limitations applies.

On November 13, 2024, the Court conditionally certified a collective action of growers who currently grow or formerly grew chickens for Perdue under a PPA from April 4, 2021 – or three years preceding the date Plaintiff's complaint was filed – to the present and directed the Parties to confer regarding the content of the notice to be issued. (*See* ECF No. 36.) During the conferral process, Plaintiff consented to further restricting the notice's guidance on the applicable statute of limitations to "claims in this action are limited to a two- or three-year statute of limitations." (*Compare id.*, *with* ECF No. 38-1, at 4). Following the Parties' conferral, the Court approved the Parties' joint proposed notice to be issued to the conditionally certified collective members. (ECF No. 44.)

On January 3, 2025, the notice was issued to putative plaintiffs, which contained Plaintiff's proposed warning to putative class members on the applicable time restrictions:

> Plaintiff's claims in this action are limited to a two- or three-year statute of limitations. ***If you choose to join this action, you may be able to recover damages if you were improperly denied compensation <u>only for time worked within the two or three years prior to the date you file your Consent to Join Form</u>***.

(ECF Nos. 38-1.)[2] Despite this warning, Opt-in Plaintiffs proceeded to submit Consents knowing their claims fell beyond the relevant time period.[3] And, Plaintiff's counsel filed these Consents with the Court knowing the claims fell beyond the relevant time period and were barred under the plain language of the Notice Plaintiff proposed and effectuated.

---

[2] The language in the Notice is appropriate because the action commences for the purpose of calculating the statute of on the date when they an Opt-in Plaintiff files their opt-in consent. *See infra* § II.A.

[3] While additional opt-in plaintiffs' Consents identified dates of service falling outside of their respective relevant time periods, a review of Perdue's business records revealed that these individuals may have performed relevant services within the relevant time period. As such, Perdue limits the instant Motion to those Opt-in Plaintiffs who themselves identified dates of service outside the relevant time period and for whom Perdue's business records confirmed the Opt-in Plaintiffs had not provided any grower services during their respective relevant time periods.

More specifically, on February 28, 2025, Opt-in Plaintiff Denise Calloway ("Calloway") filed her Consent. (ECF No. 53-1). Therein, Calloway represented she was a grower for Perdue in Maryland from approximately January 1990 to on or about August 2019. (*Id.*) Perdue's business records confirmed the last date of contracted for services from Calloway to Perdue occurred on August 21, 2019. (Ex. A, Declaration of Christina Burke ("Decl. Burke"), ¶ 8.)

On February 28, 2025, Opt-in Plaintiff Fonda Sanderlin ("Sanderlin") filed a Consent. (ECF No. 53-2; refiled ECF No. 64-1.) Therein, Sanderlin represented she was a grower for Perdue in North Carolina from approximately January 1990 to on or about February 2002. (*Id.*) Perdue's business records confirmed the last date of contracted for services from Sanderlin to Perdue occurred on May 6, 2021. (Ex. A, Decl. Burke, ¶ 9.)

On February 28, 2025, Opt-in Plaintiff Irma Moore ("Moore") filed her Consent. (ECF No. 53-4.) Therein, Moore represented she was a grower for Perdue in North Carolina from approximately September 1989 to on or about April 2021. (*Id.*) Perdue's business records confirmed the last date of contracted for services from Moore to Perdue occurred on July 21, 2021. (Ex. A, Decl. Burke, ¶ 10.)

On February 28, 2025, Opt-in Plaintiff Richard Farrow ("Farrow") filed his Consent. (ECF No. 53-7.) Therein, (and in the non-filed record submitted alongside his consent but not filed with the Court), Farrow represented he was a grower for Perdue in North Carolina from approximately 1976 until 2021. (*Id.*) Perdue's business records confirmed the last date of contracted for services from Farrow to Perdue occurred on August 4, 2021. (Ex. A, Decl. Burke, ¶ 11.)

On February 28, 2025, Opt-in Plaintiff Timothy Madeiros ("Madeiros") filed his Consent. (ECF No. 53-9, refiled ECF No. 61-1.) Therein, Madeiros represented he was a grower for Perdue in Pennsylvania from approximately November 2010 to on or about May 2021. (*Id.*) Perdue's

business records confirmed the last date of contracted for services from Madeiros to Perdue occurred on May 25, 2021. (Ex. A, Decl. Burke, ¶ 12.)

