**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**
Northern Division

| | |
|---|---|
| BARBARA TRIPP, individually and on behalf of all others similarly situated, | |
| *Plaintiffs,* | |
| v. | Case No.: 1:24-cv-00987-JMC |
| PERDUE FOODS LLC, | |
| *Defendant.* | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR MISCELLANEOUS RELIEF AND TO STRIKE THE CONSENT FORMS OF OPT-IN PLAINTIFFS WITH TIME-BARRED CLAIMS OR, ALTERNATIVELY, DISMISS THEIR CLAIMS**

# <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ........................................................................................................... 1

II.    FACTUAL AND PROCEDURAL BACKGROUND........................................................ 1

III.   ARGUMENT ................................................................................................................... 4

       A.    Neither the Rules Cited by Perdue, Nor the Court's Inherent Powers, Permit Dismissal on the Grounds Asserted. ............................................................ 4

       B.    The Motion Relies on Disputed Facts That Cannot Be Resolved Without Discovery. ................................................................................................................ 7

       C.    Equitable Tolling May Apply and Cannot Be Resolved Without a Record. .......... 9

       D.    Perdue's Motion Improperly Seeks Premature Partial Decertification Before Discovery Has Occurred. ......................................................................... 11

       E.    Perdue's Attempt to Exclude the Seven Opt-in Plaintiffs from Individualized Discovery is Improper. ............................................................... 13

       F.    Denying the Motion Will Not Prejudice Perdue. .................................................. 14

IV.   CONCLUSION.............................................................................................................. 14

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Adams v. Inter-Con Sec. Sys., Inc.*,
    242 F.R.D. 530 (N.D. Cal. 2007) ........................................................................... 10

*Anderson v. Mt. Clemens Pottery Co.*,
    328 U.S. 680 (1946) ................................................................................................. 7

*Beauperthuy v. 24 Hour Fitness USA, Inc.*,
    2007 WL 707475 (N.D. Cal. Mar. 6, 2007) ........................................................... 10

*Conner v. Cleveland Cty.*,
    22 F.4th 412 (4th Cir. 2022) ................................................................................. 8, 9

*Cruz v. Maypa*,
    773 F.3d 138 (4th Cir. 2014) ............................................................................... 9, 11

*Curtis v. Time Warner Entm't-Advance/Newhouse P'ship*,
    2013 U.S. Dist. LEXIS 63603 (D.S.C. May 3, 2013) ........................................... 12

*Degidio v. Crazy Horse Saloon & Rest., Inc.*,
    2017 U.S. Dist. LEXIS 219018 (D.S.C. Jan. 26, 2017) .......................................... 9

*Glennon v. Anheuser-Busch, Inc.*,
    2022 U.S. Dist. LEXIS 237641 (E.D. Va. Sep. 21, 2022) ..................................... 12

*Gurrieri v. Cty. of Nassau*,
    2019 WL 2233830 (E.D.N.Y. May 23, 2019) ....................................................... 10

*Hoffman-La Roche v. Sperling*,
    493 U.S. 165 (1989) .............................................................................................. 5, 9

*Hoffmann v. Sbarro, Inc.*,
    982 F. Supp. 249 (S.D.N.Y. 1997) ......................................................................... 6

*Irwin v. Dep't of Veterans Affairs*,
    498 U.S. 89 (1990) ................................................................................................. 10

*John S. Clark Co. v. Travelers Indem. Co.*,
    359 F. Supp. 2d 429 (M.D.N.C. 2004) .................................................................... 5

*Khepera-Bey v. Santander Consumer USA, Inc.*,
    2013 U.S. Dist. LEXIS 4270 (D. Md. Jan. 10, 2013) ............................................. 4

*Kirkpatrick v. Cardinal Innovations Healthcare Sols.*,
    2017 U.S. Dist. LEXIS 141783 (M.D.N.C. Sep. 1, 2017) ...................................... 4

*LaFleur v. Dollar Tree Stores, Inc.*,
   2012 WL 4739534 (E.D. Va. Oct. 2, 2012) ............................................................ 10

*Lancaster v. FQSR*,
   2020 U.S. Dist. LEXIS 166285 (D. Md. Sept. 11, 2020) ....................................... 5

*Lorenzo v. Prime Commc'ns, L.P.*,
   2014 WL 3366073 (E.D.N.C. July 9, 2014) ................................................... 10, 11

*Martinez v. Mendoza*,
   2019 U.S. Dist. LEXIS 131358 (E.D.N.C. Aug. 6, 2019) ....................................... 9

