UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND
NORTHERN DIVISION

| | |
|---|---|
| **Barbara Tripp, individually and on her own behalf and on behalf of all others similarly situated,**<br><br>*Plaintiff*,<br><br>v.<br><br>**Perdue Foods LLC,**<br><br>*Defendant.* | **Civil Action No. 1:24-cv-00987-JMC** |

### DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION FOR MISCELLANEOUS RELIEF AND TO STRIKE THE CONSENT FORMS OF OPT-IN PLAINTIFFS WITH TIME-BARRED CLAIMS OR, ALTERNATIVELY, DISMISS THEIR CLAIMS ("MOTION")

In its Motion, Perdue Foods LLC ("Perdue") demonstrated the claims of seven Opt-In Plaintiffs are time barred and should be dismissed. In support, Perdue cited extensive authority establishing that the Court has the inherent authority to manage its docket to streamline proceedings in an efficient manner, including by dismissing claims that are untimely on their face. This approach is fully consistent with – and, in fact, required by – Rule 1 of the Federal Rules of Civil Procedure, which provides the rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

The proof establishing that the Opt-in Plaintiffs' claims are time-barred was not based on "Perdue's records" alone, as Plaintiff repeatedly asserts in her Opposition. Rather, the evidence confirming the Opt-in Plaintiffs' claims are time barred is based on the dates of service *they themselves listed* on their Consent to Join forms filed with the Court. Perdue then verified with

their own business records that these claims are, in fact, time barred. Despite being given the opportunity to do so, both before this Motion was filed and in the Opposition, Plaintiff has not provided any evidence to the contrary. And, this is information readily available to them because these Opt-in Plaintiffs are their clients. Instead of doing anything to independently verify whether their own clients' claims are not, in fact, time-barred, Plaintiff filed an extensive Opposition to Perdue's Motion, lodging pages of technical and inapposite arguments.[1] What is more, and despite vehemently previously arguing individualized discovery was not appropriate, Plaintiff now contends individualized discovery must be conducted on these time-barred claims before dismissal is appropriate.

Then, in an effort to justify their insistence that the Parties and the Court be forced to expend unnecessary time and expense in litigating time-barred claims through discovery, Plaintiff cites to the *potential* for a motion for equitable tolling. But no such motion has been filed, nor would any such motion be appropriate given the facts of this case. Plaintiff's other arguments are nothing more than red herrings to prevent the Court from addressing these time-barred claims now, as it has the inherent authority to do and which is fully consistent with the underlying principles of both the Federal Rules of Civil Procedure and the FLSA collective action tool.[2]

---

[1] It is clear through Plaintiff's Opposition and subsequent tactics to stall Opt-in Plaintiff discovery that Plaintiff has, in fact, done nothing to verify these dates by contacting the Opt-in Plaintiffs themselves. This is a minimum effort most counsel would make under the circumstances to streamline the proceedings and avoid subjecting the Parties and the Court to unnecessary expense associated with litigating claims that are clearly time-barred. *See, e.g.,* ECF No. 74-4 *generally* (Plaintiff describing no effort to contact Opt-in Plaintiffs to confirm dates of service verified by Perdue's records or otherwise challenge validity of records).

[2] *See, e.g.,* Court's Order, ECF No. 71 ("The purposes of § 216(b) actions under the FLSA are: '(1) reducing the burden on plaintiffs through the pooling of resources, and (2) efficiently resolving common issues of law and fact that arise from the same illegal conduct.'") (citing *Morgan v. Family Dollar Stores, Inc.*, 551 F.3d 1233, 1264 (11th Cir. 2008) (citing *Hoffman-La Roche, Inc. v. Sperling*, 493 U.S. 165, 170 (1989))); *see also* Plaintiff's Motion for Conditional Certification, ECF No. 19-2, at 10 ("The collective action procedure allows for efficient adjudication of similar claims….").

For these reasons, and as discussed more fully below and in Perdue's initial Motion, Perdue's Motion should be granted.

