UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P: (410) 962-4953 | F: (410) 962-2985
mdd_jmcchambers@mdd.uscourts.gov

November 19, 2025

LETTER ORDER AND OPINION TO COUNSEL

RE:   *Barbara Tripp, et al., v. Perdue Foods LLC*.
      Civil Action No. 1:24-cv-00987-JMC

Dear Counsel:

Plaintiffs, Barbara Tripp, individually and on behalf of all others similarly situated, assert several claims against Defendant, Perdue Foods LLC based on Defendant's alleged misclassification of them under the Fair Labor Standards Act ("FLSA"). *See* (ECF Nos. 93, 94). Presently before the Court is a discovery dispute in which the parties disagree as to whether the Defendant may obtain Plaintiff's tax returns from 2020 to the present. (ECF Nos. 93, 94). For the reasons set forth below, Defendant's request is GRANTED.

**I.      Background**

Defendant propounded upon Plaintiffs a written discovery request for Plaintiffs' "federal and state tax returns, (specifically, their Schedule Cs…and Schedule Fs…as well as any other documents that constitute evidence, reflect, or refer to the amount and source of Plaintiffs' income and underlying business deductions and expenses." (ECF No. 94 at 1). Schedule C refers to "Profit or Loss From Business" returns, and Schedule F refers to "Profit or Loss From Farming" returns. *Id.* Plaintiffs objected on the basis that the tax returns are subject to a qualified privilege.[1] (ECF No. 93). In accordance with the Court's Memorandum Concerning Discovery, issued on April 22, 2025, the parties attempted to resolve the dispute on numerous occasions by way of letters, emails, and videoconferences. (ECF No. 92); Loc. R. 104.7 (D. Md. 2025). On November 11, 2025, the parties notified the Court of the discovery dispute. (ECF No. 92). The parties filed their position letters on November 14, 2025. (ECF Nos. 93, 94).

---

[1] Embedded in the issue of qualified privilege exists an additional question of relevance. (ECF No. 93). The parties also dispute whether Plaintiffs have waived the assertion of qualified privilege because Plaintiff Tripp is a party to a Georgia litigation against Defendant and provided the tax returns in that case. Considering the varying standards among circuits, the Court declines to find that Plaintiff waived the issue of qualified privilege and considers the arguments on the merits.

**II.     Analysis**

Courts in the Fourth Circuit disfavor the disclosure of tax returns. *E.g.*, *Susko v. City of Weirton*, Civ. Action No. 5:09-CV-1, 2010 WL 3584425, at *3 (N.D. W. Va., Sept. 10, 2010); *E. Auto Distribs., Inc. v. Peugeot Motors of Am., Inc.*, 96 F.R.D. 147, 148-49 (E.D. Va. 1982). Accordingly, tax returns are subject to a qualified privilege. *See Jowite Ltd. P'ship v. Fed. Ins. Co.*, Civil Case No.: SAG-18-2413, 2019 WL 1513457, at *5 (D. Md. Apr. 8, 2019). "The majority rule that has emerged from federal case law is that a two-prong test should be applied to determine if the qualified privilege protecting tax returns is overcome." *Hastings v. OneWest Bank, FSB*, Civil Case No. GLR-10-3375, 2013 WL 1502008, at *2 (D. Md. Apr. 11, 2013) (*quoting Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, No. 1:02CV00146, 2004 WL 444570, at *2 (M.D.N.C., Feb. 24, 2004)). "Under this test, tax returns are discoverable if (1) they are relevant to a matter in dispute; and (2) they are needed, because the information is not available from other sources." *Id*. "The party seeking disclosure carries the burden to show that the tax returns are relevant, and the resisting party carries the burden to identify an alternate source of the information." *Id*.

Plaintiffs argue Defendant has not met its burden to show relevance and propose alternative sources for the information sought on the tax returns. (ECF No. 93 at 2). Defendant urges that (1) in the context of FLSA misclassification suits, tax returns are "routinely" relevant and discoverable and (2) Plaintiffs' proposed alternate sources do not contain the information Defendant seeks from the Schedule C and Schedule F returns. (ECF No. 94 at 2).

*A.  Relevance*

In the Fourth Circuit, the economic realities test governs the classification of the employment relationship in FLSA cases. *See, e.g.*, *Schultz v. Capital International Security, Inc*., 466 F.3d 298 (4th Cir. 2006). The economic realities test contemplates (1) the degree of control that the putative employer has over the manner in which the work is performed; (2) the worker's opportunities for profit or loss dependent on his managerial skill; (3) the worker's investment in equipment or material, or his employment of other workers; (4) the degree of skill required for the work; (5) the permanence of the working relationship; and (6) the degree to which the services rendered are an integral part of the putative employer's business. *Id.*

Defendant is correct that courts have recognized certain tax returns as relevant to multiple factors under the economic realities test in various contexts.[2] *E.g.*, *Nesselrodte v. Divas, LLC*, Civil Action NO. 3:11-CV-95, 2012 WL 13191331, at *4-*7 (N.D.W. Va. Oct. 15, 2012). Accordingly, Defendant posits three specific reasons why Plaintiffs' tax returns are relevant.. (ECF No. 94 at 2). Defendant contends they are relevant evidence of (1) Plaintiffs' profits or losses

---

[2] Many cases that have found tax returns are relevant and discoverable in FLSA classification inquiries are out of circuit. *See, e.g.*, *Robinson v. KKC Holdings, Inc.*, No. 91-2221-TLP, 2020 WL 7864398, at *1 (W.D. Tenn. June 16, 2020) (finding relevant certain tax returns in a jurisdiction that does not apply a qualified privilege to such tax returns); *Lewis v. Shafer Project Res., Inc*., Civil Action No. 2:19-CV-353, 2021 WL 2216626, at *2 (S.D. Tex. Jan. 22, 2021) (applying a general relevance standard to an FLSA case).

