**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
J. Mark Coulson
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P: (410) 962-4953 | F: (410) 962-2985
mdd_jmcchambers@mdd.uscourts.gov

March 23, 2026

LETTER ORDER AND OPINION TO COUNSEL

RE:    *Barbara Tripp, et al., v. Perdue Foods LLC.*
       Civil Action No. 1:24-cv-00987-JMC

Dear Counsel:

Plaintiffs, Barbara Tripp, individually and on behalf of all others similarly situated, assert several claims against Defendant, Perdue Foods LLC based on Defendant's alleged misclassification of them under the Fair Labor Standards Act ("FLSA"). *See* (ECF Nos. 93, 94). Presently before the Court is a discovery dispute in which the parties disagree as to whether certain Requests for Production of Documents and Interrogatories are discoverable. (ECF Nos. 100, 101, 102). For the reasons set forth below, Plaintiffs' requested relief is GRANTED in part and DENIED in part and Defendant's requested relief is GRANTED in part and DENIED in part.

I.    **Background**

On April 4, 2023, Plaintiff Tripp filed the pending litigation against Defendant, Perdue Food LLC, alleging violations of the FLSA for employee misclassification and seeking a declaratory judgment under the Federal Declaratory Judgment Act in connection with certain chicken-grower operations. (ECF No. 1). On November 13, 2024, the undersigned granted in part a motion to certify a collective action, such that the class would be comprised of individuals who were growing or formerly grew chickens for Defendant under a Perdue Poultry Producer Agreement from April 21, 2021 through November 13, 2024. (ECF No. 34).

After the commencement of discovery, on November 11, 2025, the parties alerted the Court to the existence of a discovery dispute concerning the Defendant's ability to obtain Plaintiffs' tax returns beginning in 2020. (ECF Nos. 92, 93, 94). On November 19, 2025, the Court permitted the discovery of the tax returns with the limitation that the relevant time period with respect to each Plaintiff would be during the years during with the Plaintiff worked for Defendant. (ECF No. 95). Thereafter, on February 5, 2026, the Court granted a motion to modify the scheduling order, making the discovery deadline August 4, 2026. (ECF No. 99).

On March 13, 2026, the parties alerted the Court to the existence of a second discovery dispute (ECF No. 100), and the parties filed their respective position statements on March 18, 2026 (ECF Nos. 101, 102).

**II.      Analysis**

The parties seek judicial intervention in resolving a dispute concerning Request for Production No. 13 and certain Opt-In Plaintiffs' responses[1] to Request for Production No. 5 and Interrogatories Nos. 6 and 7. (ECF No. 100).

   *A.       Request for Production No. 13*

Plaintiffs' Request for Production No. 13 seeks information Defendant sent the notice administrator, CPT Group.  Specifically, in Request for Production No. 13 Plaintiffs seek the production of:

> all information that You sent, transmitted, or otherwise provided to CPT Group, Inc. as the designated third-party administrator regarding each individual Grower, including but not limited to the following: (1) Full legal name; (2) Last known mailing address; (3) Home telephone number; (4) Cell/mobile telephone number; (5) Personal email address; (6) Business/work email address; (7) Execution date and term of any agreement with Defendant; and (8) Location(s) of facility where work was performed for Defendant's benefit (including facility name, address, and department/position, if applicable).

(ECF No. 102-1 at 5).[2] Defendant objects on the grounds that the request is overbroad and unduly burdensome because "RFP 13 asks for all private grower contact information that Perdue provided to CPT Group, Inc., the designated third-party administrator responsible for providing notice to all 1,100+ growers nationwide who Plaintiffs initially sought to represent in this putative collective action prior to conditional certification and notice." (ECF No. 101 at 1).  Defendant continues, "RFP 13 requests, *inter alia*, personal home addresses, email addresses, and cell phone numbers for all such growers—over 1,000 of whom affirmatively decided not to join this lawsuit after receiving notice. Such a broad, invasive request flies in the face of the Court's Order appointing the claims administrator in the first place given the significant privacy concerns at play with this information."  *Id.*  Defendant asserts that Plaintiffs already have the contact information for growers who have opted into the lawsuit, and non-party information has no relevance to the case. *Id.* at 1-2.

