**UNITED STATES DISTRICT COURT**
**DISTRICT OF MARYLAND**

CHAMBERS OF
**J. Mark Coulson**
UNITED STATES MAGISTRATE JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
P: (410) 962-4953 | F: (410) 962-2985
mdd_jmcchambers@mdd.uscourts.gov

April 15, 2026

LETTER ORDER AND OPINION TO COUNSEL

RE:    *Barbara Tripp, et al., v. Perdue Foods LLC.*
       Civil Action No. 1:24-cv-00987-JMC

Dear Counsel:

Plaintiffs, Barbara Tripp, individually and on behalf of all others similarly situated, assert several claims against Defendant, Perdue Foods LLC based on Defendant's alleged misclassification of them under the Fair Labor Standards Act ("FLSA"). *See* (ECF Nos. 93, 94). Presently before the Court is a discovery dispute concerning (1) the appropriate scope of Perdue's ESI production and whether an executive-level custodian must be include therein and (2) scheduling concerning the Plaintiffs' written discovery responses. (ECF Nos. 104, 105, 106). Plaintiffs seek an order compelling the production of Perdue's ESI and a modification of the scheduling order consistent with the parties' previous agreement. For the reasons set forth below, Plaintiffs' requested relief is GRANTED in part and DENIED in part and Defendant's requested relief is GRANTED in part and DENIED in part.

I.    **Background**

On April 4, 2023, Plaintiff Tripp filed the pending litigation against Defendant, Perdue Food LLC, alleging violations of the FLSA for employee misclassification and seeking a declaratory judgment under the Federal Declaratory Judgment Act in connection with certain chicken-grower operations. (ECF No. 1). On November 13, 2024, the undersigned granted in part a motion to certify a collective action, such that the class would be comprised of individuals who were growing or formerly grew chickens for Defendant under a Perdue Poultry Producer Agreement from April 21, 2021 through November 13, 2024. (ECF No. 34).

After the commencement of discovery, on November 11, 2025, the parties alerted the Court to the existence of a discovery dispute concerning the Defendant's ability to obtain Plaintiffs' tax returns beginning in 2020. (ECF Nos. 92, 93, 94). On November 19, 2025, the Court permitted the discovery of the tax returns with the limitation that the relevant time period with respect to each Plaintiff would be during the years during with the Plaintiff worked for Defendant. (ECF No. 95). Thereafter, on February 5, 2026, the Court granted a motion to modify the scheduling order, making the discovery deadline August 4, 2026. (ECF No. 99).

1

On March 13, 2026, the parties alerted the Court to the existence of a second discovery dispute (ECF No. 100), and the parties filed their respective position statements on March 18, 2026 (ECF Nos. 101, 102). The Court issued a Letter Opinion and Order resolving the dispute on March 23, 2026.  (ECF No. 103).  On April 3, 2026, the parties alerted the Court of their third and presently pending discovery dispute. (ECF No. 104). The parties filed their position statements on April 10, 2026.  (ECF Nos. 105, 106).

## II.    Analysis

As an initial matter, Perdue opens its position statement with some concern that Plaintiffs seek the best of both worlds: They have failed to provide discovery responses for twenty-one opt-in Plaintiffs, yet have brought the instant dispute seeking "an extensive amount of [ESI] from Perdue from 29 different custodians and 7 executives on top of that, which will cost well over $1.5 million dollars to process, host, review, and produce."  (ECF No. 105).  Plaintiffs' position statement does not appear to challenge the discoverability of the outstanding requests.  To the extent that these outstanding requests may overlap with the Plaintiff's request an extension of time in which to provide such answers, Section II.B. will contemplate the scheduling order in greater detail. To the extent that any of these responses are not part of Plaintiff's arguments about the scheduling order, Plaintiffs are reminded of their Local Rule 104.3 obligation to produce discovery even in the presence of discovery disputes.  *See Loc. R.* 104.3 (D. Md. 2025) ("[T]he existence of a discovery dispute as to one (1) matter does not justify delay in taking any other discovery.").