On March 7, 2025, Opt-in Plaintiff William Lancaster ("Lancaster") filed his Consent. (ECF No. 54-2.) Therein, Lancaster represented he was a grower for Perdue in North Carolina from approximately January 1990 to on or about January 2022. (*Id.*) Perdue's business records confirmed the last date of contracted for services from Lancaster to Perdue occurred on August 27, 2021. (Ex. A, Decl. Burke, ¶ 13.)

On March 7, 2025, Opt-in Plaintiff Ro Zama Cherput ("Cherput") filed his Consent. (ECF No. 54-11.) Therein, Cherput represented he was a grower for Perdue in North Carolina from approximately May 1, 2020, to on or about February 1, 2022. (*Id.*) Perdue's business records confirmed the last date of contracted for services from Cherput to Perdue occurred on February 24, 2022. (Ex. A, Decl. Burke, at ¶ 14.)

With the close of the notice period approaching and with a better understanding of the scope of opt-in plaintiffs participating in the action, on April 1, 2025, Defendant's Counsel advised Plaintiffs' Counsel of the need to address the Opt-in Plaintiffs with expired claims, as evidenced by the information reported by the Opt-in Plaintiffs themselves on the Consents. (Exhibit B (Email Chain Between Counsel), Initial Email from Charlotte Smith to Plaintiffs' Counsel on April 1, 2025 at 7:12 p.m.) Effectively taking the position Opt-in Plaintiffs' own representations regarding services provided were insufficient evidence of work performed, Plaintiffs' Counsel requested Perdue confirm the accuracy of service dates provided by Opt-in Plaintiffs and provide information demonstrating Opt-in Plaintiffs were not entitled to equitable tolling.[4] (*Id.* at April 2, 2025 Email

---

[4] Of course, Plaintiff, *not Perdue*, bears the burden of establishing any Opt-in Plaintiff could be entitled to equitable tolling – an extreme remedy that is available only in very narrow circumstances and should rarely be invoked. *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th

from Amanda Vaughn to Charlotte Smith et al at 11:17 p.m.) Accordingly, Perdue further investigated the last dates of service for each Opt-in Plaintiff. (Ex. A, Decl. Burke, at ¶¶ 7-14.)

On April 15, 2025 and May 6, 2025, Perdue then provided Plaintiffs' Counsel with additional information further evidencing the last date of possible service provided by the subject Opt-in Plaintiffs based on their business records and again requested Opt-in Plaintiffs withdraw Consents for individuals with indisputable expired claims so as to avoid the unnecessary cost and expense of motion practice to address what the Parties know to be true. (Ex. B, April 15, 2025 Charlotte Smith email to Amanda Vaughn et al at 10:34 a.m. and May 6, 2025 Email from Charlotte Smith to Amanda Vaughn et al at 11:37 a.m.) Despite knowledge that both Opt-in Plaintiffs' Consents and Perdue's records evidence the expiration of Opt-in Plaintiffs' claims, on May 15, 2025, Opt-in Plaintiffs effectively refused to withdraw their consents, citing only alleged procedural obstacles to dismissing Opt-in Plaintiffs before completing discovery, but notably providing no legitimate grounds for Opt-in Plaintiffs to continue pursuing nonviable claims. (*Id.,* Email from Robert Tucci to Charlotte Smith et al at 3:12 p.m.) Accordingly, Defendant is