*O'Conner v. Agilant Sols., Inc.*,
   419 F. Supp. 3d 739 (S.D.N.Y. 2019) ................................................................. 10

*Owens v. Bethlehem Mines Corp.*,
   630 F. Supp. 309 (S.D.W. Va. 1986) .................................................................. 10

*Partlow v. Jewish Orphans' Home of S. Cal.*,
   645 F.2d 757 (9th Cir. 1981) ............................................................................ 11

*Privette v. Waste Pro of N. Carolina, Inc.*,
   2020 WL 1892167 (D.S.C. Apr. 16, 2020) ..................................................... 9, 11

*Rivera v. Anthem Companies, Inc.*,
   2019 WL 6002370 (S.D.N.Y. Nov. 13, 2019) ...................................................... 10

*Spencer v. Macado's, Inc.*,
   2019 WL 4739691 (W.D. Va. Sept. 27, 2019) ................................................ 10, 11

*United States v. Shaffer Equip. Co.*,
   11 F.3d 450 (4th Cir. 1993) .............................................................................. 5, 6

**Statutes**

29 U.S.C. § 216(b) ................................................................................................ 1

**Rules**

Fed. R. Civ. P. 12(f) ............................................................................................ 3, 4

Fed. R. Civ. P. 21 ......................................................................................... 3, 4, 5, 12

Fed. R. Civ. P. 26(f) ...................................................................................... 2, 3, 13

Fed. R. Civ. P. 41(b) ..................................................................................... 3, 4, 5, 12

Fed. R. Civ. P. 7(a) ............................................................................................. 4

## I.     <u>INTRODUCTION</u>

Defendant Perdue Foods, LLC ("Defendant" or "Perdue") seeks to strike and/or dismiss seven opt-in Plaintiffs from this collective action based on its alleged affirmative defense that their claims are time-barred under the Fair Labor Standards Act ("FLSA"). But the motion is procedurally improper, factually premature, and fundamentally inconsistent with this Court's management of the case. In reality, Perdue is attempting an end-run around the collective action process—asking the Court to dismiss collective action members based on Perdue's records before those individuals have participated in discovery or been heard. This type of piecemeal attack on the opt-in Plaintiffs not only undermines efficiency, it ignores the FLSA's remedial purpose and the schedule the Court has put in place to resolve precisely these questions during decertification and/or dispositive motions. Accordingly, Perdue's Motion should be denied.

## II.     <u>FACTUAL AND PROCEDURAL BACKGROUND</u>

Named Plaintiff Barbara Tripp filed this action on April 4, 2024, alleging that Perdue misclassified her and similarly situated poultry growers as independent contractors in violation of the FLSA's minimum wage and overtime provisions. Doc 1. Plaintiffs contend the growers were functionally controlled by Perdue and compensated through a uniform, performance-based pay scheme that failed to ensure lawful wages. *See generally id.*

On June 12, 2024, Plaintiff moved for conditional certification of a collective action under the FLSA, 29 U.S.C. § 216(b). Doc 19. The Court granted the motion on November 13, 2024, certifying a nationwide class of all individuals classified as independent contractors who grew chickens under a Poultry Producer Agreement ("PPA") for Perdue from April 4, 2021, onward. Doc. 34 at 8. The Court also approved a notice process which did not provide for the premature exclusion of individuals based on alleged statute of limitations issues. *See id.* at 15–18. Currently, approximately eighty (80) individuals have filed consent forms to join the collective action.

In the early stages of this matter, Perdue sought to delay discovery. In June 2024, it moved to dismiss the case and requested a stay of all certification briefing and discovery until the motion was resolved. Docs. 20–21. The Court later denied Perdue's motion to dismiss and denied its motion to stay as moot. Doc. 28. After the collective action notice period was complete and the Parties submitted their Supplemental Joint Rule 26(f) Report, Doc. 70, on April 22, 2025, the Court issued its Scheduling Order and Memorandum addressing the scope and structure of discovery. Docs. 71–72.

Key provisions include:

1. Fact and decertification expert discovery remain open through April 6, 2026 (Doc. 72 at 1);

2. Perdue's decertification motion is due by May 6, 2026 (Doc. 72 at 1); and

3. Any dispositive motions are due within three (3) months *after* the Court issues its ruling on Perdue's decertification motion (Doc. 72 at 2).