A. **Dismissing Opt-in Plaintiffs' Expired Claims Now Is Procedurally Sound and Supported by Undisputed Facts from All Parties.**

Instead of providing any affirmative proof that the Opt-In Plaintiffs' claims are not, in fact, time barred, Plaintiff dedicates substantial pen to discrediting this Court's authority to manage its docket and streamline the litigation. *See* ECF No. 75, at 8-11. However, where **both the Opt-in Plaintiffs themselves and Perdue** have provided information confirming that, under any set of asserted facts, these Opt-in Plaintiffs did not operate during the longest potentially-applicable statute of limitations, the Court can and should dismiss the claims as a matter of course.

1. The Expiration of These Opt-In Plaintiffs' Claims Is Not in Dispute – the Parties Have *Both* Submitted Filings to the Court Verifying Opt-in Plaintiffs' Claims Are Time-Barred.

In her Opposition, Plaintiff argues Perdue's Motion should be denied and discovery is necessary, because the Motion is only supported by "[Perdue's] own internal records." *See, e.g., id.* at 6-7. Therefore, Plaintiff claims, she is entitled to "elicit counter testimony" challenging this evidence to poke holes in "Perdue's unilateral record review." *Id.* at 7,11. Plaintiff even goes so far as to claim Perdue's Motion rests "on facts accessible solely to the employer." *Id.* at 11.

However, the fact of the matter is the Opt-in Plaintiffs' **own Consent to Join filings with the Court** initially identified the expiration of claims, and it was Opt-in Plaintiffs' filings that prompted Perdue to seek cooperation and collaboration from Plaintiff to dismiss these claims. *See* ECF No. 74-4. In an effort to assist Plaintiff in evaluating Perdue's request to dismiss these claims, Perdue then provided **independent verification** to Plaintiff's Counsel that the claims were time

3

barred.³ Perdue engaged in this collaborative process because most opposing counsel, upon receipt of this information, agree to dismiss the claims in an effort to save the Parties – and the Court – from the unnecessary time and expense associated with litigating time-barred claims. While Plaintiff attempts to challenge their own clients' Consent to Join Forms, their characterization of these filings as nothing more than unreliable "notations" should be rejected. *See* ECF No. 75, at 12; *but see Media Corp. v. Multispectral Sols., Inc.*, 2006 WL 1117802, at *4 (E.D. Va. Apr. 21, 2006) (finding court's inherent authority to manage cases effectively requires plaintiff be held to prior representations).⁴

Additionally, Plaintiff Counsel's assertion that the motion is premature because discovery has not yet occurred and because Plaintiff has not had the opportunity to review the information independently is entirely without merit. As the record shows:

- January 3, 2025: Plaintiff issues notice to putative plaintiffs, expressly advising they may participate in this action for compensation "only for time worked within the two or three years prior to the date [they] file [a] Consent to Join Form." (ECF No. 38-1).

- February 28, 2025: Plaintiff filed Consent to Join Forms for Opt-in Plaintiffs Calloway, Sanderlin, Moore, Farrow, and Madeiros – each of which identified and alleged periods of service more than three years prior to filing date. (ECF Nos. 53-1, 53-2, 53-4, 53-7, and 53-9).

- March 7, 2025: Plaintiff filed Consent to Join Forms for Opt-in Plaintiffs Cherput and Lancaster – each of which identified and alleged periods of service more than three years prior to filing date. (ECF Nos. 54-1 and 54-11).

- April 1, 2025: Perdue begins efforts to work cooperatively with Plaintiff's Counsel to address Opt-in Plaintiffs' expired claims, citing the dates of contracting with Perdue the Opt-in Plaintiffs averred to in Court filings. (ECF No. 74-4, at 11-12).

---

³ ECF No. 74-4, at 11 (Plaintiff's counsel stating "If Perdue has any documentation demonstrating conclusively that these growers did not do any work related to Perdue within the potential limitations period . . . please provide it, and we would be happy to consider whether there is a basis to voluntarily dismiss these individuals at this stage."). Perdue did, in fact, provide this information to no avail.