from farming with respect to the agricultural exemption under the FLSA; (2) Plaintiffs' profits or losses from Plaintiff Tripp's "business with Perdue or other businesses is relevant to the economic realities test because it shows whether she had substantial sources of her own business"; and (3) "how much she invested in her business, whether she outsourced her operations to employees she hired and how much she paid any such employees, whether she operated at a profit or loss given her business decisions, and what other business expenses she incurred and deductions she took.[3]" (ECF No. 94 at 2). Defendant argues this "is all evidence this Court will need to consider when it decides whether Plaintiff was an employee or an independent contractor under the FLSA." *Id.* Plaintiffs argue that any tax returns applicable to years in which Plaintiffs did not work for Defendant bear no relevance on the classification of the employment relationship between Plaintiffs and Defendant. (ECF No. 93 at 2). Moreover, they argue certain claimed exemptions or deductions "do not inform whether an employer-employee relationship existed under the FLSA." *Id.*

In *Nesselrodte*, the plaintiff sued her employer, alleging she and other exotic dancers who performed at the defendant's club were misclassified under the FLSA. *Nesselrodte*, 2012 WL 13191331 at *1. Like the Plaintiffs here, they sought unpaid minimum wages and liquidated damages. *Id.* Defendant filed a counterclaim alleging that "mandatory dance fees the entertainers collected are service fees that can be used to offset any FLSA wage obligations." *Id.* at *4. The defendant there propounded an interrogatory request seeking "[e]ach and every one of [the plaintiffs'] local, state and federal income tax returns, including all attachments and schedules thereof, for the calendar years of 2006 through 2011." *Id.* at *2. Like the instant case, *Nesselrodte* "turn[ed] on the employment relationship between the [plaintiffs] and [defendant]." *Id.* at *4. The court found "that the [plaintiffs'] tax returns [were] relevant to at least two of the factors constituting the economic realities test, namely factor (3) the worker's investment in equipment or material, and factor (5), the permanence of the working relationship." *Id.* at *6. It reasoned that if the plaintiffs "were claiming tax deductions for hair, nails, makeup, cosmetic surgery, etc., that fact would provide evidence as to the economic reality of the relationship." *Id.* Further, it considered if the plaintiffs "were performing at a wide variety of establishments, this information would also provide evidence as to the economic reality of the relationship." *Id.* at *7.

Plaintiffs correctly point out that *Nesselrodte* involved some differences from the case here. (ECF No. 93 at 2 n.2). However, the *Nesselrodte* court held that broader requests[4] were relevant to factors three and five of the economic realities test regardless of the existence of a counterclaim or other procedural differences. *Nesselrodte*, 2012 WL 13191331 at *6-*7. In the Court's view, Schedule F is clearly relevant to an agricultural exemption under the FLSA.[5] With respect to

---

[3] The Court considers the same rationales for the unnamed Plaintiffs.
[4] Defendant here seeks only Schedule C and Schedule F.
[5] Plaintiffs seek overtime payments (ECF No. 1). However, the FLSA's agricultural exemption "excepts 'any employee employed in agriculture' from the FLSA's maximum-hour requirement." *Mondragon v. Scott Farms, Inc.*, 329 F.R.D. 533, 547 (E.D.N.C. 2019) (quoting 29 U.S.C. § 213(b)(12)). Thus, the information sought from Schedule F clearly bears relevance on whether Plaintiffs are entitled to overtime.

Schedule C, the Court finds persuasive the reasoning in *Nesselrode*. Here, the information on Schedule C would provide at least some evidence as to the economic reality of the relationship, namely factor five, the permanence of the working relationship. If, for example, Plaintiffs owned or operated many other businesses, this information would weigh against the permanence of the employment relationship. Moreover, if Plaintiffs claimed certain expenses enumerated on Schedule C, that information too would bear relevance on the economic reality of the employment relationship. The Court does find persuasive Plaintiffs' concern with tax returns for years in which Plaintiffs did not have a working relationship with Defendant. To the extent that any interrogatories request tax returns for years in which a Plaintiff did not have a working relationship with Defendant, those tax returns are not relevant.

### B. Alternative Sources

Plaintiff contends that Defendant's own records are an alternative source that provides the same information. "Perdue indisputably possesses records of the payments it made to Plaintiffs and related deductions, along with contract terms, settlement statements, flock reports, and loans." (ECF No. 93 at 2). Further, "Plaintiffs have and will provide other records and information showing expenses relating to their work." To that end, Defendant argues

> Defendant's own records do not contain the same information as the Schedule Cs or Schedule Fs on the tax returns. For example, Defendant's records do not "constitute the primary and most reliable source" for information concerning Plaintiff's profits and losses from her business with Perdue or other outside businesses, her own investments in the business, whether she characterized this as an agricultural business, and whether she hired workers and how much she paid to them, among other things.

(ECF No. 94 at 2).

The Court agrees. While Defendant may possess documents that contain some financial records like contract terms, settlement statements, flock reports, and loans, Plaintiffs' tax returns are the most reliable source of Plaintiffs' financial relationship with Defendant as described above. Therefore, the Court does not find that the proposed alternatives "contain all of the relevant information" Defendant seeks from the Schedule C and Schedule F returns.

For the foregoing reasons, Plaintiffs shall comply with Defendant's request for the Schedule C and Schedule F returns, with the limitation that the only relevant years are those in which the Plaintiffs performed work for Perdue. Defendant's request is GRANTED.

Notwithstanding its informal nature, this letter constitutes an opinion and order of the Court and should be docketed as such.

Sincerely yours,

                                        J. Mark Coulson
                                        United States Magistrate Judge