Plaintiffs assert they have already attempted to narrow the dispute from the full information Defendant sent CPT Group, including farm-location information, to a limited request that would omit "any request for growers' personal contact information if Perdue would provide the farm locations and stipulate that it would not call any non-opt-in growers as witnesses." Thus, Plaintiffs

---

[1] Those individuals include Plaintiffs Rountree, Cotturone, Davis, Cornwell, Bunting, and Ramashwar.

[2] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

assert that Defendant's perspective of this request as one for non-party contact information is "inaccurate." (ECF No. 102 at 1).

The Court appreciates Plaintiffs' dilemma in that if Defendant intends to rely on non-opt in growers at trial, then Plaintiffs should have the some ability to investigate what discoverable information they possess. Rule 26 requires disclosure of those individuals who are likely to have discovery information. Fed. R. Civ. P. 26(a)(1)(A)(i). To that end, the Court agrees that Plaintiffs' proposed stipulation to preclude reliance non-opt in growers as witnesses would resolve a substantial portion of this particular dispute, and limit any disclosure of personal contact information to those non-opt in growers who Defendant decided were likely trial witnesses on its behalf. The Court therefore orders that personal contact information only need be provided by Defendant for those non-opt in growers Defendant intends to call at trial, to include items 1-6 in No. 13.

But this does not fully address the dispute. Plaintiffs also argue they are entitled to discover the location information for purposes of proving their status under the "economic realities" inquiry key to showing that they are not independent contractors outside the scope of the FLSA. It is true that under the FLSA, the "touchstone" of the economic realities inquiry is whether the worker is "economically dependent on the business to which he renders service," and Plaintiffs are correct that the Fourth Circuit considers control, opportunity for profit or loss, investment, permanence, degree of skill, and whether the services rendered are integral to the putative employer's business. *See McFeeley v. Jackson St. Ent., LLC*, 825 F.3d 235, 240–41 (4th Cir. 2016); *Chavez-Deremer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 396–97, 417 (4th Cir. 2025). Plaintiffs posit that particularly the "degree of skill" factor justifies their request "because it illuminates the geographic structure of Perdue's grower network and the degree to which growers function within an integrated system organized around Perdue's plants and complexes." (ECF No. 102 at 2). As such, the "physical locations of the farms in Perdue's network are therefore among the most direct evidence of whether Perdue prioritizes proximity over purported specialized skill." *Id.* This, in turn, would tend to point away from growers being selected on specialized skill v. proximity to processing, undermining independent contractor status as urged by Defendant.

To that end, rather than provide each farm location for 1100+ growers, Defendant offered to provide "counties where each grower's farm is located, which can easily be mapped out against the central processing facility locations." But Defendant does not articulate how such information would be meaningfully less burdensome than the farm location information requested, nor how it would be the qualitative equivalent to what Plaintiff is attempting to establish. Accordingly, Defendant is ordered to produce farm location information, the compromise suggested by Plaintiffs.

B.      *Opt-In Plaintiffs' Interrogatory Responses to Interrogatories 6 and 7*

Defendant contends that certain opt-in Plaintiffs' responses to Interrogatories 6 and 7 are insufficient.  (ECF No. 101 at 2). Interrogatory No. 6 provides:

> Identify each and every week you contend you were not paid minimum wage for all hours worked . . . from March 17, 2022, to the present, including the amount you were paid for each such week you contend you did not receive at least minimum wage and the specific hours worked for each such week you . . . did not receive . . . minimum wage.

(ECF No. 101-2 at 6-7).  Interrogatory No. 7 provides:

> Identify each and every week you contend you worked overtime (hours greater than 40 in a single week and/or as referenced in the complaint) during the period of March 17, 2022, to the present, and, for each such week, describe how many hours of overtime you worked, the manager or supervisor with Perdue who knew or had reason to know the work was performed, the tasks you contend you performed during this time, and the amount of time you contend you spent performing the identified work and/or tasks. As part of your response, please identify any records you prepared and/or maintained which described those overtime hours, including, but not limited to, any daily logs, receipts, planners. . . .