### A.    Request for Production of ESI

Plaintiff seeks an order compelling the production of certain ESI from Perdue, and in turn, Perdue seeks a protective order from the same on the basis that the requests are unduly burdensome. (ECF No. 105 at 2).[1]  Plaintiffs posit they "seek ESI from seven specific executives[2] whom Perdue has identified as having 'held executive-level roles . . .that pertained to the live production of poultry during the Relevant Time Period.'" (ECF No. 106 at 3).  The parties make much of the numerical breakdowns involved in their proposals, i.e., how many custodians or executives must produce ESI, how many search strings are involved, and how many documents various search proposals yielded.  However, in the Court's view, such data assists the Court only in contemplating the proportionality prong of a Rule 26 analysis.  The Court accepts that a $1.5 million cost to produce ESI is extraordinary, but it is unclear from the correspondence how critical the requested information is.  Where the parties have provided their search terms, the arguments do not elaborate in much meaningful detail how any one proposal is more appropriate under Rule

---

[1] When the Court cites to a specific page number or range of page numbers, the Court is referring to the page numbers provided in the electronic filing stamps located at the top of every electronically filed document. If there are none, the Court is referring to the page number of the PDF.

[2] Those include (1) Randall Day; (2) Mark McKay; (3) Michael Leventini; (4) Kyle Anderson Bolin; (5) Kevin McAdams; (6) Gregg Uecker; and (7) Christopher Jones.  (ECF No. 106 at 1).

26 than the other.  Nor do Plaintiffs make clear why the proposed 73 terms and two executives are not enough.

The Court can conceive how many of the proposed searches are relevant, but the Court is not positioned to pick and choose which terms shall govern in light of the arguments raised.  By that same token, it is difficult for the Court to consider Purdue's general privilege challenge.  In sum, "Perdue requests that the Court adopt its reasonable compromise proposal for ESI—to search a 25% sampling of Levengood's and Levintini's emails, along with a 25% sampling of the 21 other custodians Perdue proposed, that hit on any of Perdue's proposed 73 search terms." Plaintiffs are not satisfied with such a proposal, but they offer no explanation as to why the proposal is insufficient under Rule 26(b)(1).  Where they claim that the requested information is "highly relevant for determining 'willfulness' and whether the FLSA's extended three-year statute of limitation would apply," the Court has no ability to engage in that analysis for terms not included in the 73 Perdue provided Plaintiffs by way of their most recent proposal.

While their response to Defendants is well-taken on the general issues of privilege, willfulness, and the statue of limitations, it is unclear how the 73 proposed terms would not allow them to adequately consider those issues without imposing a $1.5 million dollar burden upon Perdue with a total of nearly 300 search terms. Similarly, Plaintiffs adequately explain why responses for the executives are relevant to their case.  (ECF No. 106).  However, in the Court's view, the information from seven executives is unduly burdensome in light of Perdue's proposed compromise.  As such, the Court finds it appropriate to compel production of the following, based on a compromise between to the parties' proposals:

(1) Perdue shall provide a 25% sampling of the twenty-one custodians Perdue proposed;
(2) Perdue shall provide a 25% sampling of the four executives of Plaintiffs' choosing (from those seven Plaintiffs have named) in its ROG responses as custodians;
(3) Perdue shall produce ESI for the 73 search terms it proposed.

The Court understands that specific privilege concerns may apply, and it appears that such concerns are not yet ripe for review.  Plaintiffs correctly point out that there does not exist any blanket rule barring the discovery of information from executives. As such, the Court's Order shall not be construed as a conclusion that the executives' email data is or is not privileged, and the Court is willing to consider those issues in greater detail once ripe. Perdue shall make such responses subject to the Discovery Schedule set forth below.