---

Cir. 2002) (Plaintiff must prove as to each opt-in plaintiff that (1) he has diligently pursued his/her rights and (2) some extraordinary circumstance prevented him from taking action). Plaintiff will not be able to do so. <u>First</u>, Opt-in Plaintiffs have waived any argument for equitable tolling. Plaintiff's counsel proposed the notice, which the Court approved and was subsequently sent out, that apprised Opt-in Plaintiffs that the maximum recovery was three-years from the date their consent was filed. Moreover, Plaintiff has failed to take any action to seek any tolling, despite conclusive knowledge of expired claims as early as April 1, 2025 – if not *earlier* upon the date of Plaintiff's counsel's receipt of the Opt-in Plaintiffs' consent forms identifying dates of service beyond any applicable statute of limitations. <u>Second</u>, no extraordinary circumstance prevented Opt-in Plaintiffs from timely asserting their claims, particularly given this Court's expeditious review and ultimate granting of conditional certification. *Compare* ECF No.14 (Plaintiff's first Motion for Conditional Certification filed June 7, 2024) *and* ECF No. 34 (Order granting conditional certification on November 13, 2024), *with Alvarez v. Gov't Emps. Ins. Co.*, 2024 WL 4679399, at *15 (D. Md. Nov. 5, 2024) (denying tolling where only 5 months passed between filing of motion for conditional certification and order granting certification/authorizing notice).

compelled to submit the instant Motion, seeking timely relief from the Court, as soon as practicable and once the need to do so became known.

## II. ARGUMENT

A. **The Court Should Strike the Opt-in Plaintiffs' Consent Pursuant to the Applicable Statute of Limitations.**

Per Rule 83, courts, in any case 'not provided for by rule,' may 'regulate their practice in any manner not inconsistent with' federal or local rules." *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 172, 110 S. Ct. 482, 487, 107 L. Ed. 2d 480 (1989) (noting courts have historically exercised considerable authority "to manage their own affairs so as to achieve the orderly and expeditious disposition of cases"). In practice, this Court maintains the authority to strike filings from the record under its inherent powers to manage its docket and ensure the orderly and expeditious disposition of cases, and such authority is not limited to specific rules, but rather is derived from the Court's inherent power to control its proceedings. *See, e.g., Riggs v. Dayco Prods.*, 2006 U.S. Dist. LEXIS 105437, *3 (W.D.N.C. Feb. 22, 2006) ("Rule 12(f) reflects the inherent power of the Court to prune down pleadings so as to expedite the administration of justice and to prevent abuse of its process."); Fed. R. Civ. P. 21 ("On motion or on its own, the [C]ourt may at any time, on just terms, add or drop a party."); *see also Khepera-Bey v. Santander Consumer USA, Inc.*, 2013 U.S. Dist. LEXIS 4270, *5 (D. Md. Jan. 10, 2013) ("Striking documents is one power among the Court's inherent authority.").

Under these principles, Opt-in Plaintiffs' claims should clearly be stricken and/or dismissed as being time barred as a matter of law. More specifically, the FLSA creates a two- and three-year statute of limitations:

> Any action commenced on or after May 14, 1947, to enforce any cause of action for unpaid minimum wages, unpaid overtime compensation, or liquidated damages, under the Fair Labor Standards Act . . . may be commenced within two years after the cause of action accrued, and every such action shall be forever barred unless

7

> commenced within two years after the cause of action accrued, except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued.

29 U.S.C. § 255(a); *In re Food Lion, Inc.*, 151 F.3d 1029, 1998 WL 322682, at *11–13 (4th Cir. 1998) (unpublished).

In a collective action under 29 U.S.C. § 216, the action commences for statute of limitations purposes on the date that opt-in plaintiffs file their consent forms, unless the plaintiffs are actually named in the complaint. *See* 29 U.S.C. § 256; *Lee v. Vance Exec. Prot., Inc.*, 7 F. App'x 160, 166–67 (4th Cir. 2001). "Moreover, signed consents filed after the filing of the complaint do not relate back to the date the complaint was filed. Rather, each claimant's action is commenced on the date on which his or her consent is filed with the court." *In re Food Lion*, 1998 WL 322682, at *13 (quotation omitted). Consistent with the statute of limitations provided under the law, Plaintiff's counsel proposed a notice, to which Defendant consented and which the Court ultimately approved, informing potential opt-ins, without qualification, that "*claims in this case are limited to a two- or three-year statute of limitations*" and "you may be able to recover damages . . . *only for time worked within the two or three years prior to the date you file your Consent to Join Form*." (ECF Nos. 38-1) (emphasis added).