On May 16, 2025, Plaintiff issued her first set of interrogatories and requests for production to Perdue. Perdue has not yet responded and thus Plaintiff has not yet received a single document or answer in discovery. On May 20, 2025, Perdue filed its motion requesting that the Court strike the consent forms of seven opt-in plaintiffs and/or dismiss them from this collective action, arguing that their claims are time-barred under the FLSA's two- or three-year statute of limitations. Relying on its own internal records, Perdue contends that these individuals ceased working before the earliest permissible filing date. This, despite Perdue previously identifying these same individuals as appropriate recipients of notice in this case. Perdue does not argue that the consent forms themselves are procedurally defective or that the opt-ins failed to comply with any court order. Rather, it seeks to remove these plaintiffs from the collective action based solely on the face of

2

Perdue's records—before any discovery has been exchanged, and without affording the targeted plaintiffs an opportunity to be heard.

In the weeks leading up to the instant motion, counsel for Perdue and Plaintiffs exchanged correspondence regarding the seven opt-ins. Perdue requested that Plaintiffs stipulate to dismissal of these individuals based on Perdue's unilateral record review. Plaintiffs declined, noting that any such request was premature, unsupported by legal authority, and contrary to the parties' jointly submitted Rule 26(f) report and the Court's Scheduling Order. Plaintiffs invited Perdue to identify authority justifying early dismissal. Perdue declined to do so and proceeded to file its motion. Doc. 74-4 at 2–3.

The motion is styled as a request to strike under Rules 12(f), 21, and 41(b), but in substance, it amounts to a premature attempt at decertification or summary judgment on individualized limitations grounds. But Perdue's own actions in this case demonstrate that striking plaintiffs before discovery based on a statute-of-limitations defense is inappropriate. Threatening to seek sanctions if Plaintiff did not agree, Perdue initially sought Plaintiff's agreement to dismiss two additional opt-in Plaintiffs based solely on those plaintiffs' consent forms. Doc. 74-4 at 11-12. After Plaintiff questioned the evidentiary basis for doing so, as well as legal authority for Perdue's sanctions threat, Perdue dropped its request when it found conflicting evidence in its business records regarding the dates the opt-in Plaintiffs were employed by Perdue. *Id*. at 9-11. [1] Perdue seeks to use a one-sided discovery process where it is the arbiter at this early stage of its own affirmative defenses. The Court should deny the motion.

---

[1] Citing no authority, Perdue claims Plaintiff waived any opposition to a statute of limitations defense by agreeing to include the statutory limitations period in the notice. *See* Doc 74-1 at 9-10. Like Perdue, Plaintiff could find no legal authority to support this estoppel claim. There is simply no basis for treating the mere notification of a party of his or her rights and obligations as a legal concession.

III.    **ARGUMENT**

    A.    **Neither the Rules Cited by Perdue, Nor the Court's Inherent Powers, Permit Dismissal on the Grounds Asserted.**

Perdue invokes Federal Rules of Civil Procedure 12(f), 21, and 41(b) to support its motion, but none of these rules authorize the Court to strike or dismiss opt-in plaintiffs based on unresolved factual defenses, particularly at this early stage of litigation. Indeed, other than cite Rules 21 and 41(b) in passing, Defendant offers no explanation for why they would be applicable in this case.

Rule 12(f) permits a court to strike material from a "pleading" that is redundant, immaterial, impertinent, or scandalous. *See* Fed. R. Civ. P. 12(f). But Rule 7(a) exhaustively defines the term "pleading," and consent forms are not included. As the court explained in *Kirkpatrick v. Cardinal Innovations Healthcare Sols.*, "Rule 12(f) allows the court to strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter, but Rule 7(a), which lists which documents are pleadings for Rule 12(f)'s purposes . . . does not include affidavits, declarations, ***or consent forms***." No. 1:16CV1088, 2017 U.S. Dist. LEXIS 141783, at *4-5 (M.D.N.C. Sep. 1, 2017) (cleaned up and emphasis added). Even the case from this District on which Perdue relies recognizes that only pleadings are subject to Rule 12(f). *See Khepera-Bey v. Santander Consumer USA, Inc.*, 2013 U.S. Dist. LEXIS 4270, at *5 (D. Md. Jan. 10, 2013) ("Although some cases have held that Rule 12(f) may be used to strike documents other than pleadings, the weight of recent authority is that such an action is not contemplated or permitted by the Rule."). Thus, Perdue cannot rely on Rule 12(f) to strike any of Plaintiffs' consent forms.