⁴ While arguing, on the one hand, that Plaintiffs are not verifiable sources of information for their own period of time worked above, Plaintiff also cites and relies on *Anderson* for the supposition that plaintiffs are veritable sources for purposes of determining hours worked. *See* ECF No. 75, at 7 (stating employees may produce evidence of time worked if employer's records prove unreliable). Plaintiff's arguments simply cannot be reconciled.

- April 2, 2025: Plaintiff's Counsel requests Perdue provide additional documentation demonstrating Opt-in Plaintiffs did not do any work for Perdue within the limitations period. (*Id.* at 11).
- April 15, 2025: Perdue provided the last possible dates of service based on a review of records. (*Id.* at 9-10)
- May 6, 2025: With no response from Plaintiff, Perdue voluntarily provides the relevant data from Perdue's systems that demonstrate the most recent contracted for service dates for Opt-in Plaintiffs all fall outside the relevant time periods and requests Plaintiff's position on whether these Opt-in Plaintiffs would dismiss the time-barred claims. (*Id.* at 8-9)
- May 14, 2025: Having more than a week to review the records, Plaintiff's Counsel represents "we are still discussing this issue on our end" and requests Perdue identify the procedural mechanism it intends to seek dismissal of Opt-in Plaintiffs' claims. (*Id.* at 5)
- May 15, 2025: Perdue identifies procedural mechanisms and legitimate processes by which the Court may address Opt-in Plaintiffs' expired claims now and further requests Plaintiff confirm Opt-in Plaintiffs intend to address the time-barred claims, "given the status of the expired claims do[es] not appear in dispute." (*Id.* at 4).
- May 15, 2025: Plaintiff's Counsel, without questioning Perdue's records or otherwise contending the fact of Opt-in Plaintiffs' expired claims could be in dispute, refuses to dismiss expired claims due to procedural timing and is "happy to revisit the issue once discovery is complete." (*Id.* at 3).

In other words, Perdue has not engaged in "one-sided" discovery. All information cited in Perdue's Motion was either (a) supplied by Plaintiff in public filings or (b) provided to Plaintiff's Counsel in pre-motion correspondence with ample time to review and verify *with their own clients*.

Instead of using this time in a productive way to investigate whether their own clients' claims are not, in fact, time barred – information they have ready access to as these are their clients – Plaintiff's counsel chose to do nothing except lodge pages of form-over-substance challenges to the underlying procedural mechanism for dismissal. At the same time, Plaintiff insists these seven Opt-In Plaintiffs be included in the pool for discovery, without articulating what specific discovery they would even need beyond that which was already provided or otherwise presently available to Plaintiff's Counsel through regular communication. Plaintiff's approach should not be well taken.

5

      2.      <u>This Court Maintains Real Authority to Secure the Just, Speedy, and Inexpensive Determination of Time-Barred Claims.</u>

Despite Plaintiff's challenges to the contrary, there is no question this Court has the inherent authority to streamline litigation to ensure the "just, speedy, and inexpensive" resolution of claims, as stated in Fed. R. Civ. P. 1. Plaintiff attempts to undermine this authority by misrepresenting the applicable standards for Perdue's Motion, incorrectly relying on *United States v. Shaffer Equip. Co.* to impose an inapplicable limitation on this Court.[5] *See* ECF No. 75, at 9-10 (citing *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 461 (4th Cir. 1993)). Instead, the focus should be on Rule 1's primary aim of efficient adjudication. The Federal Rules of Civil Procedure empower the Court to address nonviable claims promptly, as seen in Rules 12(f), 21, 41(b), and 83.[6] *See* ECF No. 74-1, at 8-10. Rule 54(b) further reaffirms the Court's authority to enter final judgments on some claims or parties, ensuring no unnecessary delays. And, of course, Rule 11 mandates parties conduct a reasonable inquiry to support their factual claims, something Plaintiff has failed to do, *supra*.