(ECF No. 101-2 at 7). Defendant posits that Plaintiffs have not provided "any information concerning the precise weeks they contend they are entitled to minimum wage or overtime damages, the amounts they were paid (to allow calculation of minimum wage), the specific hours (overtime and otherwise) they worked each week, the managers they claim had knowledge they were working overtime, the tasks they performed during overtime hours, the amount of time they spent on those tasks, the records they prepared to track overtime, or the factual basis for these claims.  (ECF No. 101 at 2-3).  Plaintiffs counter that that Plaintiffs Rountree, Davis, Cotturone, and Cornwell[3] have each responded to the interrogatories with information with estimations of approximate hours worked per week when they had flocks and between flocks.  (ECF No. 102 at 2).  Plaintiffs therefore argue that the responses given comply with the demands of Rule 26 and FLSA law.  *Id.*

Specifically, Plaintiffs point again to *Chavez-Deremer* in support of their position.  *Chavez-Deremer*, 147 F.4th at 384 (quoting 29 U.S.C. § 211(c)). There, the Fourth Circuit recognized that Congress enacted the FLSA with several elementary protections "for those working as 'employees' in this Country, such as  the requirement that an employer pay overtime for hours worked in excess of 40 hours per workweek, as well as the requirement that employers maintain proper records of the 'persons employed' and 'the wages, hours, and other conditions and practices of employment.'" *Id.* Defendant points to *Richardson v. Alliance Residential Company* in support of the proposition that "the plaintiff bears the burden of proving that the defendant had actual or

---

[3] There is no indication that Plaintiffs Bunting's and Ramashwar's responses are at issue here.

constructive knowledge of the plaintiff's overtime work." *Richardson v. All. Residential Co.*, Civil Action No. ELH-18-1114, 2020 WL 551316, at *9 (D. Md. Feb. 4, 2020).  While this is true, *Richardson* nevertheless recognizes that "the FLSA's record keeping obligations fall squarely on the employer." *Id.* As such, Defendant avers that it did not have the requisite actual or constructive knowledge of the Plaintiffs' overtime work, relieving it of the obligation to have kept such records and necessitating the disputed requests. (ECF No. 101 at 3). Moreover, it contends that this basic discovery is "routinely permitted in FLSA cases." *Id.*; *see also Patel v. 7-Eleven, Inc.*, Civil Action No. 17-11414-NMG, 2019 WL 10959829, at *5 (D. Mass. Dec. 16, 2019) ("7-Eleven is entitled to discover plaintiffs' support for the allegation that they frequently do not make minimum wage."); *Belloso v. Asplundh Tree Expert, Co.*, Case No: 6:17-cv-2020-Orl-40GJK, 2018 WL 6261867, at *2 (M.D. Fla. Sept. 19, 2020) (reasoning that a interrogatory requesting itemization of the month, day, and year each plaintiff contended that he or she worked overtime properly related to whether the defendants filled their obligations under the FLSA and did not negate their recordkeeping obligations).

The Court agrees that the information is discoverable because it bears on whether Defendant fulfilled its FLSA obligations. *Belloso*, 2018 WL 6261867, at *2.  While Plaintiffs may not be able to ascertain a perfect summary of the hours worked considering the years between the events at issue and the present litigation, the Court trusts that Plaintiffs have and will continue to make their best effort to provide accurate estimates and the most reliable source of information that is responsive to these requests.  Fed. R. Civ. P. 26(g) ("By signing, an attorney or party certifies that to the best of the person's knowledge, information, and belief formed after a reasonable inquiry…is complete and correct…). To the extent that the Plaintiffs are unable to recall the information as requested, Plaintiffs shall respond with their best estimates as to each question.  In other words, if Plaintiffs are unable to recall which weeks they worked overtime (and have no documents showing as much), they shall provide an estimate of how many weeks they worked overtime. It appears as though they have done so to a certain extent.  However, they shall provide a supplemental response, if applicable. They should make their best efforts to provide the information requested, with the understanding that they need not create a perfect, retroactive ledger.  *Belloso*, 2018 WL 6261867, at *2.  To the extent that Plaintiffs possess any documents that are responsive to Interrogatory No. 7, they shall produce them.