*B.*      *Discovery Scheduling*

The parties next dispute the appropriate path forward based on the discovery schedule.  On January 12, 2026, Plaintiffs requested a "120-day extension of the existing discovery schedule, citing the practical challenges of collecting documents from growers in rural communities with limited digital access" because "[l]ead counsel have personally traveled across half a dozen states to meet with discovery representatives, engaged interpreters, collected documents, and scanned

3

Case 1:24-cv-00987-JMC    Document 107    Filed 04/15/26    Page 4 of 5

hard copies by hand for ESI production—all at a combined cost of hundreds of thousands of dollars in expenses and attorney time." (ECF No. 106 at 2). On January 14, 2026, Perdue agreed, "conditioned on Plaintiffs completing all written discovery and document production no later than 45 days before the close of discovery — June 20, 2026." *Id.* On January 20, Plaintiffs objected to Perdue's proposed condition based on their belief that Perdue attempted "to extract concessions in exchange for a routine extension request." *Id.* Nonetheless, the Plaintiffs agreed to the proposed condition only for their pending discovery requests. *Id.* From there, the agreement deteriorated based on the parties' differing understandings of and desires for the compromise.

District courts have broad discretion to manage the timing of discovery. *Ardrey v. United Parcel Serv.*, 798 F.2d 679, 682 (4th Cir.1986). A party must demonstrate good cause to amend the scheduling order under Federal Rule of Civil Procedure 16. Fed. R. Civ. P. 16(b)(4); *DiStefano, Inc. v. Tasty Baking Co.*, Civil Case No. SAG-22-01493, 2024 WL 1329268, at *2 (D. Md. Mar. 28, 2024) ("[A] party must first demonstrate good cause to modify the scheduling order deadlines, before also satisfying the Rule 15(a)(2) standard for amendment.") (internal quotations omitted). "The primary consideration of the Rule 16(b) 'good cause' standard is the diligence of the movant." *Rassoull v. Maximus, Inc.*, 209 F.R.D. 372, 374 (D. Md. 2002) (citing *West Virginia Housing Dev. Fund. V. Ocwen Technology Xchange, Inc.*, 200 F.R.D. 564, 567 (S.D.W.Va. 2001)). Indications of a lack of diligence and carelessness are "hallmarks of failure to meet the good cause standard." *Id.* "To establish good cause, the party seeking to amend the scheduling order must 'show that the deadlines cannot reasonably be met despite the party's diligence'" *Id.* (quoting *Cook v. Howard*, 484 F. App'x 805, 815 (4th Cir. 2012).

In consideration of the discovery that remains outstanding, and in light of a possible privilege dispute, the Court finds a 120-day extension appropriate. *Rassoull*, 209 F.R.D. at 374. Recognizing that the discovery period has lasted nearly a year thus far, the Court shall not grant another extension request absent extraordinary circumstances. The parties shall be mindful of such constraints and their Local Rule 104.3 obligations as discovery persists.

Therefore, the Plaintiff's request for a modification to the Scheduling Order is GRANTED. The discovery schedule is as follows:

| Item | Current Deadline | New Deadline |
| --- | --- | --- |
| Plaintiffs' Rule 26(a)(2) Disclosures | June 9, 2026 | October 7, 2026 |
| Defendant's Rule 26(a)(2) Disclosures | July 14, 2026 | November 11, 2026 |
| Plaintiffs' Rebuttal Rule 26(a)(2) Disclosures | August 4, 2026 | December 2, 2026 |

4

| Fact Discovery & Decertification Expert Discovery Deadline; Submission of Joint Status Report | August 4, 2026 | December 2, 2026 |
|---|---|---|
| Requests for Admission Deadline | August 18, 2026 | December 16, 2026 |
| Deadline for Defendant's Motion for Decertification | September 3, 2026 | January 1, 2027 |

## III.    Conclusion

For the foregoing reasons, the parties shall produce the discovery set forth in Section II consistent with the schedule contained herein.

Notwithstanding its informal nature, this letter constitutes an order of the Court and should be docketed as such.

Sincerely yours,

_____/s/_____

J. Mark Coulson
United States Magistrate Judge