Here, even assuming the three-year statute of limitations under § 255 applies, Opt-in Plaintiffs' claims are untimely. They commenced their action when they filed their Consents on February 28, 2025, and/or March 7, 2025, which occurred well more than three years after they last provided any relevant services to Perdue. (*See* ECF Nos. 53-1, 53-2, 53-4, 53-7, 53-9, 54-2, and 54-11.) Notably, no tolling period has been requested by Plaintiffs, nor has one been ordered

by the Court.[5] While the Court need not look any further than Opt-in Plaintiffs' Consents to confirm the expiration of claims, Perdue has provided additional record evidence for the avoidance of any doubt, including, specifically the most recent flock sale date – or the latest possible date upon which any Opt-in Plaintiff would have provided services for Perdue. (*See* Decl. Burke *generally*.)

Applying the three-year statute of limitations, Opt-in Plaintiffs' Consent filing dates fall **well beyond** even the most forgiving statute of limitations dates:[6]

| Grower Name | Last Date of Service | Claims Expired | Consent Filed |
|---|---|---|---|
| Calloway, Denise | 8/21/2019 | 8/21/2022 | 2/28/2025 |
| Sanderlin, Fonda (and Paul Truman deceased) | 5/6/2021 | 5/6/2024 | 2/28/2025 |
| Moore, Irma | 7/21/2021 | 7/21/2024 | 2/28/2025 |
| Farrow, Richard Harold | 8/4/2021 | 8/4/2024 | 2/28/2025 |
| Madeiros, Timothy Craig | 5/25/2021 | 5/25/2024 | 2/28/2025 |
| Cherput, Ro Zama | 2/24/2022 | 2/24/2025 | 3/7/2025 |
| Lancaster, William Earl | 8/27/2021 | 8/27/2024 | 3/7/2025 |

As a result, Opt-in Plaintiffs have no claims even within the longest of the statute of limitations. And, as they were advised in the very Court-approved Notices they received, which Plaintiffs' counsel initially drafted, they are unable to recover for their claims. (ECF Nos. 38-1, 44.) In other words, not only did Opt-in Plaintiffs knowingly file consent forms well beyond the

---

[5] While Perdue anticipates Plaintiff will argue some sort of equitable tolling is appropriate, the language in the Notice Plaintiff herself proposed, which was sent to putative plaintiffs, prohibits such a result. Nor is there any legitimate basis for equitable tolling here. *Supra* fn. 4.
[6] Perdue calculates the stated statute of limitation (claim expiration) dates based on the longest *possible* time-period solely for the purpose of this motion and reserves all defenses and objections to any statute of limitations beyond the standard two years provided for by the FLSA.

expiration of their relevant time period, but they did so in contradiction to the Court's approved guidance (and instructions) within the Notice of Lawsuit. *See* Fed. R. Civ. P. 41(b) ("If the plaintiff fails to prosecute or to comply with *these rules or a court order*, a defendant may move to dismiss the action or any claim against it.").

Therefore, Perdue respectfully requests Opt-in Plaintiffs' Consents be stricken from the record pursuant to Fed. R. Civ. P. 12(f) as irrelevant. *See Weckesser v. Knight Enters. S.E., LLC*, 2019 WL 13150694, at *1 (D.S.C. July 22, 2019) (dismissing with prejudice claims of opt-in plaintiffs who joined the case after the statute of limitations on their claims expired); *see also King v. CVS/Caremark Corp.*, 2007 U.S. Dist. LEXIS 99023, at *24 n.19 (S.D. Fla. Dec. 12, 2007) (striking opt-in consent forms to the extent the opt-in plaintiffs worked in geographic locations different than the one outlined in the court's order granting conditional certification). Alternatively, Perdue requests these Opt-in Plaintiffs be dismissed from this action. *See Davella v. Ellis Hosp., Inc.*, 2025 U.S. Dist. LEXIS 83768, *3 (N..D.N.Y. May 2, 2025) (holding "courts routinely dismiss untimely FLSA claims with prejudice," dismissing opt-in plaintiffs accordingly, and listing cases); *Allen v. Sears Roebuck & Co.*, 2011 U.S. Dist. LEXIS 24555, at *4 (E.D. Mich. Mar. 10, 2011) ("If an opt-in member of a collective action is found not to meet the class definition, the appropriate remedy is dismissal of that opt-in's claims.") (citation omitted).

B. **Alternatively, Perdue Requests These Seven Opt-in Plaintiffs Be Excluded from the Pool of Plaintiffs from Whom Individualized Discovery May Be Sought.**

Contemporaneous to Defendant's efforts to address Opt-in Plaintiffs with expired claims, the Parties submitted a Joint Proposed Discovery Plan, outlining the Parties' competing proposals regarding the scope of permissible discovery of Named and all Opt-in Plaintiffs. (ECF No. 70.) Therein, Plaintiff contended individualized discovery would not be necessary, *regardless* of individual defenses that may be asserted against Opt-in Plaintiffs, and representative discovery

would be sufficient "to mount any defense." (*Id.* at 4, 6.) Defendant requested written discovery on all Opt-in Plaintiffs, citing the cases allowing the same. (*Id.*). Having considered the Parties' competing proposals, the Court ordered Defendant may conduct written discovery on 50% of Opt-in Plaintiffs and depositions on 20% for depositions, with each party selecting an equal portion. (ECF Nos. 71, 72).

If the Court finds that striking the consents and/or dismissing the claims of the Opt-in Plaintiffs who are subject to this motion is premature at this time, Defendant asks the Court to find that these Opt-in Plaintiffs be excluded from consideration of the pool of participating opt-in plaintiffs from whom the Parties may serve individualized discovery. *See, e.g., Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009) (A primary purpose of Rule 12 motions is to weed out claims that do not warrant discovery because, based on the factual scenario on which the case rests, the plaintiff could never win). Otherwise, Plaintiffs may select these 7 individuals, whose claims will ultimately be dismissed as time barred and who would have no personal knowledge of practices during the relevant time period, as part of their 50% for written discovery and 20% for deposition, which would effectively prevent Perdue from obtaining all of the discovery the Court ordered was permitted, both on the merits and on decertification.[7] This result would be both unfair and prejudicial to Defendant. But, more importantly, it would be inconsistent with the spirit and intent of the Court's Order on discovery in this case, which sought to strike an appropriate balance between undue burden on Plaintiffs and providing Defendant with critical access to information and discovery from a representative sampling of Opt-in Plaintiffs to allow Defendant to establish its defenses, both on the merits and on decertification.

### III. CONCLUSION

---

[7] If the Court grants this request, Perdue agrees that the 50% for written discovery and 20% for depositions would be calculated assuming these 7 were not in the pool for consideration at all.

It is apparent from the face of the Consents filed by Opt-in Plaintiffs and the facts set forth above that Opt-in Plaintiffs Calloway, Sanderlin, Moore, Farrow, Madeiros, Cherput, and Lancaster have claims that are time barred even assuming a three-year statute of limitations applies, which Perdue denies. Moreover, an independent review confirms they have not provided any independent grower services pursuant to the PPA during their respective relevant statutory time periods. Plaintiffs have provided no information to the contrary, nor can they. There is no basis – in law or fact – for allowing their claims to remain in this lawsuit accordingly. For that reason, Perdue respectfully requests the Court strike the Consents filed by Opt-in Plaintiffs and/or dismiss Opt-in Plaintiffs' claims with prejudice. Alternatively, Perdue requests that these Opt-in Plaintiffs be excluded from the pool of Plaintiffs from whom discovery may be sought in this case.

Date: May 20, 2025

Respectfully submitted,

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

_____/s/_____
Robert R. Niccolini (Bar No. 24873)
1909 K Street NW, Suite 1000
Washington, D.C. 20006
Tel: (202) 887-0855
Fax: (202) 887-0866
robert.niccolini@ogletree.com

Margaret Santen (admitted pro hac vice)
Kevin P. Hishta, Pro Hac Pending
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
Tel: (404) 881-1300
maggie.santen@ogletree.com
kevin.hishta@ogletree.com

13

        Charlotte Smith
        8529 Six Forks Road, Suite 600
        Raleigh, NC 27615
        Tel: (919) 760-4150
        charlotte.smith@ogletree.com

        Mark J. Swerdlin (Bar No. 04927)
        One South Street, Suite 1800
        Baltimore, MD 21202
        Tel: (410) 752-1040
        mark.swerdlin@ogletree.com

        *Counsel for Defendant*