Nor does Rule 21 provide any valid basis for Perdue's motion. That rule allows a court to drop a party or sever a claim for misjoinder or nonjoinder, not to dismiss a party-plaintiff based on contested affirmative defenses. *See* Fed. R. Civ. P. 21; *see also John S. Clark Co. v. Travelers*

*Indem. Co.*, 359 F. Supp. 2d 429, 437 (M.D.N.C. 2004) ("Federal Rule of Civil Procedure 21 thus applies when the claims asserted by or against the joined parties do not arise out of the same transaction or occurrence or do not present some common question of law or fact." (cleaned up)). In other words, Rule 21 is not a substitute for dispositive motion practice. Dismissing opt-ins based on a limitations defense—particularly without discovery—is not a proper use of Rule 21.

Rule 41(b), likewise, is inapplicable. That rule allows a court to dismiss a case when a plaintiff fails to prosecute or violates court orders. Fed. R. Civ. P. 41(b). Perdue does not contend that any of the seven opt-ins failed to prosecute their claims or abandoned the litigation. Perdue suggests the notice issued in this case was an "order," Doc. 74-1, at 10, but construing the notice to be a court order endorsing Perdue's claimed statute-of-limitations defense would be directly contrary to the Supreme Court's admonishment that courts remain neutral as to the merits in court-facilitated notices. *See Lancaster v. FQSR*, 2020 U.S. Dist. LEXIS 166285, at *26 (D. Md. Sept. 11, 2020) (citing *Hoffman-La Roche v. Sperling*, 493 U.S. 165, 174 (1989)). Perdue's attempt to rely on Rule 41 is meritless.

Perdue also invokes the Court's so-called "inherent power" to strike opt-in plaintiffs from the case. Doc. 74–1 at 7. "Due to the very nature of the court as an institution, it must and does have an inherent power to impose order, respect, decorum, silence, and compliance with lawful mandates. This power is organic, without need of a statute or rule for its definition, and it is necessary to the exercise of all other powers." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993). But inherent powers "must be exercised with the greatest restraint and caution, and then only to the extent necessary." *Id.* at 461.

While Perdue purports to rely on the Court's inherent powers, it conveniently omits the standard the Court is required to apply to invoke them. The Fourth Circuit has been clear: "Mindful

of the strong policy that cases be decided on the merits, and that dismissal without deciding the merits is the most extreme sanction, a court must not only exercise its inherent power to dismiss with restraint, but it may do so only after considering several factors." *Id.* at 462. Those factors are: "(1) the degree of the wrongdoer's culpability; (2) the extent of the client's blameworthiness if the wrongful conduct is committed by its attorney, recognizing that we seldom dismiss claims against blameless clients; (3) the prejudice to the judicial process and the administration of justice; (4) the prejudice to the victim; (5) the availability of other sanctions to rectify the wrong by punishing culpable persons, compensating harmed persons, and deterring similar conduct in the future; and (6) the public interest." *Id.*

Here, there is no misconduct, fraud, or abuse of process alleged—only a factual dispute about whether certain opt-ins fall within the statute of limitations. The resolution of that question is already accounted for in the Court's structured Scheduling Order. Invoking the Court's inherent powers to strike opt-in Plaintiffs based solely on the employer's contested record review would not only be unprecedented, it would improperly bypass established procedural safeguards.

In truth, Perdue's motion is an impermissible attempt to bypass the standard mechanisms for resolving merits issues, including affirmative defenses. Courts consistently reject efforts to address alleged individualized defenses or merits issues outside of decertification or summary judgment unless the record is undisputed and the claims are clearly invalid. *See, e.g.*, *Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 255 (S.D.N.Y. 1997) ("If the Court considers these submissions, it must convert defendant's motion into one for summary judgment and give plaintiffs an opportunity to respond. . . . The Court will not do so, however, because a summary judgment motion at this juncture is premature. Little discovery has been taken thus far in the proceeding, and numerous genuine issues of material fact persist."). Perdue has not shown that either condition is met here.

6

The evidence is disputed, discovery has not been conducted, and Plaintiffs have preserved equitable tolling arguments that may affect timeliness.

In sum, the rules Perdue cites do not allow for dismissal of opt-in plaintiffs based on unresolved factual disputes. The proper time and mechanism to assert such defenses is during decertification or on summary judgment after discovery is complete.

**B.    The Motion Relies on Disputed Facts That Cannot Be Resolved Without Discovery.**

Perdue's motion is premature because it rests on factual assumptions that remain contested and cannot be adjudicated without discovery.

Perdue asserts that certain opt-in plaintiffs ceased working outside the limitations period based on its own internal documents, but those documents have not been authenticated through discovery, nor have they been subjected to scrutiny through deposition testimony, interrogatories, or cross-examination. As the Supreme Court held in *Anderson v. Mt. Clemens Pottery Co.*, 328 U.S. 680, 687–88 (1946), when an employer fails to maintain adequate records of the time worked of its employees, the employees may produce evidence supporting a "just and reasonable inference" of time worked—and courts must resolve such questions on a developed record. This principle is particularly critical in independent contractor misclassification cases, where the absence of traditional employment records makes factual development essential.

Here, Plaintiffs have not had any opportunity to test the reliability of Perdue's documents or to elicit countervailing testimony from the opt-ins themselves. Nor has the Court heard from any of the seven opt-ins whose claims Perdue seeks to extinguish. Perdue's motion rests not only on disputed facts, but on facts accessible solely to the employer and not yet subject to the adversarial process. Adjudicating those claims now would be both premature and fundamentally unfair. This Court should reject Perdue's attempt to short-circuit discovery and instead allow these

7

issues to be addressed through the structured and comprehensive schedule already in place. Indeed, Perdue has admitted the unreliability of its own documents as it initially identified the seven opt-ins it now seeks to exclude as appropriate recipients of the notice in this case using its own records for when these plaintiffs worked for Perdue. *See* Doc. 74-4 at 9–12.

Perdue seeks to avoid its own unreliable records by arguing that the opt-in Plaintiffs' claims are untimely based on dates provided on their consent forms. But that position too is both legally irrelevant and internally inconsistent. Perdue itself has acknowledged—as reflected in email correspondence with Plaintiffs' counsel—that some of these dates are incorrect. *See* Doc. 74-4 at 9–12. And in a footnote in its motion, Perdue admits there are inconsistencies in the records because its review of business records showed some opt-ins had, in fact, worked within the relevant period—even when their consent forms appeared to suggest otherwise. *See* Doc. 74–1 at 3 n. 3. To wit: "While additional opt-in plaintiffs' Consents identified dates of service falling outside of their respective relevant time periods, a review of Perdue's business records revealed that these individuals may have performed relevant services within the relevant time period." *Id.* This concession confirms that consent form notations cannot be used to finally determine the timeliness of Plaintiffs' claims.

At most, any discrepancy between the dates provided and employer records creates a factual dispute that must be explored through discovery—not resolved on a procedurally and legally deficient "motion to strike." Moreover, the FLSA is a remedial statute designed to protect workers from substandard wages and oppressive working conditions. *See, e.g.*, *Conner v. Cleveland Cty.*, 22 F.4th 412, 423 (4th Cir. 2022). Striking opt-ins based on employer-submitted evidence—before any discovery has occurred—undermines the Act's remedial aims. FLSA opt-ins are often low-wage or unsophisticated workers with limited resources, and the collective action

mechanism was designed to protect their access to justice. *See id.*; *see also Sperling*, 493 U.S. at 170 (1989). As the court recognized in *Degidio v. Crazy Horse Saloon & Rest., Inc.*, the FLSA's collective action process "reduces the burden on low wage employees through the pooling of resources." Civil Action No. 4:13-cv-02136-BHH, 2017 U.S. Dist. LEXIS 219018, at *12 (D.S.C. Jan. 26, 2017). Denying these Plaintiffs the opportunity to participate in discovery before evaluating the timeliness of their claims discourages participation and weakens the statute's deterrent effect. At this stage, all doubts should be resolved in favor of maintaining opt-ins, not eliminating them.

### C.    Equitable Tolling May Apply and Cannot Be Resolved Without a Record.

Perdue's motion is also premature because the question of equitable tolling remains open and unresolved.

"[E]quitable tolling is available for claims under the FLSA under appropriate circumstances, where 'the plaintiffs were prevented from asserting their claims by some kind of wrongful conduct on the part of the defendant [or where] extraordinary circumstances beyond plaintiffs' control made it impossible to file the claims on time.'" *Martinez v. Mendoza*, No. 5:17-CV-628-FL, 2019 U.S. Dist. LEXIS 131358, at *3 (E.D.N.C. Aug. 6, 2019) (citing *Cruz v. Maypa*, 773 F.3d 138, 145 (4th Cir. 2014)). Courts have applied equitable tolling in FLSA cases where plaintiffs exercised reasonable diligence but were prevented from timely filing due to delays in issuing or receiving notice or an employer's dilatory actions, among many other situations. *See, e.g.*, *Privette v. Waste Pro of N. Carolina, Inc.*, No. 2:19-CV-3221, 2020 WL 1892167, at *9 (D.S.C. Apr. 16, 2020) (granting Plaintiff's motion for equitable tolling where "jurisdictional issues and preliminary disputes between the parties have been both numerous and divisive and have delayed this court's consideration of the motion for conditional class certification"); *Spencer*

*v. Macado's, Inc.*, No. 6:18-CV-00005, 2019 WL 4739691, at *6 (W.D. Va. Sept. 27, 2019) (tolling the statute of limitations for approximately ten months where consideration of a motion for conditional certification was delayed due to resolving Defendant's motion to dismiss); *O'Conner v. Agilant Sols., Inc.*, 419 F. Supp. 3d 739, 748 (S.D.N.Y. 2019) (tolling the statute of limitations approximately six months during the pendency of the motion for conditional certification); *Rivera v. Anthem Companies, Inc.*, No. 1:18-CV-01420, 2019 WL 6002370, at *3 (S.D.N.Y. Nov. 13, 2019) (tolling the statute of limitations from the time that the motion for conditional certification was filed until distribution of notice); *Gurrieri v. Cty. of Nassau*, No. 16-CV-6983, 2019 WL 2233830, at *9 (E.D.N.Y. May 23, 2019) ("One such circumstance where equitable tolling is appropriate is during the period in which the motion for conditional certification is pending."); *Lorenzo v. Prime Commc'ns, L.P.*, No. 5:12-CV-69-H, 2014 WL 3366073, at *3 (E.D.N.C. July 9, 2014) (granting motion for equitable tolling when defendant engaged in a number of acts with a dilatory motive that delayed the court's consideration of such matters as plaintiff's motion for conditional certification of an FLSA collective action).

The types of circumstances courts have recognized as being outside plaintiffs' control have included: (i) "where the plaintiffs actively pursued their legal remedies by filing defective pleadings within the statutory period," *Adams v. Inter-Con Sec. Sys., Inc.*, 242 F.R.D. 530, 542-43 (N.D. Cal. 2007) (citing *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990)); *LaFleur v. Dollar Tree Stores, Inc.*, No. 2:12-CV-00363, 2012 WL 4739534, at *4-7 (E.D. Va. Oct. 2, 2012); (ii) where plaintiffs were excusably ignorant of their claim, but acted once they had notice, *Owens v. Bethlehem Mines Corp.*, 630 F. Supp. 309, 312 (S.D.W. Va. 1986); *Beauperthuy v. 24 Hour Fitness USA, Inc.*, No. 06-0715SC, 2007 WL 707475, at *8 (N.D. Cal. Mar. 6, 2007) (noting that excusable ignorance is one basis, but not the only basis); and (iii) when other equitable

considerations dictate such tolling, *Partlow v. Jewish Orphans' Home of S. Cal.*, 645 F.2d 757, 760-61 (9th Cir. 1981). Delay in issuing notice, because of delay in ruling on a notice motion has regularly been recognized as falling within the scope of permissible grounds for equitable tolling. *See Privette*, 2020 WL 1892167, at *8; *Spencer*, 2019 WL 4739691, at *6; *Lorenzo*, 2014 WL 3366073, at *2. The Fourth Circuit has also held that equitable tolling is available when an employer fails to post the required statutory notices of an employee's rights under the FLSA. *See Cruz*, 773 F.3d at 146-47 ("The purpose of these requirements is to ensure that those protected under the Acts are aware of and able to assert their rights. . . . Therefore, absent a tolling rule, employers would have no incentive to post notice since they could hide the fact of their violations from employees until any relevant claims expired.").

Plaintiffs have expressly preserved their right to seek equitable tolling. Doc. 23 at 3 n. 2 ("Plaintiff believes the delays and/or extensions related to her pending Motion for Conditional Certification will likely prejudice the rights of future opt-in Plaintiffs, given that the statute of limitations for all putative plaintiffs continue to run until they file a consent to join with the Court. . . . Accordingly, Plaintiff intends to later seek equitable tolling on behalf of any opt-in plaintiff who later joins this action to remedy this prejudice."). Whether tolling is appropriate depends on case-specific facts and circumstances—such as when plaintiffs learned of the lawsuit, how notice was received, and whether external obstacles impeded timely filing. These are questions that cannot be fully resolved without discovery. By asking the Court to dismiss the claims of opt-in Plaintiffs without examining those facts, Perdue invites premature adjudication and legal error.

**D.    Perdue's Motion Improperly Seeks Premature Partial Decertification Before Discovery Has Occurred.**

Courts in the Fourth Circuit traditionally apply a two-stage process to determine whether a case may proceed as a collective action. *See Glennon v. Anheuser-Busch, Inc.*, No. 4:21cv141,

2022 U.S. Dist. LEXIS 237641, at *5 (E.D. Va. Sep. 21, 2022). At the first stage, the court conditionally certifies a collective action based on a modest factual showing and allows notice of the lawsuit to be sent to the putative plaintiffs. *See id.* After discovery, the defendant may move to decertify, and the court will evaluate whether plaintiffs are similarly situated based on a comprehensive record. *See id.* The Court adopted this two-stage process here.

If a defendant claims its statute of limitations defense is individualized among the opt-in plaintiffs, such allegations are typically raised and ruled on during the decertification stage, not beforehand. *See, e.g.*, *Curtis v. Time Warner Entm't-Advance/Newhouse P'ship*, No. 3:12-cv-2370-JFA, 2013 U.S. Dist. LEXIS 63603, at *7-8 (D.S.C. May 3, 2013) ("Courts have identified a number of factors to consider at this stage, including . . . (2) the various defenses available to defendants that appear to be individual to each plaintiff[.]" (cleaned up)).

Perdue's motion functionally asks the Court to undertake a partial decertification under the guise of a procedural motion, seeking to winnow the class before any depositions, document production, or interrogatory responses have been exchanged. This is not only contrary to the Parties' agreed discovery plan and the Court's Scheduling Order—it is contrary to the procedural safeguards that protect opt-in plaintiffs from one-sided determinations based on employer-controlled evidence.

Moreover, adopting Perdue's approach would encourage future litigants to bypass structured discovery and case management by asserting factual defenses under procedural labels like Rule 21 or 41(b), effectively allowing piecemeal adjudication of the collective through unilateral employer assertions. That result is incompatible with the FLSA's collective action procedure and with this Court's carefully considered discovery and motions protocol.

Perdue's motion should be denied for what it is: an untimely and improperly styled motion

for partial decertification without the benefit of a factual record.

**E.**   **Perdue's Attempt to Exclude the Seven Opt-in Plaintiffs from Individualized Discovery is Improper.**

Perdue asks the Court in the alternative to exclude the challenged opt-in plaintiffs from the pool of individuals subject to individualized discovery. But this request underscores the fundamentally premature nature of Perdue's Motion. The opt-ins have properly filed consents with the Court and remain parties to the case. Their eligibility for discovery inclusion should be governed by the Court's Scheduling Order—not by a one-sided, pre-discovery challenge.

The parties jointly agreed to a representative discovery plan in their Rule 26(f) report, which this Court adopted after addressing disputes as to the specific percentages of opt-ins that would be subject to discovery. That plan includes sampling to determine which opt-in plaintiffs may be subject to written discovery and depositions. Nothing in that order permits either party to unilaterally remove individuals from the discovery pool based on disputed defenses or factual allegations—particularly not in advance of any actual discovery.

Granting Perdue's request would invite improper cherry-picking: the exclusion of opt-ins most likely to contest Perdue's claimed limitations defense, before any factual record has been developed. That approach undermines the representative nature of collective actions and frustrates efficient case management, not to mention prejudicing the rights of the affected opt-ins.

If and when Perdue believes certain plaintiffs' claims are dissimilar or deficient, the proper mechanism is to raise those issues in a motion for decertification or summary judgment—after discovery is complete. Preemptively excluding opt-ins from the discovery pool, on nothing more than an employer's say-so, would deny Plaintiffs a fair opportunity to contest Perdue's alleged defenses and factual assertions.

### F.    <u>Denying the Motion Will Not Prejudice Perdue.</u>

Allowing the challenged opt-ins to remain in the case through the ordinary course of discovery will not prejudice Perdue in any meaningful way. The Court has already imposed limitations on opt-in plaintiff discovery, including sampling rules that limit written discovery to 50% of opt-ins and depositions to 20%. Doc. 71. These constraints ensure that Perdue is not subjected to excessive or duplicative burdens while allowing a fair opportunity for both sides to develop the record.

Further, Perdue will retain every opportunity to challenge the claims of individual opt-ins at the appropriate time—whether through decertification or summary judgment motions. Indeed, the current case schedule specifically reserves those mechanisms for addressing individualized defenses like statute of limitations, and ensures those issues are resolved with the benefit of a factual record, rather than on unsupported assumptions.

By contrast, granting Perdue's motion would increase the risk of erroneous dismissal. It would create an inequitable double standard—binding opt-ins to the litigation through the Court's notice process, only to later discard them based on a one-sided record review by their alleged employer. That approach would chill participation, frustrate the collective action mechanism, and ultimately generate satellite litigation over the scope and effect of such dismissals. The balance of prejudice thus cuts sharply in favor of denial.

## IV.    <u>CONCLUSION</u>

Perdue's motion is legally unfounded, procedurally improper, and inconsistent with both the Court's Scheduling Order and the FLSA's remedial purpose. It seeks to circumvent the Court's representative discovery structure and to eliminate claims without factual development or procedural fairness. Denying this motion will not prejudice Perdue, but it will uphold due process,

maintain fidelity to the Court's prior orders, and protect the collective mechanism Congress designed to ensure access to justice for vulnerable workers. The motion should be denied.

Respectfully submitted this June 3, 2025

Respectfully submitted,

*/s/ Robert Tucci*
Robert W.T. Tucci (Bar no: 31356)
Gregg Cohen Greenberg (Bar no:17291)
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910
(301) 587-9373
rtucci@zagfirm.com
ggreenberg@zagfirm.com

Jamie Crooks (admitted pro hac vice)
Michael Lieberman
Amanda R. Vaughn
FAIRMARK PARTNERS LLP
400 7th Street NW
Suite 304
Washington, DC 20001
(202) 417-7111
jamie@fairmarklaw.com
michael@fairmarklaw.comamanda@fairmarklaw.com

*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

On June 3, 2025, I served ☐ *the original* ☒ *a true copy* of the foregoing document entitled:

- **PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION FOR MISCELLANEOUS RELIEF AND TO STRIKE THE CONSENT FORMS OF OPT-IN PLAINTIFFS WITH TIME-BARRED CLAIMS OR, ALTERNATIVELY, DISMISS THEIR CLAIMS**

on all the appearing and/or interested parties in this action as follows:

Robert R. Niccolini, Bar No. 24873
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
1909 K Street, N.W., Suite 1000
Washington, DC 20006
Tel: (202) 887-0855
Fax: (202) 887-0866
robert.niccolini@ogletreedeakins.com

Margaret Santen (admitted pro hac vice)
Kevin P. Hishta, Pro Hac Pending
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
Tel: (404) 881-1300
maggie.santen@ogletree.com
kevin.hishta@ogletree.com

Charlotte Smith
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
8529 Six Forks Road, Suite 600
Raleigh, NC 27615
Tel: (919) 760-4150
charlotte.smith@ogletree.com

Mark J. Swerdlin (Bar No. 04927)
OGLETREE, DEAKINS, NASH, SMOAK & STEWART, P.C.
One South Street, Suite 1800
Baltimore, MD 21202
Tel: (410) 752-1040
mark.swerdlin@ogletree.com

*Counsel for Defendant*

☐ **(BY MAIL)** I am readily familiar with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Silver Spring, Maryland in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postage cancellation date or postage meter date is more than one day after date of deposit for mailing this affidavit.

☐ **(BY OVERNIGHT MAIL)** I am personally and readily familiar with the business practice of ZIPIN, AMSTER, & GREENBERG LLC for collection and processing correspondence for overnight delivery, and I caused such document(s) described herein to be deposited for delivery to a facility regularly maintained by the USPS for overnight delivery.

☒ **(BY ELECTRONIC TRANSMISSION)** I caused said document(s) to be served via electronic transmission through either the Court's CM/ECF system, via electronic mail, or an electronic service provider to the addressee(s) listed above on the date below.

☐ **(BY PERSONAL SERVICE)** I delivered the foregoing document by hand delivery to the addressed named above.

☐ **(BY PROCESS SERVER)** I delivered the foregoing document to a process server to effectuate process via personal service. Once a proof of service is received from the process server, our office will file the proof of service reflecting the date of personal service by the process server.

I declare under penalty of perjury under the laws of the State of Maryland that the foregoing is true and correct.

Executed on June 3, 2025, at Silver Spring, Maryland.

*/s/ Robert Tucci*
Robert W.T. Tucci