Given this framework, the Court's inherent authority is more than some "*so-called*" inherent power (as diminished by Plaintiff) and serves as a valid tool for swiftly addressing Opt-in Plaintiffs' time-barred claims. *See, e.g., G. Heileman Brewing Co., Inc. v. Joseph Oat Corp.*, 871 F.2d 648, 653 (7th Cir.1989) ("Inherent authority remains the means by which district judges

---

[5] *Shaffer* outlines factors for dismissing cases due to egregious misconduct, such as discovery abuse or abuse of the judicial process, but that standard does not apply here. *See Shaffer*, 11 F.3d at 462; *Projects Mgmt. Co. v. Dyncorp Int'l LLC*, 734 F.3d 366, 368 (4th Cir. 2013) (factors to consider when dismissing a case due to misconduct, such as discovery abuse or abuse of the judicial process); *Dickens v. Conner*, 2024 WL 4135388, at *1 (D. Md. Sept. 10, 2024).

[6] Plaintiff's attempts to discredit Perdue's Motion by distinguishing traditional applications of Rules 12(f), 21, and 41(b) are misguided and fail to discredit this Court's inherent authority. *See* ECF No. 75, at 8-11. Yet, even if Plaintiff were correct that no procedural rule expressly permits the instant review of Perdue's Motion, much like the judicial doctrine of equitable tolling, for which there is no procedural rule permitting such a remedy, timely adjudication of Opt-in Plaintiffs' time-barred claims falls squarely within this Court's power to manage this litigation in a just and equitable fashion. *See Holmberg v. Armbrecht*, 327 U.S. 392, 396, 66 S. Ct. 582, 584, 90 L. Ed. 743 (1946) ("Equity eschews mechanical rules; it depends on flexibility"); Fed. R. Civ. P. 83(b) ("A judge may regulate practice in any manner consistent with federal law, rules adopted under 28 U.S.C. §§2072 and 2075, and the district's local rules.").

deal with circumstances not proscribed or specifically addressed by rule or statute, but which must be addressed to promote the just, speedy, and inexpensive determination of every action."); *Anderson v. Cagle's, Inc.*, 488 F.3d 945, 950 (11th Cir. 2007) (noting earlier dismissal of opt-in plaintiffs).[7]

### 3. Plaintiff's Attempts to Recharacterize Perdue's Motion as One for Summary Judgment or Decertification Are Unsound.

In another failed attempt to challenge Perdue's Motion, Plaintiff next argues Perdue's Motion constitutes a *de facto* motion for summary judgment or decertification. *See* ECF No. 75, at 3, 6-7, 13-14. This argument lacks any merit whatsoever. To confirm, Perdue is not seeking to decertify the collective action or to challenge the claims of the remaining 70 opt-in plaintiffs at this time. Instead, Perdue's Motion specifically targets only the seven Opt-in Plaintiffs who independently presented information evidencing their claims are definitively time-barred – a fact later verified by Perdue's own records.

While Plaintiff claims the only time the Court can address these issues is on summary judgment or decertification, their own authority does not even support this contention. *Compare* ECF No. 75, at 10 (citing *Hoffman* to assert courts reject efforts to address individualized defenses or merits issues outside of summary judgment or decertification), *with Hoffmann v. Sbarro, Inc.*, 982 F. Supp. 249, 255 (S.D.N.Y. 1997) (noting that where defendant filed motion for judgment on the pleadings on underlying merits of plaintiff's claims – not defenses – and submitted deposition testimony regarding the same, court must convert motion to one for summary judgment and allow plaintiff opportunity to respond); *compare also* ECF No. 75, at 16 (citing *Curtis* to suggest a statute of limitations defense is "typically raised and ruled on during the decertification stage"), *with*

---

[7] *See also Anderson et al v. Cagle's, Inc., et al*, Ca. No. 1:00-cv-00166-WLS, Doc. No. 117 (May 21, 2003 M.D. Ga.) (**Ex. A**) (dismissing opt-in plaintiffs with expired claims pursuant to Rule 12(b)(6) and over no objection by plaintiffs).

*Curtis v. Time Warner Ent.-Advance/Newhouse P'ship*, 2013 WL 1874848, at *8 (D.S.C. May 3, 2013) (ruling on conditional certification but noting "*[a]fter the opt-in period has expired*, [defendant] may raise the statute of limitations as a defense to the claim of any individual plaintiff in an appropriate pleading" without limiting such juncture to the decertification stage) (emphasis added).

Nevertheless, decertification or summary judgment is not the *only* time and mechanism a party (or court) may address claims that run afoul of the applicable statute of limitations in a conditionally certified collective. *See supra* §(A)(1); *see also* ECF No. 74-1, at 8-10; *York v. Velox Express, Inc.*, 524 F. Supp. 3d 679, 691 (W.D. Ky. 2021) (keying notice period to three years preceding the complaint but holding "this does not guarantee that each opt-in plaintiff's claims will be considered timely" and the timeliness of claims would be considered after consent forms have been filed). And, any perceived lack of procedural guidance dictating when to address time-barred claims of opt-in plaintiffs, whether at this juncture, summary judgment, or decertification is likely a result of the fact that most counsel, when faced with evidence of claims that are clearly time barred (especially when provided by their clients), agree to voluntarily dismiss these claims after informal verification with their own clients.

B.  **Plaintiff Cannot Rely Upon a Theoretical Application of Equitable Tolling to Save Opt-in Plaintiffs' Time-Barred Claims.**

Finally, Plaintiff attempts to avoid dismissal of time-barred claims by citing to a yet-to-be filed motion for equitable tolling. This is a nonstarter. For one, no such motion has been filed, despite Plaintiff having ample opportunity to do so. For another, the United States Supreme Court has held equitable tolling of the statute of limitations is "a rare remedy to be applied in unusual circumstances, not a cure-all for an entirely common state of affairs." *See, e.g., Wallace v. Kato*, 549 U.S. 384, 396, 127 S. Ct. 1091, 1100, 166 L.Ed.2d (2007); *Irwin v. Dep't of Veterans Affairs*,

8

498 U.S. 89, 96, 111 S. Ct. 453, 457, 112 L.Ed.2d 435 (1990) (stating "[f]ederal courts have typically extended equitable relief only sparingly"); *Baldwin County Welcome Ctr. v. Brown*, 466 U.S. 147, 152, 104 S. Ct. 1723, 1726, 80 L.Ed.2d 196 (1984) (declining to apply equitable tolling and noting "[p]rocedural requirements established by Congress for gaining access to the federal courts are not to be disregarded by courts out of a vague sympathy for particular litigants").

The Fourth Circuit has heeded the Supreme Court's admonition and consistently has held equitable tolling is only to be applied very narrowly. *Gayle v. United Parcel Serv., Inc.*, 401 F.3d 222, 226 (4th Cir. 2005) ("Equitable tolling, while rare, does allow for exceptions to the strict enforcement of deadlines. Such exceptions are narrow, and none is available here"); *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 283 (4th Cir. 2002) (holding "any invocation of equity to relieve the strict application of a statute of limitations must be guarded and infrequent…" and denying equitable tolling). Contradicting the congressional mandate that the statute of limitations for FLSA claims continues to run on each individual's claim until he or she consents to join the lawsuit is rarely appropriate.[8] *MacGregor v. Farmers Ins. Exch.*, 2011 WL 2731227, at *1 (D.S.C. July 13, 2011). As agreed by the Parties, Plaintiff bears the burden of invoking the exceedingly rare remedy of equitable tolling and she must prove with respect to each putative opt-in plaintiff: (1) he has diligently pursued his rights, and (2) some extraordinary circumstances prevented him from taking timely action. *Chao*, 291 F.3d at 283; ECF No. 75, at 13-14 (further noting equitable tolling applies where plaintiffs exercised "reasonable diligence"); ECF No. 74-1, at 5-6. <u>The facts of this case simply do not warrant the extremely narrow remedy of equitable tolling here</u>.

---

[8] Plaintiff's argument that dismissing these claims undermines the FLSA's remedial purpose is misplaced. *See* ECF No. 75, at 12-13. The FLSA's purpose is to protect worker's rights within the framework of the law, including its statute of limitations. Allowing expired claims to proceed would not further the FLSA's goals but would instead create uncertainty and encourage the filing of untimely claims, so long as the plaintiff preemptively "preserves the right" to seek equitable tolling at some unknown point in the future.

1. <u>There is No Evidence That Perdue Caused the Delay in Opt-in Plaintiffs Asserting Claims.</u>

In an attempt to argue Perdue's own delay warrants equitable tolling, Plaintiff's Opposition outlines authority suggesting equitable tolling has been granted following delays in the litigation attributable to a defendant's "dilatory actions." *See* ECF No. 75, at 13-14. No such evidence exists here. While Perdue did file a Motion to Dismiss, the Court's expeditious (2-month) review of the same ensured no meaningful or extraordinary delay in its ultimate ruling on Plaintiff's Motion for Conditional Certification, which remained pending for barely five months. *See* Plaintiff's Motion for Conditional Certification, ECF No. 14 (filed June 7, 2024); *and* Court's Order, ECF No. 34 (entered June 7, 2024). Moreover, even Plaintiff's own authority demonstrates equitable tolling for delays in ruling on a motion for conditional requires far more than the five months that passed in this case. *See* ECF No. 75, at 13-14 (identifying cases granting tolling where certification was delayed six to ten months); *but see Firestone v. Food Concepts, LLC*, 2024 WL 1327202, at *3 (D.S.C. Mar. 28, 2024) (denying tolling where motion to certify collective was pending for only 7 months and distinguishing a motion pending for a few months to motions pending for over a year and listing cases supporting "ordinary litigation delay" insufficient grounds for equitable tolling).

2. <u>Plaintiff's Failure to Act with Any Reasonable Diligence to Toll Claims Precludes Reliance on Tolling.</u>

While Plaintiff's Opposition asserts an indefinite right to seek equitable tolling, no such right exists. That is particularly true when, <u>as here</u>, Plaintiff has taken no action whatsoever to address expired claims despite knowing about them for months now. Instead, Plaintiff simultaneously demands the very individualized discovery she previously opposed. For instance, despite previously seeking to limit Perdue's right to individualized discovery, arguing representative discovery would suffice for any affirmative defense, Plaintiff now claims "whether tolling is appropriate depends on case-specific facts and circumstances" and outlines

individualized questions she needs answered as to each Opt-in Plaintiff, "such as when plaintiffs learned of the lawsuit, how notice was received, and whether external obstacles impeded timely filing." *Compare* ECF No. 75, at 13-15, *with* Parties' Joint 26(f) Report, ECF No. 70. But these facts are inapposite given that the Notice Plaintiff herself proposed, which this Court approved, excludes these individuals from participation. Nor does Plaintiff provide any concrete facts to show equitable tolling may even be appropriate here in her Opposition. That is because it is not.

C. **Forcing Litigation of Admittedly Expired Claims Will Prejudice Perdue.**

Perdue's Motion is particularly timely because Plaintiff insists on subjecting Perdue to individualized discovery from the Opt-in Plaintiffs whose claims indisputably fall outside the limitations period. Under the Court's discovery order, Perdue may serve written discovery on 50 percent of opt-ins and depose 20 percent. *See* ECF No. 71. If the seven time-barred individuals remain in the collective, Plaintiff can "spend" part of that quota on witnesses whose claims will inevitably be dismissed, thereby depriving Perdue of discovery from timely opt-in plaintiffs whose testimony will matter for merits and decertification purposes. Such an allowance would not only deprive Perdue of critical and already limited discovery from opt-in plaintiffs with live claims, but would further capitalize the time and resources of counsel for both Perdue, Plaintiff, and other members of the collective. Moreover, retaining Opt-in Plaintiffs' obsolete claims would inflate the evidentiary record with irrelevant materials, burdening the Court with unnecessary filings and risks confusion or complications at the decertification and summary-judgment stages, as the same statute-of-limitations arguments will resurface on decertification or summary judgment.

Ultimately, allowing Opt-in Plaintiffs' claims to proceed through discovery would impose unnecessary costs on Perdue, burden the Court with unnecessary Motions pertaining to these Opt-in Plaintiffs, and delay the resolution of the case. Such abuse of the collective action process should

not be permitted or rewarded. *See Bigger v. Facebook, Inc.*, 947 F.3d 1043, 1049 (7th Cir. 2020). Perdue's Motion should be granted accordingly.

**D.    CONCLUSION**

By opposing what, in the ordinary course of practice, would be a straightforward non-issue for the Court's review (*i.e.*, a voluntary dismissal), Plaintiff advocates a wholly unnecessary, costly, and protracted approach that is entirely inconsistent with the federal rules and principles of judicial economy on which collective actions are based. As the facts provided by both Perdue *and* Opt-in Plaintiffs establish, the seven identified Opt-in Plaintiffs' claims are clearly time barred, and Plaintiff has failed to provide any support whatsoever to show otherwise or justify equitable tolling. Dismissing Opt-in Plaintiffs whose claims are time-barred at this juncture would certainly simplify discovery, future motion practice, and the overall course of this litigation. And, it is within the sound discretion and inherent authority of this Court to do so. Perdue respectfully requests the Court strike the consent forms filed by the seven Opt-in Plaintiffs and/or dismiss these claims as time-barred accordingly.

Respectfully submitted this June 12, 2025.

/s/ Robert R. Niccolini
OGLETREE, DEAKINS, NASH, SMOAK
 & STEWART, P.C.
Robert R. Niccolini (Bar No. 24873)
1909 K Street NW, Suite 1000
Washington, D.C. 20006
Tel: (202) 887-0855
Fax: (202) 887-0866
robert.niccolini@ogletreedeakins.com

Margaret Santen (admitted pro hac vice)
Kevin P. Hishta, *Pro Hac Pending*
191 Peachtree St. NE, Suite 4800
Atlanta, GA 30303
T: 404-881-1300
maggie.santen@ogletree.com
kevin.hishta@ogletree.com

Charlotte Smith
8529 Six Forks Road, Suite 600
Raleigh, NC 27615
(919) 760-4150
charlotte.smith@ogletree.com

Mark J Swerdlin
SHAWE AND ROSENTHAL LLP
One South Street, Suite 1800
Baltimore, MD 21202
(410) 752-1040
Swerdlin@shawe.com

*Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 12th day of June, 2025, the foregoing was filed electronically with the Clerk of the Court to be served by operation of the Court's electronic filing system upon the following:

Gregg Cohen Greenberg (Bar no:17291)
Robert W.T. Tucci (Bar no: 31356)
ZIPIN, AMSTER & GREENBERG, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, MD 20910
(301) 587-9373
ggreenberg@zagfirm.com
rtucci@zagfirm.com

Jamie Crooks (admitted pro hac vice)
Michael Lieberman
Amanda R. Vaughn
FAIRMARK PARTNERS LLP
1001 G Street NW
Suite 400 East
Washington, DC 20001
(617) 721-3587
jamie@fairmarklaw.com
michael@fairmarklaw.com
amanda@fairmarklaw.com

Charles Gerstein
GERSTEIN HARROW LLP
1001 G Street NW
Suite 400 East
Washington, DC 20001
(202) 670-4809
charlie@gerstein-harrow.com

*Counsel for Plaintiffs*

*/s/ Robert R. Niccolini*
Robert R. Niccolini

*Counsel for Defendant*