Therefore, Defendant's requested relief is GRANTED subject to the adjustments stated above with respect to Interrogatories Nos. 6 and 7.

C.      *Opt-In Plaintiffs' Responses to Defendant's Requests Production Responses*

Finally, the parties dispute the scope of discoverable information under Defendant's Request for Production No. 5.  Request for Production No. 5 seeks

> All documents concerning, constituting, evidencing, or reflecting any expenses that
> you or any business you operated incurred in connection with your position as a

5

Producer with Perdue from March 2022 to the present, including but not limited to bank loans or notes, bank loan application documents, financial statements, audits, promissory notes, bank statements, bills, payment ledgers, payment receipts (including any receipt of payments to helpers or employees), cancelled checks, W-2s, 1099s, schedules, agreements, invoices, etc.

(ECF No. 101-7 at 6).  Defendant takes issue with the responses from Plaintiffs Rountree, Davis, Cotturone, Ramashwar, Bunting, and Cornwell.[4]  (ECF No. 101 at 3).  Defendant argues that the information is probative of the Plaintiffs' classification to the extent that the ability to hire others to run a business is supporting evidence in favor of an independent contractor status.  *Id.* (citing *Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74, 77 (2nd Cir. 2020). Plaintiffs contend that Request for Production No. 5 "effectively [seeks] every document reflecting any expense incurred in connection with the grower's work for Perdue."  (ECF No. 102 at 3).  Plaintiffs continue, "Perdue may prefer bank records or additional tax-related materials, but blanket relief is not warranted where Plaintiffs already have supplied substantial underlying information and Rule 34 reaches only documents within a party's possession, custody, or control."  *Id.*

In the Court's view, Request for Production No. 5 is too expansive in light of the probative value of the information sought.  Under Rule 26, compelling production of Request for Production No. 5, as stated, would be unduly burdensome compared to the probative value of an individual's ability to hire help. While the request is relevant to the economic realities test, the Court agrees with the Plaintiffs that information showing what businesses each Plaintiff owned, whether they were able to hire help, how many helpers each plaintiff hired for each business, and pay information for each helper is sufficient to achieve the stated purpose for Request for Production No. 5.

Therefore, Defendant's requested relief is GRANTED in part and DENIED in part such that each opt-in Plaintiffs (to the extent that he or she has not yet done so) shall produce a response

---

[4] Defendant describes the discovery that has been provided is as follows:

Plaintiff Rountree identified "Indian Neck Poultry, Just Getting By Poultry, and William Rountree" as businesses he operated in response to Interrogatory 1. Yet, he has not produced any documents showing their expenses, such as "bank loans or notes, bank loan application documents, financial statements, audits, promissory notes, bank statements, bills, payment ledgers, payment receipts (including any receipt of payments to helpers or employees), cancelled checks, W-2s, 1099s, schedules, agreements, or invoices." Similarly, Davis identified "A Davis Farm," but did not produce any bank statements, loans, notes, etc. related to that business, aside from a few handwritten ledgers. Cotturone, Ramashwar, and Bunting also did not produce any documents regarding their business expenses, which are within their control even if not their immediate possession. Davis, Rountree, Cornwell, and Bunting identified hired helpers, but none (except for Cornwell) produced any payment receipts or documents related to their helpers in response to RFP 5 outside of Schedule F returns and ledgers. *See Franze v. Bimbo Bakeries USA, Inc.*, 826 F. App'x 74, 77 (2d Cir. 2020) ("[T]he ability to hire others to run the business is evidence of the type of 'considerable independence and discretion' that supports a finding of [IC] status").

(ECF No. 101 at 3).

6

showing what businesses each Plaintiff owned, whether they were able to hire help, how many helpers each plaintiff hired for each business, and pay information for each helper.

## III.    Conclusion

For the foregoing reasons, the parties shall, within twenty (20) days of the entry of this order supplement their responses to the Requests for Production of Documents and Interrogatories consistent with the rulings stated above.

Notwithstanding its informal nature, this letter constitutes an order of the Court and should be docketed as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge